1   **LATHAM & WATKINS LLP**
       Michael H. Rubin (Bar No. 214636)
2           *michael.rubin@lw.com*
       Scott D. Joiner (Bar No. 223313)
3           *scott.joiner@lw.com*
       505 Montgomery Street, Suite 2000
4      San Francisco, California 94111-6538
       Telephone: (415) 391-0600
5
       Alexander C.K. Wyman (Bar No. 295339)
6           *alex.wyman@lw.com*
       Will Schildknecht (Bar No. 348372)
7           *will.schildknecht@lw.com*
       Max A. Shapiro (Bar No. 334929)
8           *max.shapiro@lw.com*
       10250 Constellation Blvd., Suite 1100
9      Los Angeles, CA 90067
       Telephone: (424) 653-5500
10
     **SIDLEY AUSTIN LLP**
11      Benjamin M. Mundel (*pro hac vice forthcoming*)
            *bmundel@sidley.com*
12      1501 K Street, N.W.
       Washington, DC 20005
13      Telephone: (202) 736-8000

14   Attorneys for Defendants
     Live Nation Entertainment, Inc. and Ticketmaster
15   L.L.C.

16                **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18   FEDERAL TRADE COMMISSION;          Case No. 2:25-cv-08884-MEMF-MAA
     ATTORNEY GENERAL OF COLORADO;
19   OFFICE OF THE ATTORNEY GENERAL,    **NOTICE OF DEFENDANTS'**
     STATE OF FLORIDA, DEPARTMENT OF    **MOTION TO DISMISS**
20   LEGAL AFFAIRS; THE PEOPLE OF THE   **COMPLAINT FOR PERMANENT**
     STATE OF ILLINOIS; STATE OF        **INJUNCTION, MONETARY**
21   NEBRASKA; STATE OF TENNESSEE;      **RELIEF, CIVIL PENALTIES, AND**
     STATE OF UTAH; UTAH DIVISION OF    **OTHER RELIEF;**
22   CONSUMER PROTECTION;               **MEMORANDUM OF LAW IN**
     COMMONWEALTH OF VIRGINIA,          **SUPPORT OF DEFENDANTS'**
23                                      **MOTION TO DISMISS**
                    Plaintiffs,
24
                                        Date:     February 19, 2026
25          v.                          Time:     10:00 a.m.
                                        Place:    Courtroom 8B
26   LIVE NATION ENTERTAINMENT, INC.
     and TICKETMASTER L.L.C.,           Hon. Maame Ewusi-Mensah Frimpong
27
                    Defendants.
28

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on February 19, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Maame Ewusi-Mensah Frimpong, in the United States District Court for the Central District of California located at 350 W. First Street, Los Angeles, CA 90012, Courtroom 8B, Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. will and hereby do move this Court for an Order dismissing Plaintiffs' Complaint for Permanent Injunction, Monetary Relief, Civil Penalties, and Other Relief ("Complaint"). Defendants respectfully submit this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion requests that the Complaint be dismissed on the basis that Plaintiffs failed to adequately allege their claims under Federal Rules of Civil Procedure 8(a) and 9(b). This Motion is based on this Notice, the accompanying Memorandum of Law, the concurrently filed Declaration of Alexander C.K. Wyman, all pleadings on file in this action, and such oral argument as may be presented on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 19, 2025.

1  Dated:  January 6, 2026

Respectfully submitted,

2  LATHAM & WATKINS LLP
3      Michael H. Rubin
       Scott D. Joiner
4      Alexander C.K. Wyman
       Will Schildknecht
5      Max A. Shapiro

6  SIDLEY AUSTIN LLP
7      Benjamin M. Mundel

8

9  By */s/ Michael H. Rubin*
10     Michael H. Rubin

11     Attorneys for Defendants
       Live Nation Entertainment, Inc. and
12     Ticketmaster L.L.C.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................ 12

BACKGROUND ................................................................ 13

    A.    Ticketmaster's Business ............................................. 13

    B.    Ticketmaster Supports And Announces Its Intention To Implement All-In Pricing ............................................. 13

    C.    Ticketmaster Is An Industry-Leader In Combating Ticket Harvesting And Scalping ............................................. 14

    D.    Congress Enacted The BOTS Act To Protect Platforms From Bad Actors That Use Technological Exploits To Circumvent Purchase Limits ........................................ 15

    E.    The FTC Initiates The Instant Lawsuit ......................... 16

LEGAL STANDARD ........................................................ 16

ARGUMENT .................................................................... 17

I.    THE BOTS ACT CLAIM (COUNT III) MUST BE DISMISSED ................................................................ 17

    A.    Ticketmaster Provides A Platform And Does Not Itself Sell Or Offer To Sell Tickets Listed By Third Parties ...... 18

    B.    Plaintiffs Fail To Allege Any Particular Ticket On Ticketmaster's Platform Was Obtained Through Circumvention Of Any Specific Technological Control ... 21

    C.    Plaintiffs Fail To Adequately Allege Ticketmaster Knew Or Should Have Known That Any Particular Ticket Listed On Its Platform Was Purchased In Violation Of The BOTS Act ........................................................... 24

    D.    At Minimum, The Claim For Civil Penalties Must Be Dismissed Because The FTC Fails To Adequately Allege Ticketmaster Knew Its Conduct Violated The BOTS Act ... 25

E.    The State Plaintiffs Cannot Join the FTC's BOTS Act
Claim ..................................................................................... 26

II.    THE SECTION 5 CLAIMS (COUNTS I - II) MUST BE
DISMISSED ..................................................................................... 27

A.    The FTC's Claim Regarding Ticketmaster's Fee
Disclosures (Count I) Fails ................................................... 27

1.    The FTC Fails To Adequately Allege Ongoing Or
Imminent Misconduct ................................................ 27

2.    Prior Disclosures Did Not Violate Section 5 In
Any Event ................................................................... 28

B.    The FTC's Claim Regarding Ticketmaster's Ticket Limit
Disclosures (Count II) Fails .................................................. 29

1.    The FTC Fails To Adequately Allege
Ticketmaster's Ticket Limit Disclosures Are False
Or Misleading ............................................................. 29

2.    The FTC Fails To Adequately Allege
Ticketmaster's Ticket Limit Disclosures Are
Material ...................................................................... 30

III.    THE STATE-LAW CLAIMS (COUNTS IV - X) MUST BE
DISMISSED ..................................................................................... 31

CONCLUSION .......................................................................................... 33

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Aliano v. Ferriss*,
988 N.E.2d 168 (Ill. App. Ct. 2013)................................................................31, 32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................16, 24

*Bell v. 1220 Mgmt. Grp., L.L.C.*,
2018 WL 3054795 (S.D. Fla. June 20, 2018) ....................................................32

*Bobo v. Optimum Nutrition, Inc.*,
2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ................................................29

*Chadwick v. Bonneville Billing & Collections, Inc.*,
2021 WL 1140206 (D. Utah Mar. 25, 2021)......................................................33

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
543 U.S. 157 (2004) ...............................................................................................23

*Davis v. HSBC Bank*,
691 F.3d 1152 (9th Cir. 2012)..............................................................................29

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014).................................................................................24

*Est. of Graham v. Sotheby's, Inc.*,
178 F. Supp. 3d 974 (C.D. Cal. 2016), *aff'd in part, rev'd in part
and remanded on other grounds sub nom. Close v. Sotheby's, Inc.*,
894 F.3d 1061 (9th Cir. 2018) ..............................................................................20

*Fabozzi v. StubHub, Inc.*,
2012 WL 506330 (N.D. Cal. Feb. 15, 2012)......................................................20

*Facebook, Inc. v. Power Ventures*,
844 F.3d 1058 (9th Cir. 2016)...............................................................................22

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995)...................................................................................29

*FTC v. Credit Bureau Ctr., LLC*,
    937 F.3d 764 (7th Cir. 2019)..................................................................28

*FTC v. Cyberspace.com LLC*,
    453 F.3d 1196 (9th Cir. 2006)...............................................................31

*FTC v. Evans Prods. Co.*,
    775 F.2d 1084 (9th Cir. 1985)...............................................................28

*FTC v. Facebook, Inc.*,
    560 F. Supp. 3d 1 (D.D.C. 2021) ...........................................................23

*FTC v. Gill*,
    265 F.3d 944 (9th Cir. 2001) .................................................................28

*FTC v. Lights of Am., Inc.*,
    760 F. Supp. 2d 848 (C.D. Cal. 2010)...........................................17, 27

*FTC v. Nudge, LLC*,
    2022 WL 2132695 (D. Utah June 14, 2022)..........................................32

*FTC v. QYK Brands LLC*,
    2024 WL 1526741 (9th Cir. Apr. 9, 2024)............................................28

*FTC v. Stefanchik*,
    559 F.3d 924 (9th Cir. 2009) .................................................................27

*FTC v. Swish Mktg.*,
    2010 WL 653486 (N.D. Cal. Feb. 22, 2010)..........................................23

*FTC v. Walmart Inc.*,
    664 F. Supp. 3d 808 (N.D. Ill. 2023)......................................................23

*Gallegos v. LVNV Funding LLC*,
    169 F. Supp. 3d 1235 (D. Utah 2016) ....................................................33

*Hall v. Marriott Int'l, Inc.*,
    344 F.R.D. 247 (S.D. Cal. 2023).............................................................29

*Hill v. StubHub, Inc.*,
    219 N.C. App. 227 (2012)......................................................................20

*Homebuyers Inc. v. Watkins*,
    2019 WL 2361760 (Neb. Ct. App. June 4, 2019)...................................32

7

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   362 F. Supp. 3d 510 (N.D. Ill. 2019) ................................................................. 31

*Ind. Farm Bureau Ins. v. Shenzhen Anet Tech. Co.*,
   2020 WL 7711346 (S.D. Ind. Dec. 29, 2020) ................................................... 20

*iSpot.tv, Inc. v. Teyfukova*,
   2023 WL 3602806 (C.D. Cal. May 22, 2023) (Frimpong, J.) ........................... 23

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
   559 U.S. 573 (2010) ........................................................................................... 26

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................... 17

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................................... 14

*Lackey v. Stinnie*,
   604 U.S. 192 (2025) ........................................................................................... 27

*Morgan v. Twitter, Inc.*,
   2025 WL 1248821 (9th Cir. Apr. 30, 2025) ...................................................... 28

*People ex rel. Dunbar v. Gym of Am., Inc.*,
   493 P.2d 660 (Colo. 1972) ................................................................................. 32

*Porras v. StubHub, Inc.*,
   2012 WL 3835073 (N.D. Cal. Sept. 4, 2012) ................................................... 20

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) ............................................................................ 24

*Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*,
   706 P.2d 1028 (Utah 1985) ................................................................................ 33

*Roberts v. Sea-Land Servs., Inc.*,
   566 U.S. 93 (2012) ............................................................................................. 19

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ............................................................................................. 26

*Southwest Airlines Co. v. Saxon*,
   596 U.S. 450 (2022) ........................................................................................... 21

8

*State Farm Fire & Cas. Co. v. Amazon.com, Inc.*,
   835 F. App'x 213 (9th Cir. 2020)...................................................................20

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010) ......................................................................25

*Tucker v. Sierra Builders*,
   180 S.W.3d 109 (Tenn. Ct. App. 2005) ....................................................31, 32

*United States v. Corrales-Vazquez*,
   931 F.3d 944 (9th Cir. 2019) ...................................................................19

*United States v. Dish Network L.L.C.*,
   954 F.3d 970 (7th Cir. 2020) ...................................................................26

*United States v. eBay Inc.*,
   751 F. Supp. 3d 232 (E.D.N.Y. 2024) ........................................................21

*Van Buren v. United States*,
   593 U.S. 374 (2021) ........................................................................19, 22

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012) ......................................................................25

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   75 F.4th 995 (9th Cir. 2023) ...................................................................25

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010).......................................................18

**STATUTES**

15 U.S.C. § 45(m)(1)(A) ..............................................................................26

15 U.S.C. § 45c...............................................................................12, 15, 27

15 U.S.C. § 45c(a)(1) .................................................................................17

15 U.S.C. § 45c(a)(1)(A) .......................................................................*passim*

15 U.S.C. § 45c(a)(1)(B) ...................................................................16, 18, 21

15 U.S.C. § 45c(a)(1)(B)(ii) .........................................................................24

15 U.S.C. § 45c(b) ....................................................................................26

9

15 U.S.C. § 45c(c)(1)........................................................................................26

15 U.S.C. § 45c(c)(4)........................................................................................26

15 U.S.C. § 45f(d)(4)........................................................................................27

15 U.S.C. § 53(b)..............................................................................................28

15 U.S.C. § 57b(d)............................................................................................18

17 U.S.C. § 1201(a)(1)(A)................................................................................23

17 U.S.C. § 1201(a)(3)(A)................................................................................23

28 U.S.C. § 1367(c)..........................................................................................31

28 U.S.C. § 1367(c)(3)......................................................................................31

Fla. Stat. § 501.204(1)......................................................................................31

Utah Code Ann. § 13-11-2(4)...........................................................................31

## RULES

Fed. R. Civ. P. 9(b)..............................................................................17, 24, 27, 28

Fed. R. Civ. P. 12(b)(6)....................................................................................16

## TREATISES

*Restatement (Second) of Contracts* § 24 (1981)..............................................19

## REGULATIONS

16 C.F.R. §§ 464 *et seq.*.................................................................................14

90 Fed. Reg. 2066.......................................................................................13, 14

## OTHER AUTHORITIES

*Circumvent*, *Black's Law Dictionary* (12th ed. 2024).......................................23

*New Oxford American Dictionary* 1586 (3d ed. 2010)........................................19

Rebecca Kelly Slaughter, Comm'r, FTC, *Prepared Remarks: "That's the Ticket" Workshop on Online Ticket Sales* (June 11, 2019), https://www.ftc.gov/system/files/documents/public_statements/1527238/slaughter_-_prepared_remarks_ftc_tickets_workshop_6-11-19.pdf ............................................................................................... 14

*Sale*, *Black's Law Dictionary* (12th ed. 2024) ....................................... 19

*Sell*, *Black's Law Dictionary* (12th ed. 2024) ....................................... 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 2:25-cv-08884-MEMF-MAA
DEFENDANTS' MOTION TO DISMISS

# INTRODUCTION

This lawsuit, initiated by the Federal Trade Commission alongside the States of Colorado, Florida, Illinois, Nebraska, Tennessee, Utah, and Virginia ("State Plaintiffs"), reflects an egregious instance of agency overreach. Plaintiffs' primary allegation is that Live Nation Entertainment, Inc. and Ticketmaster L.L.C. (collectively, "Ticketmaster") violated the Better Online Ticket Sales Act ("BOTS Act" or "Act"), 15 U.S.C. § 45c. This statute is designed to *help* ticket issuers like Ticketmaster combat ticket harvesting and scalping, ensuring that tickets are accessible to genuine fans. Plaintiffs now ask this Court to take the unprecedented step of applying this law *against* a ticket issuer for its operation of a resale platform.

Plaintiffs' BOTS Act claim fails for several reasons under the statute's plain text. First, their theory assumes (without support) that Ticketmaster—rather than ticketholders who possess the tickets—"sells or offers to sell" unlawfully acquired tickets on the resale market. Second, Plaintiffs do not allege "circumvention" of any particular "technological control or measure," as mandated by the BOTS Act. Third, Plaintiffs fail to plausibly allege facts establishing that that Ticketmaster knew or should have known that any particular ticket on its resale platform was obtained through the circumvention of a technological control. Ultimately, Plaintiffs' theory boils down to the idea that Ticketmaster is liable under the BOTS Act merely for knowing that some brokers used multiple accounts or that some accounts possessed more tickets than the ticket limit permitted. But that theory does not amount to a violation of the statute Congress enacted. Plaintiffs cannot rewrite that statute through this litigation.

The FTC's Section 5 claims are equally deficient. The first theory—regarding Ticketmaster's presentation of fees—fails because, as the Complaint acknowledges, Ticketmaster now employs all-in pricing consistent with the Commission's Rule on Unfair or Deceptive Fees, effective May 2025. And the FTC's second theory—regarding Ticketmaster's disclosures about ticket limits—fails because the

12

Complaint identifies nothing false or misleading. These deficiencies also doom the state-law claims, which mirror the Section 5 claims and should be dismissed for the same reasons.

## BACKGROUND

### A.    Ticketmaster's Business

Ticketmaster, a subsidiary of Live Nation Entertainment, is the nation's largest ticketing company, providing primary and secondary ticketing services for live events. Compl. ¶¶ 10, 33. In the primary market, tickets are first offered for sale during an "onsale." Ticketmaster facilitates these onsales on behalf of the event organizer (e.g., an artist, promoter, or venue) who determines the face value ticket price. *Id.* ¶ 36. The venue typically sets the fees, a portion of which are remitted to the ticketing company (here, Ticketmaster) for distributing tickets in the onsale. *Id.*

In the secondary market, ticketholders offer their ticket—the license to attend an event—to another person. *See id.* ¶ 33. In this context, Ticketmaster acts as the platform of exchange. These tickets are typically exchanged at prices determined by market demand, plus fees that Ticketmaster charges the buyer and seller. *See id.* ¶¶ 37, 39.

### B.    Ticketmaster Supports And Announces Its Intention To Implement All-In Pricing

For years, major ticketing platforms (including Ticketmaster) displayed applicable fees and taxes at checkout, along with the face price of the ticket and the total the consumer would be charged. But as the FTC has acknowledged, Ticketmaster has long advocated for "all-in pricing," a practice in which the upfront price a fan sees on the ticketing platform includes any applicable fees. *See* 90 Fed. Reg. 2066, 2088, 2096 n.283 (Jan. 10, 2025). Unfortunately, Ticketmaster alone could not feasibly implement all-in pricing unless there was a "nationwide" rule requiring it because "adopting all-in pricing 'absent a mandate creates a first-mover disadvantage.'" *Id.* at 2088. As former FTC Commissioner Rebecca Kelly Slaughter

13

explained, Ticketmaster faced a "classic prisoner's dilemma": adopting all-in pricing while other ticketing marketplaces did not would shift sales to platforms listing a lower upfront price. Rebecca Kelly Slaughter, Comm'r, FTC, *Prepared Remarks: "That's the Ticket" Workshop on Online Ticket Sales* (June 11, 2019), https://www.ftc.gov/system/files/documents/public_statements/1527238/slaughter_-_prepared_remarks_ftc_tickets_workshop_6-11-19.pdf. Ticketmaster thus urged the FTC to issue a "nationwide rule[] to implement all-in pricing," which "would 'increase pricing transparency for fans and support competition in the ticketing industry.'" 90 Fed. Reg. at 2088.

In January 2025, the FTC did just that, promulgating the Trade Regulation Rule on Unfair or Deceptive Fees. *Id.* at 2066; 16 C.F.R. §§ 464 *et seq.* This rule, which effectively mandates all-in pricing for live events, became effective in May 2025. Compl. ¶ 63. Ticketmaster agreed to implement all-in pricing as of that date, and the Complaint does not allege Ticketmaster has done otherwise. *Id.*

## C. Ticketmaster Is An Industry-Leader In Combating Ticket Harvesting And Scalping

For certain live events, Ticketmaster limits the number of tickets that can be purchased by a single account. *Id.* ¶¶ 66-67. These purchase limits, set by event organizers, help get tickets to real fans and discourage scalping. *See id.* ¶ 65; Declaration of Alexander C.K. Wyman ("Wyman Decl.") Ex. 1 at 5.[1] Ticketmaster's Terms of Use and Purchase Policy prohibit circumventing these ticket purchase limits. Compl. ¶¶ 68-69. If a purchaser exceeds or attempts to exceed purchase limits, Ticketmaster "reserve[s] the right to cancel … any or all orders and tickets, in addition to prohibiting [the purchaser's] ticket purchasing abilities." *Id.* ¶ 69.

---

[1] Ticketmaster: Purchase Policy (effective Jan. 1, 2021), https://legal.ticketmaster.com/wp-content/uploads/2025/06/Purchase-Policy-%E2%80%93-Last-Update-January-1-2021.pdf. The Complaint references the policy, Compl. ¶¶ 68-69, and thus the Court may consider it because it is incorporated by reference. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also* Defendants' Request for Judicial Notice.

Ticketmaster's efforts to enforce these per-account event ticket limits extend beyond its policies. The Complaint concedes that Ticketmaster has invested in a wide "array of security measures for enforcing event ticket limits." Compl. ¶ 71; *see also id.* ¶¶ 74, 76. Many of these measures aim to prevent scalpers and brokers from using automated ticket purchasing technology, or "bots," to quickly acquire large quantities of tickets for resale at inflated prices, a practice known as "ticket harvesting." These measures include virtual waiting rooms and queuing systems, automated blocking of repeat or coordinated purchase attempts, and account verification codes. *Id.* ¶¶ 70-71, 76.

Despite Ticketmaster's efforts, scalpers persist in using technology to step in front of fans to obtain an outsized share of tickets and resell them at marked up prices in a multibillion-dollar resale market. *Id.* ¶¶ 74, 76. For instance, brokers create hundreds or thousands of Ticketmaster accounts to buy more tickets without exceeding the per-account ticket limit. *Id.* ¶ 74. Scalpers also use software that allows them to log into multiple accounts at the same time to bypass screening and verification measures. *Id.* ¶ 76.

## D.    Congress Enacted The BOTS Act To Protect Platforms From Bad Actors That Use Technological Exploits To Circumvent Purchase Limits

Recognizing the growing problem of automated ticket purchasing tactics, Ticketmaster has advocated for legislative and regulatory change. One such change was the BOTS Act (2016), 15 U.S.C. § 45c. Congress recognized that "[t]he market for live event tickets has encountered challenges from scalpers who use software to circumvent the safeguards primary ticket sellers use to limit ticket purchases." S. Rep. No. 114-391, at 1 (2016). The BOTS Act accordingly makes it unlawful to acquire tickets by circumventing a "technological control or measure" used by a ticket issuer like Ticketmaster to enforce limits on ticket purchases. 15 U.S.C. § 45c(a)(1)(A). The Act also makes it unlawful for anyone who knows a ticket was

15

acquired through such circumvention to sell or offer to sell the ill-gotten ticket. *Id.* § 45c(a)(1)(B).

Until this case, the FTC has enforced the BOTS Act according to Congress's direction, targeting scalpers and ticket brokers that allegedly use bots, proxy servers, fictitious identities, and other technological exploits to bypass Ticketmaster's technological controls. The FTC has never enforced the Act against a ticket issuer or platform—nor even suggested it could—until this case.

### E.    The FTC Initiates The Instant Lawsuit

Plaintiffs, which consist of the FTC and seven states, filed this action on September 18, 2025. The Complaint asserts ten claims. Plaintiffs assert a BOTS Act claim alleging Ticketmaster is liable for selling unlawfully acquired tickets. Compl. ¶¶ 119-25 (Count III). Plaintiffs also assert claims under Section 5 of the FTC Act and state-law analogues challenging Ticketmaster's prior pricing displays and statements regarding ticket purchase limits. *Id.* ¶¶ 111-18 (Counts I-II) (FTC Act); *id.* at pp. 59-73 (Counts IV-X) (state-law claims). They allege Ticketmaster historically "displayed deceptively low ticket prices" by adding fees later in the purchasing process, *id.* ¶ 12, and that its ticket limits are deceptive because Ticketmaster "routinely allow[s] ticket brokers to exceed ticket limits." *Id.* ¶ 14.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "'legal conclusion[s] couched as … factual allegation[s].'" *Id.*

Because the Complaint asserts a unified course of deceptive conduct regarding pricing and ticket limits, the allegations sound in fraud and must satisfy Federal Rule of Civil Procedure 9(b). *See FTC v. Lights of Am., Inc.*, 760 F. Supp.

16

1  2d 848, 854 (C.D. Cal. 2010) ("Rule 9(b) applies to claims for violation of the FTC

2  Act."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (dismissing

3  consumer protection claims under Rule 9(b)). Rule 9(b) requires fraud to be pled

4  with "particularity"—i.e., "'the who, what, when, where, and how' of the

5  misconduct charged." *Kearns*, 567 F.3d at 1124.

6  **ARGUMENT**

7  **I.    THE BOTS ACT CLAIM (COUNT III) MUST BE DISMISSED**

8         This Court should dismiss the claim that Ticketmaster, a ticket issuer, violated

9  the BOTS Act. Compl. ¶¶ 119-25. Congress enacted the BOTS Act in 2016 to curb

10  certain abuses in the online ticketing marketplace caused by ticket harvesting and

11  scalping. The Act makes it unlawful for any person:

12  (A) to circumvent a security measure, access control system, or other
technological control or measure on an Internet website or online service that
13  is used by the ticket issuer to enforce posted event ticket purchasing limits or
to maintain the integrity of posted online ticket purchasing order rules; or
14

15  (B) to sell or offer to sell any event ticket in interstate commerce obtained in
violation of subparagraph (A) if the person selling or offering to sell the ticket
16  either—

17
18  (i) participated directly in or had the ability to control the conduct in
violation of subparagraph (A); or

19
20  (ii) knew or should have known that the event ticket was acquired in
violation of subparagraph (A).

21  15 U.S.C. § 45c(a)(1).

22         The Act thus prohibits two interrelated practices. Subparagraph (A) prohibits

23  conduct in the context of *buying* a ticket, specifically acquiring a ticket through

24  circumvention of technological controls or measures used by ticket issuers. *Id.*

25  § 45c(a)(1)(A). Subparagraph (B) proscribes conduct in the context of *selling* a

26  ticket, specifically selling a ticket obtained through such circumvention where the

27  seller either (i) participated directly in or had the ability to control the circumvention,

28  or (ii) knew or should have known the ticket they are selling was acquired through

17

such circumvention. *Id.* § 45c(a)(1)(B). Plaintiffs allege only that Ticketmaster violated subparagraph (B). Compl. ¶¶ 124-25. But this claim is fundamentally flawed.

As an initial matter, the BOTS Act has a three-year statute of limitations. *See* 15 U.S.C. § 57b(d). Yet much of the alleged conduct occurred between 2018 through 2022—more than three years before Plaintiffs initiated this action. *See, e.g.*, Compl. ¶¶ 87-88, 92-99. The allegations that fall outside the limitations period cannot support Plaintiffs' claim for relief. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133-34 (C.D. Cal. 2010) (dismissing claims "to the extent they allege conduct outside the applicable statutes of limitations").

As to the allegations that fall within the limitations period, the Complaint fails to state a claim. To state a claim under subparagraph (B) of the BOTS Act, Plaintiffs must adequately allege that: (1) Ticketmaster "sell[s] or offer[s] to sell" tickets; (2) those tickets were "obtained in violation of subparagraph (A)," meaning they were acquired through the "circumvent[ion]" of a "technological control or measure"; and (3) Ticketmaster "knew or should have known" the tickets were "acquired in violation of subparagraph (A)." 15 U.S.C. § 45c(a)(1)(B). The Complaint fails to adequately allege any of these required elements.

## A.    Ticketmaster Provides A Platform And Does Not Itself Sell Or Offer To Sell Tickets Listed By Third Parties

First, the Complaint fails to allege that Ticketmaster "sells or offers to sell" tickets under subparagraph (B) of the BOTS Act. 15 U.S.C. § 45c(a)(1)(B). Rather, tickets are offered and sold by those who possess them—that is, the consumers or brokers who list them on the resale market.

Starting with the text, the word "sell" is undefined and thus takes its "ordinary meaning" in the "context" in which it appears. *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100-01 (2012). The ordinary meaning of "sell" is to convey an interest for consideration. *See, e.g.*, *New Oxford American Dictionary* 1586 (3d ed. 2010) ("give

18

1    or hand over (something) in exchange for money"); *Sell*, *Black's Law Dictionary*

2    (12th ed. 2024) ("To transfer (property) by sale"); *Sale*, *Black's Law Dictionary*

3    (12th ed. 2024) ("The transfer of property or title for a price"). In turn, an "offer to

4    sell" means expressing a willingness to convey an interest for consideration. *See*

5    *Restatement (Second) of Contracts* § 24 (1981) ("An offer is the manifestation of

6    willingness to enter into a bargain[.]"). These definitions are consistent with

7    everyday usage: when someone sells a good to another person, they hand over the

8    good in exchange for payment. But the person must own or possess an item to sell

9    it. In the context of ticket resales under subparagraph (B), "sell or offer to sell" thus

10   targets individuals, such as consumers or brokers, who possess an ill-gotten ticket

11   and either convey or attempt to convey the rights associated with the ticket to another

12   person for consideration.

13       The statute's structure reinforces this reading. Consistent with Congress's

14   efforts to curtail abuses by scalpers, subparagraphs (A) and (B) work together to

15   target both aspects of scalpers' operations. Subparagraph (A) targets scalpers who

16   nefariously acquire tickets by circumventing ticket issuers' technical ticket limit

17   controls, and subparagraph (B) targets the sale of tickets nefariously acquired in

18   excess of those limits. Interpreting the statute this way makes it "work[] as a

19   seamless whole." *United States v. Corrales-Vazquez*, 931 F.3d 944, 950 (9th Cir.

20   2019). Extending subparagraph (B) to the very ticket issuers whose technological

21   controls are being circumvented would "disrupt[ that] careful structure." *Id.*; *see also*

22   *Van Buren v. United States*, 593 U.S. 374, 389-90 (2021) (rejecting government's

23   reading of a statute that creates structural inconsistencies).

24       Applying this straightforward interpretation, the Complaint fails to

25   demonstrate that Ticketmaster "sell[s] or offer[s] to sell" tickets in the resale market.

26   The Complaint acknowledges that Ticketmaster merely provides a platform where

27   "*consumers* … list tickets for resale." Compl. ¶ 37 (emphasis added). It is therefore

28   the "consumer" selling the ticket; Ticketmaster neither owns nor possesses the resold

19

ticket. Ticketmaster's Purchase Policy confirms: "If you purchase a resale ticket through our Site, you will be purchasing that ticket from either (a) a reseller who is not an Event Organizer, such as other fans, season ticket holders, or professional resellers, or (b) in limited circumstances, the Event Organizer." Wyman Decl. Ex. 1 at 3.

Judicial analysis of ticketing platforms' resale services confirms what the Act's text makes clear: resale platforms, like Ticketmaster, are not "sellers" or "offerors." *See, e.g.*, *Fabozzi v. StubHub, Inc.*, 2012 WL 506330, at *1 n.1 (N.D. Cal. Feb. 15, 2012) ("Although Plaintiff uses the phrase 'ticket reseller' to describe Stubhub, Stubhub does not actually buy or sell tickets; rather, it is a marketplace for third-party users to buy and sell tickets."); *Hill v. StubHub, Inc.*, 219 N.C. App. 227, 248 (2012) (statute that prohibited "sell[ing] or offer[ing] to sell" tickets greater than a specified price did not apply to StubHub because it was not "a ticket seller nor the ticket seller's agent"); *see also Porras v. StubHub, Inc.*, 2012 WL 3835073, at *3 (N.D. Cal. Sept. 4, 2012) ("StubHub is a virtual marketplace allowing users to purchase tickets from anonymous third parties."). Courts likewise hold platform operators are not sellers in a wide variety of contexts. *See, e.g.*, *Ind. Farm Bureau Ins. v. Shenzhen Anet Tech. Co.*, 2020 WL 7711346, at *6 (S.D. Ind. Dec. 29, 2020) ("[M]yriad burgeoning federal and state court cases agree that an online marketplace operator is not a 'seller' of a third-party vendor's products[.]" (citing cases)); *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 835 F. App'x 213, 216 (9th Cir. 2020) (Amazon was not the "seller" of hoverboards purchased on the marketplace); *Est. of Graham v. Sotheby's, Inc.*, 178 F. Supp. 3d 974, 998 (C.D. Cal. 2016), *aff'd in part, rev'd in part and remanded on other grounds sub nom. Close v. Sotheby's, Inc.*, 894 F.3d 1061 (9th Cir. 2018) (similar for eBay); *United States v. eBay Inc.*, 751 F. Supp. 3d 232, 240 (E.D.N.Y. 2024) (same).

Because Ticketmaster does not "sell or offer to sell" tickets, it cannot be liable under subparagraph (B).

**B.    Plaintiffs Fail To Allege Any Particular Ticket On Ticketmaster's Platform Was Obtained Through Circumvention Of Any Specific Technological Control**

Plaintiffs also fail to properly allege predicate subparagraph (A) violations as required by subparagraph (B). Subparagraph (B) imposes liability only for tickets sold "in violation of subparagraph (A)." 15 U.S.C. § 45c(a)(1)(B). That means the ticket underlying the subparagraph (B) claim must have been obtained through the "circumvent[ion]" of a "technological control or measure" used "to enforce posted event ticket purchasing limits." *Id.* § 45c(a)(1)(A). Plaintiffs do not even attempt to satisfy this requirement because they fail to connect their claims to any technological control that was circumvented to obtain a single specific ticket.

*1. Technological Control.* As an initial matter, Plaintiffs ignore the "technological control or measure" element. The BOTS Act does not define the phrase, but it appears as a catch-all at the end of a list: "security measure, access control system, *or other technological control or measure*." *Id.* (emphasis added). The scope of "technological control or measure" is therefore "'defined by reference' to the specific" statutory examples that precede it. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022). Accordingly, like a "security measure" or "access control system," a "technological control or measure" is an affirmative safeguard implemented to restrict access to a space or resource, such as onsales and tickets, by preventing, delaying, or detecting automated or excessive purchase attempts. 15 U.S.C. § 45c(a)(1)(A). The Complaint itself identifies technological controls like automatic IP address blocking and account-verification codes. Compl. ¶ 76; *see also* S. Rep. No. 114-391, at 1 (2016) (citing CAPTCHAs and virtual queues as examples of controls).

Plaintiffs, however, do not tether their claim to any technological controls or measures that were circumvented. Instead, the Complaint broadly alleges Ticketmaster is liable because the tickets listed for resale were purchased in violation of ticket limits. *See, e.g.*, Compl. ¶¶ 66-69. But ticket limits are not "technological

21

control[s] or measure[s]." The statute expressly distinguishes them: it refers to a "*technological control or measure … that is used by the ticket issuer to enforce posted event ticket purchasing limits*." 15 U.S.C. § 45c(a)(1)(A) (emphasis added). The "technological control[s] or measure[s]" are thus the mechanisms "used" to "enforce" ticket limits. The critical question is not whether a purchaser violated ticket limits, but whether they circumvented a technological control to do so.

Courts routinely enforce similar statutory distinctions. For example, in *Van Buren*, the Supreme Court held that language in the Computer Fraud and Abuse Act ("CFAA") regarding "exceed[ing] authorized access" specifies a "distinct way[] of obtaining information unlawfully"—an authorized user must bypass restrictions to obtain information "located in particular areas of the computer" that "are off limits to him." 593 U.S. at 389, 396. By specifying a particular "manner" of access, the statute does not sweep in "every violation of a computer-use policy." *Id.* at 384-85, 394. For the same reason, the Ninth Circuit held that "the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions"; thus, "a violation of the terms of use of a website—without more—cannot establish liability." *Facebook, Inc. v. Power Ventures*, 844 F.3d 1058, 1066-67 (9th Cir. 2016). These cases reinforce what the BOTS Act's text makes plain: the statute does not apply to all violations of ticket limits (which are no different than use policies and terms); it targets a particular manner of such violations—those that result from the circumvention of technological controls.

Plaintiffs fail to connect their BOTS Act claim to a particular technological control or measure. By conflating technological controls and ticket limits, Plaintiffs read "technological control or measure" out of the Act, contrary to "the settled rule" that statutes must be construed "to give every word some operative effect." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004). To the extent Plaintiffs assume a violation of ticket limits reflects a circumvention of some unidentified technological control, that conclusory assumption flouts their obligation to plead

facts supporting each element of their claim. *See FTC v. Swish Mktg.*, 2010 WL 653486, at *4 (N.D. Cal. Feb. 22, 2010) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"); *FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 825 (N.D. Ill. 2023) (dismissing FTC's "conclusory allegations" of required elements); *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 18 (D.D.C. 2021) (same).

  **2. Circumvention.** Plaintiffs also ignore their obligation to allege the "circumvent[ion]" of the ticket issuer's technological control. 15 U.S.C. § 45c(a)(1)(A). In ordinary parlance, "circumvent" means evading or avoiding a particular restriction. *See, e.g.*, *Circumvent*, *Black's Law Dictionary* (12th ed. 2024) ("To avoid (a restrictive problem, rule, etc.), esp[ecially] by clever and sometimes dishonest means"). That follows how Congress has used the term in other contexts involving technological circumvention. The Digital Millennium Copyright Act ("DMCA"), for example, prohibits "circumvent[ing] a technological measure" that protects copyrighted works, and defines "circumvent" to mean "avoid, bypass, remove, deactivate, or impair a technological measure." 17 U.S.C. § 1201(a)(1)(A), (a)(3)(A). Accordingly, the failure to allege circumvention of a technological control requires dismissal. *See, e.g.*, *iSpot.tv, Inc. v. Teyfukova*, 2023 WL 3602806, at *5-7 (C.D. Cal. May 22, 2023) (Frimpong, J.) (dismissing DMCA claim for failure to allege circumvention of a technological measure).

  The Complaint fails to allege any specific acts of circumvention. To the contrary, Plaintiffs' theory is that Ticketmaster "*allow*[s] ticket brokers to exceed ticket limits," Compl. ¶¶ 14-15, 17, and that although it has "technological and other means to prevent brokers from evading ticket limits," it "do[es] not use them," *id.* ¶ 90. This theory forecloses a BOTS Act claim: if Ticketmaster (as Plaintiffs allege) allowed brokers to exceed ticket limits, then the brokers necessarily did not "circumvent" technological controls to do so. Because Plaintiffs have not "properly pleaded circumvention," the BOTS Act claim must be dismissed.

23

**3. Specific Ticket.** Plaintiffs also fail to identify a specific ticket they allege Ticketmaster sold in violation of the BOTS Act. Instead, they allege aggregate violations. *See, e.g.*, Compl. ¶ 103 (alleging generally Ticketmaster has "offered to sell and sold millions of secondary market tickets acquired by brokers who circumvented their enforcement measures"). But the alleged wrongdoing must be tied to concrete facts, not generalized practices or hypothetical transactions. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). This requirement has particular force where, as here, both lawful and unlawful conduct are plausible explanations for why a broker could possess multiple Ticketmaster accounts or why they may possess, in aggregate, more tickets than the posted event ticket limit during an onsale. Without identifying which tickets Ticketmaster allegedly "sold" that were allegedly tainted, the Complaint leaves Ticketmaster and the Court to speculate about the specific basis for liability. Rule 8 does not permit that, much less Rule 9(b). *Id.* at 1000; *Iqbal*, 556 U.S. at 678.

### C.     Plaintiffs Fail To Adequately Allege Ticketmaster Knew Or Should Have Known That Any Particular Ticket Listed On Its Platform Was Purchased In Violation Of The BOTS Act

Even if Plaintiffs had identified tickets listed on Ticketmaster's platform acquired in violation of subparagraph (A), they do not plausibly allege that Ticketmaster "knew or should have known" that any specific ticket was so acquired. 15 U.S.C. § 45c(a)(1)(B)(ii). The "knew or should have known" standard requires more than allegations that a defendant should have known about unlawful conduct *generally*. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ("Sweeping generalities . . . are too attenuated to support an inference that [defendant] knew or should have known of the specifically alleged [] violations."). Instead, to hold a platform liable for knowledge of unlawful listings, courts require plaintiffs to specify the listing defendant allegedly knew or should have known to be unlawful. *See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1000-01 (9th Cir. 2023); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010); *Viacom Int'l,*

24

*Inc. v. YouTube, Inc.*, 676 F.3d 19, 33 (2d Cir. 2012) (estimate that "75-80% of all YouTube streams contained copyrighted material" was insufficient to satisfy the knowledge element under the DMCA).

The Complaint offers no plausible allegation that Ticketmaster knew or should have known any specific ticket resold on its platform was acquired through a BOTS Act violation. Instead, Plaintiffs point to the number of accounts certain brokers maintained and the number of tickets they held across all accounts in 2018 and 2019 (before the applicable limitations period) to suggest that Ticketmaster knew or should have known tickets resold by those brokers in 2023 and 2024 were obtained in violation of the BOTS Act. *See* Compl. ¶¶ 104-05. Plaintiffs also cite to Ticketmaster's suite of ticket management tools for resellers to suggest it must know when the users of these tools have violated technological controls. *Id.* But alleging that brokers had multiple accounts or aggregated ticket holdings above a per-account limit does not plausibly establish that any of those tickets were originally acquired through the circumvention of a technological control. Nor does it demonstrate that Ticketmaster knew or should have known of such circumvention when the specific ticket was listed for sale.

### D. At Minimum, The Claim For Civil Penalties Must Be Dismissed Because The FTC Fails To Adequately Allege Ticketmaster Knew Its Conduct Violated The BOTS Act

The claim for civil monetary penalties is independently flawed. The FTC seeks "civil penalties" under Section 5(m)(1)(A) of the FTC Act, Compl. ¶¶ 1, 163, which allows for civil penalties against any party who "violates any rule under this subchapter … with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A). "Knowledge" is "fairly implied" only when the defendant "should have known [its] act was unlawful" based on "the text" of the law itself. *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978-79 (7th Cir. 2020). A mistake or uncertainty regarding the law precludes liability. *Jerman v. Carlisle,*

1  *McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583-84 (2010). Thus, the FTC

2  must allege not only knowledge (or deliberate ignorance) of an underlying BOTS

3  Act violation (which it has not), but also that Ticketmaster acted "with actual

4  knowledge or knowledge fairly implied on the basis of objective circumstances" that

5  its conduct violated the Act.

6  　　　　The FTC does not attempt to meet this standard, nor could it. The BOTS Act's

7  text does not address liability for ticket issuers or platforms. The text, legislative

8  history, and the FTC's own past enforcement practices indicate that the statutory

9  scheme is intended to *support* platforms. There is no basis in the Act for Plaintiffs'

10 theory that Ticketmaster violates the Act by "allow[ing]" scalpers to obtain tickets

11 or "turn[ing] a blind eye." Compl. ¶¶ 90, 107. None of the alleged actions or

12 inactions by Ticketmaster regarding abuse prevention are mentioned in, or directly

13 implied by, "[t]he [BOTS Act's] text." *Dish Network*, 954 F.3d at 979. "Where, as

14 here, the statutory text and relevant court and agency guidance allow for more than

15 one reasonable interpretation, it would defy history and current thinking to treat a

16 defendant who merely adopts one such interpretation as a knowing or reckless

17 violator." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007).

18 　　**E.　　The State Plaintiffs Cannot Join the FTC's BOTS Act Claim**

19 　　　　Congress granted primary enforcement authority of the BOTS Act to the FTC.

20 15 U.S.C. § 45c(b). States may bring civil actions only if the FTC has not already

21 done so. *Id.* § 45c(c)(1), (4). Because the FTC has instituted this action, states are

22 precluded from bringing a BOTS Act claim "during the pendency of such action …

23 against any defendant named in the Complaint … for the [same] violation." *Id*. The

24 states cannot evade this statutory prohibition by purporting to "join" the FTC's

25 claim. Compl. ¶ 125. When Congress intends to allow such joinder, it says so. *See,

26 e.g.*, 15 U.S.C. § 45f(d)(4) (authorizing states to join actions by the FTC under the

27 INFORM Consumers Act). Congress's decision not to replicate that authority in

28 Section 45c is decisive. *See Lackey v. Stinnie*, 604 U.S. 192, 205 (2025).

## II.    THE SECTION 5 CLAIMS (COUNTS I - II) MUST BE DISMISSED

The FTC also claims Ticketmaster's pricing disclosures and ticket purchase limits are "deceptive" practices under Section 5 of the FTC Act. Compl. ¶¶ 111-18. To state a claim for deceptive acts or practices, a plaintiff must allege (1) a material "representation, omission, or practice" that (2) "is likely to mislead consumers acting reasonably under the circumstances." *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). These allegations must satisfy the heightened pleading requirement under Rule 9(b). *See Lights of Am.*, 760 F. Supp. 2d at 854. Here, the Complaint's allegations regarding Ticketmaster's ticket price disclosures and purchase limits fail to state a claim under Rule 9(b) or even under Rule 8(a).

### A.    The FTC's Claim Regarding Ticketmaster's Fee Disclosures (Count I) Fails

The FTC's first Section 5 claim concerns Ticketmaster's fee disclosures. According to the FTC, Ticketmaster "displayed deceptively low ticket prices to consumers and charged much more," by showing "a list price in the search results that does not reflect the actual cost to consumers at checkout," then adding "substantial mandatory fees not included in the list price." Compl. ¶ 12. This claim fails because the FTC does not allege: (1) ongoing or imminent misconduct; and (2) false or misleading conduct.

#### 1.    The FTC Fails To Adequately Allege Ongoing Or Imminent Misconduct

The FTC brings its Section 5 claims under Section 13(b) of the FTC Act. *See* Compl. ¶ 1. But that provision allows the FTC to obtain an injunction only if the defendant "*is violating*, or *is about to violate*, any provision of law enforced by the [FTC]." 15 U.S.C. § 53(b) (emphasis added). By "requir[ing] that the defendant must be 'violating' or 'about to violate' the law," Section 13(b)'s text "require[s]" the FTC to demonstrate "the existence of ongoing or imminent unlawful conduct." *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 772-73 (7th Cir. 2019); *FTC v. QYK*

27

*Brands LLC*, 2024 WL 1526741, at \*3 (9th Cir. Apr. 9, 2024). Section 13(b) "may not be used to remedy a past violation that is not likely to recur." *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1089 (9th Cir. 1985).

That dooms the FTC's ability to predicate a Section 5 claim on Ticketmaster's fee disclosures. The FTC's theory rests on allegations about Ticketmaster's outdated displays in which ticket prices did not include fees. But the Complaint concedes Ticketmaster has implemented all-in pricing as of May 2025. *See* Compl. ¶ 63. The FTC does not and cannot claim otherwise, nor can it plausibly allege that Ticketmaster is on the brink of imminently returning to its old practices, as Ticketmaster implemented all-in pricing in response to the FTC's rule mandating all-in pricing that Ticketmaster forcefully championed. *See id*. Because the FTC cannot show that Ticketmaster "is violating, or is about to violate" the law with respect to its fee disclosures, this claim should be dismissed.

### 2.    Prior Disclosures Did Not Violate Section 5 In Any Event

Even if Ticketmaster's prior disclosures were relevant, the FTC has failed to adequately allege that the disclosures were deceptive. To be deceptive, the display must be false or misleading. *See FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001). Rule 9(b) requires that plaintiffs plead "*what* is false or misleading" and "*why* it is false." *Morgan v. Twitter, Inc.*, 2025 WL 1248821, at \*3 (9th Cir. Apr. 30, 2025) (emphasis added). The act or practice alleged to be deceptive must be considered from the perspective of "consumers acting reasonably under the circumstances." *Davis v. HSBC Bank*, 691 F.3d 1152, 1168 (9th Cir. 2012). Rather than identify with particularity what about Ticketmaster's fee display was false or misleading—much less *why* it was misleading—the FTC's allegations confirm that Ticketmaster's pricing display was not false or misleading.

The FTC concedes Ticketmaster displayed the face value price at the outset of the transaction and the final price, inclusive of fees, before purchase. *See* Compl. ¶ 40 ("Ticketmaster shows the list price for the available tickets" on the ticket

selection page), ¶ 52 (noting disclosure of fees "at the end" of the purchase flow). Where the higher total price is conspicuously disclosed by the end of the transaction, courts have found the price is not deceptive. *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 265 (S.D. Cal. 2023) (finding advertised rates "on the first page of Marriott's booking process" not deceptive because additional fees were "clearly and conspicuously disclosed by the end of the booking transaction"). The Complaint also concedes that when a consumer sought to buy a ticket, they were presented with a disclosure accompanying the face value price that the final price would include fees. *See* Compl. ¶ 46 (discussing +Fees notice at ticket selection). Qualifying language that unambiguously clarifies an allegedly misleading statement defeats a deception claim. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (finding a sweepstakes promotion not deceptive where qualifying language "expressly and repeatedly" appeared regarding requirements for winning sweepstakes); *see also Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) ("a reasonable consumer … cannot look at only one statement to the exclusion of everything else and claim he has been misled").

## B. The FTC's Claim Regarding Ticketmaster's Ticket Limit Disclosures (Count II) Fails

The FTC also claims that Ticketmaster's ticket limit disclosures are deceptive under Section 5. According to the FTC, Ticketmaster "deceptively represent[s] that [it] impose[s] strict ticket limits," yet "routinely allow[s] ticket brokers to exceed [them]." Compl. ¶¶ 14, 116. This claim also fails.

### 1. The FTC Fails To Adequately Allege Ticketmaster's Ticket Limit Disclosures Are False Or Misleading

Plaintiffs cannot plausibly allege that Ticketmaster's posted ticket-limit disclosures are false or misleading. The Complaint concedes that Ticketmaster posts ticket purchase limits at the event organizers' direction. Compl. ¶ 66 ("For primary market sales … artists determine the number of tickets that a consumer can buy[.]");

*id.* ¶ 67 ("For each event, Ticketmaster … displays the ticket limit alongside other event information in the ticket browsing flow."). The Complaint does not allege, nor could it, that Ticketmaster represented it could detect every ticket purchase violation or take action against every ticket purchase limit violator. Instead, Ticketmaster "reserve[s] the right," but is not obliged, to cancel tickets it suspects of being acquired in excess of ticket purchase limits. *Id.* ¶ 69.

And Ticketmaster does attempt to identify violations. The Complaint concedes that Ticketmaster successfully blocked attempts to exceed ticket purchase limits, including attempts from the same IP address. *See id.* ¶ 71. Plaintiffs have therefore failed to adequately allege how or why Ticketmaster's ticket purchase limits are false or misleading.

### 2. The FTC Fails To Adequately Allege Ticketmaster's Ticket Limit Disclosures Are Material

Plaintiffs likewise fail to allege that the existence of a ticket purchase limit was material to any consumer's decision to participate in an onsale for a particular event. Nor can they. A representation is material if it "involves information that [would be] important to consumers and, hence, likely to affect their choice of, or conduct regarding that service." *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006). Yet Plaintiffs concede that the primary market corresponds to the *original* sale of the ticket, which is handled by a single issuer, such as Ticketmaster. *See* Compl. ¶ 33. Because of this, the consumer would not—and could not—choose to purchase a primary ticket from a different issuer based on differences in ticket purchase limits.

The Complaint also concedes that "[f]or high-demand events, [] face value prices are often only available to consumers on the primary market." *Id.* ¶ 72. Therefore, a reasonable consumer would not opt to purchase from the secondary market instead, where resale prices are higher. *See id.* ¶ 73. Accordingly, there is no allegation that the ticket purchase limits themselves changed consumer behavior.

30

## III.    THE STATE-LAW CLAIMS (COUNTS IV - X) MUST BE DISMISSED

The State Plaintiffs also assert claims under state deceptive-practices laws. Because the federal claims should be dismissed, the Court should decline supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(c).[2] Even if the Court retains jurisdiction, the state-law claims fail for the same reasons as the Section 5 claims. *See* Compl. pp. 59-73; *cf. In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 539 (N.D. Ill. 2019) ("Courts applying [state] law have held that consumer protection claims based on the same factual allegations as a failed antitrust claim must likewise be dismissed."). In Florida and Utah, the deceptive-practice statutes expressly incorporate the FTC Act standards by reference. *See* Fla. Stat. § 501.204(1); Utah Code Ann. § 13-11-2(4). And Illinois, Tennessee, and Colorado interpret their deceptive-practice statutes to mirror the FTC Act standards. *See Aliano v. Ferriss*, 988 N.E.2d 168, 176 (Ill. App. Ct. 2013); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005); *People ex rel. Dunbar v. Gym of Am., Inc.*, 493 P.2d 660, 668-69 (Colo. 1972).[3]

Like the Section 5 claims, the state causes of action collapse into two core theories: (1) alleged pricing disclosures that purportedly misled consumers about total ticket prices; and (2) alleged misrepresentation about and failures to enforce

---

[2] Under that statute, when the court "has dismissed all claims over which it has original jurisdiction," which here would be the BOTS Act and FTC Act claims, the Court "may decline to exercise supplemental jurisdiction" over the state-law claims. 28 U.S.C. § 1367(c)(3).

[3] Courts have not analyzed the Nebraska Uniform Deceptive Trade Practices Act ("NDTPA") alongside the FTC Act, but Nebraska courts' interpretation of the NDTPA demonstrates that these claims fail for the same reasons discussed above. *See Homebuyers Inc. v. Watkins*, 2019 WL 2361760, at *9 (Neb. Ct. App. June 4, 2019) ("[NDTPA] provides relief from future damage, not past damage"). Nebraska's NDTPA theory rests on allegations about Ticketmaster's prior fee displays, which the Complaint concedes were superseded when Ticketmaster implemented all-in pricing. Nebraska also cites a grab bag of subsections, Compl. ¶ 136, but does not plead non-conclusory facts showing, for example, how Ticketmaster's challenged statements caused a likelihood of confusion as to source or sponsorship under (a)(2); misrepresented characteristics or quality of goods or services under (a)(5); or advertised goods "with intent not to sell them as advertised" under (a)(10).

ticket limits. Colorado, Florida, Illinois, Nebraska, and Utah each allege both theories as a basis for liability under their respective state consumer protection statutes. Compl. pp. 59-73. Tennessee's claim focuses solely on Ticketmaster's representation regarding purchase limits. Compl. ¶ 143. Because the Complaint fails to allege that either Ticketmaster's fee disclosures or ticket limit disclosures violate the FTC Act, *see supra* Section II, each of Florida, Illinois, Tennessee, Utah, Colorado, and Nebraska's related state claims also fail. *See Bell v. 1220 Mgmt. Grp., L.L.C.*, 2018 WL 3054795, at *1 n.1 (S.D. Fla. June 20, 2018) (motion to dismiss order "analyz[ing] the FDUTPA and FTC Act claims concurrently" because "FDUTPA incorporates the FTC Act"); *Aliano*, 988 N.E.2d at 176 (Illinois court applying FTC standard to state law deceptive conduct claim); *Tucker*, 180 S.W.3d at 116 (Tennessee courts "look to the federal law" defining "deceptive" to determine how they should be applied); *FTC v. Nudge, LLC*, 2022 WL 2132695, at *13 (D. Utah June 14, 2022) (holding that "the standards for analyzing deceptive act or practice claims under [Utah law] are generally the same as for misrepresentation claims under § 5").

The Utah Consumer Sales Practices Act ("UCSPA") claim also fails. A UCSPA claim requires more than "simply repackaged" deception allegations. *Chadwick v. Bonneville Billing & Collections, Inc.*, 2021 WL 1140206, at *4 (D. Utah Mar. 25, 2021). "[A] court must assess the circumstances of each particular case in light of the twofold purpose of the doctrine, prevention of oppression and of unfair surprise." *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985); *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1245 (D. Utah 2016) ("The standard for proving unconscionability [under the UCSPA] is high"). Here, the Complaint merely "repackage[s] the . . . allegedly deceptive conduct and call[s] it unconscionable." *Chadwick*, 2021 WL 1140206, at *4; Compl. ¶¶ 151-62. That is insufficient to state a claim.

32

# CONCLUSION

The Complaint should be dismissed with prejudice.

Dated:  January 6, 2026

Respectfully submitted,

LATHAM & WATKINS LLP
Michael H. Rubin
Scott D. Joiner
Alexander C.K. Wyman
Will Schildknecht
Max A. Shapiro

SIDLEY AUSTIN LLP
Benjamin M. Mundel


By */s/ Michael H. Rubin*
Michael H. Rubin

*Attorneys for Defendants*
*Live Nation Entertainment, Inc. and*
*Ticketmaster L.L.C.*

33

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C., certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.


Dated:  January 6, 2026                    LATHAM & WATKINS LLP


                                                By */s/ Michael H. Rubin*
                                                    Michael H. Rubin

                                                *Attorneys for Defendants*
                                                *Live Nation Entertainment, Inc. and*
                                                *Ticketmaster L.L.C.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW