**LATHAM & WATKINS LLP**
  Michael H. Rubin (Bar No. 214636)
   *michael.rubin@lw.com*
  Scott D. Joiner (Bar No. 223313)
   *scott.joiner@lw.com*
  505 Montgomery Street, Suite 2000
  San Francisco, California 94111-6538
  Telephone: (415) 391-0600

  Alexander C.K. Wyman (Bar No. 295339)
   *alex.wyman@lw.com*
  Will Schildknecht (Bar No. 348372)
   *will.schildknecht@lw.com*
  Max A. Shapiro (Bar No. 334929)
   *max.shapiro@lw.com*
  10250 Constellation Blvd., Suite 1100
  Los Angeles, CA 90067
  Telephone: (424) 653-5500

**SIDLEY AUSTIN LLP**
  Benjamin M. Mundel (*pro hac vice forthcoming*)
   *bmundel@sidley.com*
  1501 K Street, N.W.
  Washington, DC 20005
  Telephone: (202) 736-8000

Attorneys for Defendants
Live Nation Entertainment, Inc. and Ticketmaster
L.L.C.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION; ATTORNEY GENERAL OF COLORADO; OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS; THE PEOPLE OF THE STATE OF ILLINOIS; STATE OF NEBRASKA; STATE OF TENNESSEE; STATE OF UTAH; UTAH DIVISION OF CONSUMER PROTECTION; COMMONWEALTH OF VIRGINIA, <br><br> Plaintiffs, <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC. and TICKETMASTER L.L.C., <br><br> Defendants. | Case No. 2:25-cv-08884-MEMF-MAA <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, CIVIL PENALTIES, AND OTHER RELIEF** <br><br> Date:     February 19, 2026 <br> Time:     10:00 a.m. <br> Place:    Courtroom 8B <br><br> Hon. Maame Ewusi-Mensah Frimpong |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 8

II.   RULE 9(B) APPLIES BECAUSE PLAINTIFFS' CLAIMS
      SOUND IN FRAUD ............................................................................ 9

III.  PLAINTIFFS' BOTS ACT CLAIM FAILS ...................................... 10

      A.    Ticketmaster Does Not "Sell Or Offer To Sell" Third-
            Party Tickets Listed On Its Platform ................................. 10

      B.    Plaintiffs Still Do Not Connect Any Resale Listing To
            Circumvention Of A Specific Technological Control ..................... 13

            1.    Plaintiffs' New "Ticket Quantity Selector" Theory
                  Fails ........................................................................ 13

            2.    Plaintiffs Fail To Allege Circumvention Of The
                  Ticket Selector Or Any Other Technological
                  Control .................................................................... 14

            3.    Plaintiffs' General Assertions Regarding Broker
                  Conduct Do Not Allege A Single Ticket Obtained
                  In Violation Of The BOTS Act ................................. 16

      C.    There Are No Well-Pled Allegations That Ticketmaster
            "Knew Or Should Have Known" That A Ticket On Its
            Resale Platform Was Acquired Through Circumvention .................. 17

      D.    Plaintiffs Do Not Allege Ticketmaster Has The Ability
            To Control Or Directly Participates In Scalpers' Conduct .............. 18

      E.    At Minimum, The Claim For Civil Penalties Must Be
            Dismissed Because The FTC Fails To Adequately Allege
            Ticketmaster Knew Its Conduct Violated The BOTS Act .............. 18

IV.   THE FTC'S SECTION 5 CLAIMS MUST BE DISMISSED ................... 19

      A.    The FTC's Claim Regarding Ticketmaster's Fee
            Disclosures Fails ................................................................ 19

2

1      1.    The FTC Fails To Satisfy Section 13(b) By
2            Alleging Ongoing Or Imminent Misconduct ........................... 19

3    B.    The FTC's Claim Regarding Ticketmaster's Ticket Limit
4            Disclosures Fails ..................................................................... 25

5      1.    The FTC Fails To Plausibly Allege That The
6            Ticket Limit Disclosures Are False Or Misleading.................. 25

7      2.    The FTC Fails To Plausibly Allege Materiality ...................... 26

8  V.    THE STATE-LAW CLAIMS MUST BE DISMISSED............................. 27

9  VI.    CONCLUSION ........................................................................................... 28

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AMG Cap. Mgmt., LLC v. FTC,*
593 U.S. 67 (2021) ...................................................................................20, 21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...........................................................................17, 20, 28

*Chadwick v. Bonneville Billing & Collections, Inc.,*
2021 WL 1140206 (D. Utah Mar. 25, 2021).......................................................27

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014).............................................................................17

*Fabozzi v. StubHub, Inc.,*
2012 WL 506330 (N.D. Cal. Feb. 15, 2012)......................................................12

*Facebook, Inc. v. Power Ventures, Inc.,*
844 F.3d 1058 (9th Cir. 2016)....................................................................15, 16

*Faulkner v. ADT Sec. Servs., Inc.,*
706 F.3d 1017 (9th Cir. 2013)...........................................................................28

*Franklin-Chomas v. Internet Referral Servs., LLC,*
2025 WL 2917158 (S.D. Cal. Oct. 14, 2025), *appeal pending*, No.
25-6832 (9th Cir.) ..............................................................................................11

*FTC v. AbbVie Inc.,*
976 F.3d 327 (3d Cir. 2020) ..............................................................................20

*FTC v. Amazon.com, Inc.,*
735 F. Supp. 3d 1297 (W.D. Wash. 2024) ........................................................24

*FTC v. AMG Cap. Mgmt., LLC,*
910 F.3d 417 (9th Cir. 2018)..............................................................................20

*FTC v. Credit Bureau Ctr., LLC,*
937 F.3d 764 (7th Cir. 2019)..............................................................................20

*FTC v. Cyberspace.com LLC,*
453 F.3d 1196 (9th Cir. 2006)............................................................................26

4

1
2

*FTC v. Doxo, Inc.*,
   771 F. Supp. 3d 1162 (W.D. Wash. 2025) ........................................................ 24

3
4

*FTC v. Freecom Commc'ns, Inc.*,
   401 F.3d 1192 (10th Cir. 2005) ........................................................................... 9

5
6

*FTC v. Gill*,
   265 F.3d 944 (9th Cir. 2001) ............................................................................. 23

7
8

*FTC v. Grand Canyon Educ., Inc.*,
   745 F. Supp. 3d 803 (D. Ariz. 2024) ................................................................... 9

9

*FTC v. Lights of Am., Inc.*,
   760 F. Supp. 2d 848 (C.D. Cal. 2010) .......................................................... 9, 24

10
11

*FTC v. Paddle.com Market Ltd.*,
   No. 1:25-cv-01886 (D.D.C. June 16, 2025) ...................................................... 12

12
13
14

*FTC v. QYK Brands LLC*,
   2022 WL 1090257 (C.D. Cal. Apr. 6, 2022), *vacated in part*, 2024
   WL 1526741 (9th Cir. Apr. 9, 2024) ................................................................ 22

15
16

*FTC v. Shire ViroPharma, Inc.*,
   917 F.3d 147 (3d Cir. 2019) .................................................................. 19, 20, 21

17

*Gallegos v. LVNV Funding LLC*,
   169 F. Supp. 3d 1235 (D. Utah 2016) ............................................................... 27

18
19

*Groff v. DeJoy*,
   600 U.S. 447 (2023) .......................................................................................... 21

20
21

*Hall v. Marriott Int'l, Inc.*,
   344 F.R.D. 247 (S.D. Cal. 2023) ................................................................. 23, 24

22
23

*Harber v. FCA US, LLC*,
   2026 WL 114455 (C.D. Cal. Jan. 15, 2026) ..................................................... 17

24
25

*Hardt v. Reliance Standard Life Ins. Co.*,
   560 U.S. 242 (2010) .......................................................................................... 21

26
27
28

*Harris v. Las Vegas Sands L.L.C.*,
   2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) .................................................. 23

5

*iSpot.tv, Inc. v. Teyfukova*,
    2023 WL 3602806 (C.D. Cal. May 22, 2023)....................................................16

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .........................................................................9

*Matthews v. Apple, Inc.*,
    769 F. Supp. 3d 999 (N.D. Cal. 2024)......................................................14, 18

*Milner v. Dep't of Navy*,
    562 U.S. 562 (2011) .......................................................................................21

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022)........................................................................17

*Resort Car Rental Sys., Inc. v. FTC*,
    518 F.2d 962 (9th Cir. 1975) .........................................................................24

*Roberts v. Sea-Land Servs., Inc.*,
    566 U.S. 93 (2012) .........................................................................................10

*Singh v. U.S. Citizenship & Immigr. Servs.*,
    2025 WL 2684200 (C.D. Cal. June 24, 2025)................................................21

*Tanzin v. Tanvir*,
    592 U.S. 43 (2020) .........................................................................................15

*U.S. ex rel. Modglin v. DJO Glob. Inc.*,
    48 F. Supp. 3d 1362 (C.D. Cal. 2014), *aff'd*, 678 F. App'x 594 (9th
    Cir. 2017)........................................................................................................17

*United States v. Corrales-Vazquez*,
    931 F.3d 944 (9th Cir. 2019) .........................................................................11

*United States v. Zaken Corp.*,
    57 F. Supp. 3d 1233 (C.D. Cal. 2014)...........................................................22

*Van Buren v. United States*,
    593 U.S. 374 (2021) .......................................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..........................................................................9

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 F.4th 995 (9th Cir. 2023) ................................................................. 17

## STATUTES

15 U.S.C.
    § 45(m)(1)(A) ....................................................................................... 18
    § 45c(a)(1)(A) ......................................................................... 11, 14, 16
    § 45c(a)(1)(B) ......................................................................... 10, 11, 16
    § 53(b) ............................................................................................ 19, 21

17 U.S.C. § 1201(a)(3)(A) ........................................................................ 15

28 U.S.C. § 1367(c)(3) .............................................................................. 27

## OTHER AUTHORITIES

90 Fed. Reg.
    2066 (Jan. 10, 2025) ....................................................................... 21, 22

*Webster's Third New International Dictionary* 5 (1981) .......................... 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

## I.    INTRODUCTION

Plaintiffs' Opposition confirms their core theory that a marketplace should be treated as the "seller" of third-party listings simply because they host and enable those transactions. Their radical position fails. The BOTS Act creates no such platform liability, and Plaintiffs cannot use this lawsuit to legislate—much less enforce—a code of conduct that recasts intermediaries as sellers. The plain language of the statute Congress wrote targets scalpers who circumvent ticket-issuers' technological controls to acquire tickets and those who knowingly traffic in those ill-gotten tickets; it does not convert ticketing platforms into sellers. One need look no further than the BOTS Act's ten-year history to confirm this: the FTC has *never* suggested, interpreted, or enforced the statute to reach a marketplace or ticket issuer.

Even if Plaintiffs' theory were viable, their BOTS Act claim still fails because the Complaint does not tie any resale listing on Ticketmaster to the circumvention of any particular "technological control or measure." The BOTS Act requires a predicate showing that specific tickets were obtained by "circumvent[ing]" a defined technological control or measure. Plaintiffs ignore those elements, evidently assuming that resold tickets were illegally acquired—without any inquiry into circumvention—merely because the reseller possessed too many tickets. They identify no control actually bypassed to obtain any ticket later resold, and the Opposition does nothing to cure this defect beyond pointing back to the Complaint's generalized assertions. Plaintiffs also do not plausibly allege that Ticketmaster knew or should have known—at the time of resale—that a particular ticket had been acquired by defeating a particular control.

Plaintiffs' Section 5 theories fare no better. Section 13(b) requires ongoing or imminent misconduct—yet the Complaint acknowledges Ticketmaster's implementation of all-in pricing consistent with the FTC's rule, and the Opposition identifies no facts suggesting an imminent reversion. Absent a present or impending violation or a deceptive representation pleaded with particularity, a Section 5 claim

8

1  cannot proceed. The derivative state-law claims should be dismissed for the same

2  reasons, and the Court should decline supplemental jurisdiction if the federal claims

3  fall.

4  **II.   RULE 9(b) APPLIES BECAUSE PLAINTIFFS' CLAIMS SOUND IN**

5  **FRAUD**

6      Plaintiffs' claims are all predicated on allegedly deceptive representations and

7  omissions and therefore sound in fraud. A claim "sound[s] in fraud" where the

8  plaintiff alleges that the defendant has engaged in "a unified course of fraudulent

9  conduct." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.

10 2003). Here, Plaintiffs unquestionably allege a unified course of fraudulent

11 conduct—that Ticketmaster purportedly "displayed deceptively low ticket prices to

12 consumers and charged much more," "deceptively represent[ed] that they impose

13 strict ticket limits for individual events," and "allow[ed] brokers to circumvent their

14 ticket limits so that those same brokers can then list the unlawfully purchased tickets

15 on Defendants' resale marketplace driv[ing] up the price of tickets." Compl. ¶¶ 12,

16 14, 15. They double down on these allegations in their Opposition, claiming in the

17 first sentence that Defendants "deceived consumers with false low ticket prices."

18 Opp. 1. "Because [Plaintiffs] allege[] a unified fraudulent course of conduct, [the]

19 … entire complaint must therefore be pleaded with particularity." *Kearns v. Ford

20 Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

21      Plaintiffs rely on a footnote from a Tenth Circuit case to argue that Rule 9(b)

22 does not apply since their claims "do not require proof of common law fraud's

23 elements." Opp. 6 (citing *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n.7

24 (10th Cir. 2005)). But that footnote in *Freecom* was "purely dicta" in a case that "did

25 not involve … a motion to dismiss under Rule 9(b)." *FTC v. Lights of Am., Inc.*, 760

26 F. Supp. 2d 848, 854 (C.D. Cal. 2010). "Contrary to the FTC's position, a claim does

27 not need to include all of the elements of a claim for fraud … in order for it to trigger

28 the heightened pleading standard of Rule 9(b)." *Id.*; *see also FTC v. Grand Canyon*

9

*Educ., Inc.*, 745 F. Supp. 3d 803, 836 (D. Ariz. 2024) (Rule 9(b) applies "when the claim 'sounds in fraud,'" even if fraud is not "an essential element of the claim").

## III.    PLAINTIFFS' BOTS ACT CLAIM FAILS

Plaintiffs do not dispute that under the BOTS Act they must adequately allege that: (1) Ticketmaster "sell[s] or offer[s] to sell" tickets; (2) those tickets were "obtained in violation of subparagraph (A)," meaning they were acquired through the "circumvent[ion]" of a "technological control or measure"; and (3) Ticketmaster "knew or should have known" the tickets were "acquired in violation of subparagraph (A)." 15 U.S.C. § 45c(a)(1)(B). Plaintiffs' Opposition only underscores their failure to adequately allege any of these required elements.

### A.    Ticketmaster Does Not "Sell Or Offer To Sell" Third-Party Tickets Listed On Its Platform

Plaintiffs' effort to rewrite the BOTS Act to impose platform liability for third-party listings is irreconcilable with the text and structure of the statute. As Plaintiffs recognize, "sell or offer to sell" takes on its "ordinary meaning." Opp. 22. The ordinary meaning of "sell" is to transfer property or rights for consideration, and an "offer to sell" manifests a willingness to enter that transfer. *See* Mot. 18-19. Rather than apply this meaning "in their context and with a view to their place in the overall statutory scheme," *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012), the Opposition divorces these terms from the ticket resale market at issue.

On the resale market, the seller is the ticket-holder or broker who previously acquired the ticket and then sets the price and decides whether to transfer (resell) it. Mot. 19. By contrast, Ticketmaster provides a marketplace or platform to facilitate listings and transfers. Compl. ¶¶ 36-39, 48 (noting the ticket-holder sets the initial price and receives the proceeds). But under Plaintiffs' reading of the BOTS Act, either these consumers or brokers would not constitute sellers, or there is no distinction between these resellers and the platforms. Far from an "ordinary

1  meaning," Plaintiffs ask this Court to read the terms contrary to the meaning

2  repeatedly adopted by courts across jurisdictions. *See* Mot. 20 (collecting cases).[1]

3      The statute's structure also makes clear that subparagraph (A) targets

4  scalpers' acquisition of tickets by "circumvent[ing] a ... technological control or

5  measure." 15 U.S.C. § 45c(a)(1)(A). Subparagraph (B) then targets the subsequent

6  sale of those ill-gotten tickets by a person who either participated in or had the ability

7  to control the subparagraph (A) violation, or who knew or should have known the

8  tickets were so obtained. *Id.* § 45c(a)(1)(B).[2] Construed as a "seamless whole,"

9  *United States v. Corrales-Vazquez*, 931 F.3d 944, 950 (9th Cir. 2019), the statute is

10 directed at scalpers and their potentially broader operations on both the buy and sell

11 side, not the ticket issuer whose technological controls the scalper circumvented.

12 This is consistent with the FTC's prior enforcement of the BOTS Act, which has—

13 until now—been limited to scalpers and broker businesses that allegedly bypass

14 Ticketmaster's technological controls. *See* Mot. 16. Plaintiffs do not suggest

15 otherwise. By targeting platforms, Plaintiffs suggest the best way to avoid liability

16 is to use no technological controls or measures at all.

17      In addition, Ticketmaster's acts as a platform, like reissuing a digital ticket

18 upon transfer, do not transform it into the seller. The Complaint alleges that "the

19 secondary market purchaser does not know who purchased the ticket from the

---

[1] Plaintiffs observe that none of Ticketmaster's cited cases arose under the BOTS Act. Opp. 24-25. But that is because the FTC has only ever sought to enforce the Act against brokers who sell tickets. Mot. 16. And against Ticketmaster's mountain of precedent construing similar terms in other contexts, Plaintiffs offer nothing beyond a single district court case that itself is not about the BOTS Act. *See* Opp. 24 (citing *Franklin-Chomas v. Internet Referral Servs., LLC*, 2025 WL 2917158 (S.D. Cal. Oct. 14, 2025) (analyzing Cal. Bus. & Prof. Code § 22502.2), *appeal pending*, No. 25-6832 (9th Cir.)).

[2] References in the statute to "participation," "ability to control," and "knew or should have known" do not broaden the statute's reach (Opp. 26); they merely distinguish among common participants in a scalping distribution chain—brokers, runners, and affiliates—who control or knowingly traffic in ill-gotten tickets.

11

1 primary market; the only entity named in connection with the resale is

2 Ticketmaster." Compl. ¶ 48. Plaintiffs concede that a resale ticket is, by definition,

3 a ticket that has already been acquired by someone and is being "listed for resale"

4 by that person. *Id.* ¶ 33. That person is the seller; Ticketmaster merely offers a

5 platform to facilitate the sale. *See, e.g.*, *Fabozzi v. StubHub, Inc.*, 2012 WL 506330,

6 at *1 n.1 (N.D. Cal. Feb. 15, 2012) ("Stubhub does not actually buy or sell tickets;

7 rather, it is a marketplace for third-party users to buy and sell tickets. Plaintiff

8 acknowledges as much [] when he alleges that he purchased his Phillies tickets from

9 an '*unknown seller*' on Stubhub." (emphasis added)).[3] That buyers submit their

10 payment to Ticketmaster is of no moment. The platform merely publishes the actual

11 seller's offer and facilitates payment and transfers. Treating the platform as the seller

12 would improperly collapse the distinction between the person offering the ticket and

13 the intermediary that hosts the listing.

14       Plaintiffs' reliance on Ticketmaster's status as the "merchant of record" for

15 resale tickets, Opp. 23, similarly fails to establish that Ticketmaster "sells or offers

16 to sell" tickets under the BOTS Act. It also flatly contradicts the FTC's recent

17 position in other filings. For example, in a complaint against payment processing

18 company, Paddle, the FTC stated that "Paddle ... is not the actual seller of the

19 products and services sold by Paddle's clients," even though Paddle was expressly

20 "the 'merchant of record' ... in the sales transaction with consumers." Complaint at

21 9, *FTC v. Paddle.com Market Ltd.*, No. 1:25-cv-01886 (D.D.C. June 16, 2025).

22 Plaintiffs' self-serving, contradictory, and manufactured-for-litigation position

23 should be rejected.

24

25

26     [3] Plaintiffs dismiss *Fabozzi*'s discussion of StubHub's status as a non-seller as dicta. Opp. 25 n.8. But *Fabozzi*'s discussion is rooted in the common-sense

27 understanding that the fact that the plaintiff purchased tickets from an "unknown seller" confirmed Stubhub itself was *not* the seller. 2012 WL 506330, at *1 n.1. Here,

28 too, the FTC acknowledges that buyers in the secondary market purchase tickets from unknown sellers. Compl. ¶ 48.

1    Plaintiffs also point to prior use of the term "sell" in broad statements taken
2    out of context concerning matters of general policy. Plaintiffs first reference
3    Ticketmaster describing itself as "selling tickets to consumers in both the primary
4    and secondary market for live-event tickets." Opp. 22. This transparent attempt to
5    repurpose a statement describing Ticketmaster's business in the broadest colloquial
6    sense has no bearing on whether Ticketmaster actually "sells or offers to sell" tickets
7    within the statutory meaning of the BOTS Act.

8    Plaintiffs similarly point to public comments submitted in support of
9    narrowing the language of the Act and advocating for broader enforcement authority.
10   Opp. 24 & n.7. That advocacy occurred in response to agencies' requests for
11   comments "on potential regulation or legislation to protect consumers." As the
12   context makes clear, these statements reflect Live Nation's view *as a matter of policy*
13   that the BOTS Act would be more effective if applied broadly and that Congress
14   should reform the Act accordingly. They do not reflect Ticketmaster's view *as a*
15   *matter of law* on the meaning of the Act's terms, which remain clear and narrow.

16   **B.    Plaintiffs Still Do Not Connect Any Resale Listing To**
17   **Circumvention Of A Specific Technological Control**

18   The BOTS Act claim must be dismissed for the additional reason that
19   Plaintiffs still fail to allege that any specific ticket on its resale platform was obtained
20   through a predicate subparagraph (A) violation. The Opposition, like the Complaint,
21   fails both to identify a single technological control that was circumvented to obtain
22   a specific ticket and to connect any resale listing on Ticketmaster to such
23   circumvention, as required to state a claim under the BOTS Act. *See* Mot. 21-24.

24   1.    Plaintiffs' New "Ticket Quantity Selector" Theory Fails

25   Recognizing the Complaint's failure to identify a technological control or
26   measure, Plaintiffs try to salvage the claim by advancing a new theory that the "ticket
27   quantity selector (*i.e.*, the dropdown menu that allows consumers to choose 1-8
28   tickets to purchase)" is the specific "technological control or measure" being

13

circumvented. Opp. 20. Specifically, Plaintiffs claim that "scalpers use hundreds of accounts to purchase thousands of tickets above the limit, each time bypassing the ticket quantity selector that Defendants used to enforce ticket limits at the point of sale." *Id.* at 21. Yet despite their focus on the "selector" in their Opposition, *id.* at 3, 20-21, Plaintiffs make no mention of it in the Complaint.[4] The Court should reject Plaintiffs' attempt to amend their Complaint by revising their theory of liability in their Opposition. *See Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1015 (N.D. Cal. 2024) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.").

2. <u>Plaintiffs Fail To Allege Circumvention Of The Ticket Selector Or Any Other Technological Control</u>

Plaintiffs' novel theory falls far short of alleging circumvention of any technological control. As Plaintiffs agree, "[c]ircumvent" in ordinary parlance means to avoid or bypass a particular restriction, not to comply with it repeatedly. *See* Opp. 18; Mot. 23. But purchasing tickets within a per-transaction quantity selector across separate accounts or transactions—which could allow an individual or broker to acquire tickets in excess of the limit on a single account's transaction—does not circumvent that selector. A selector caps the number of tickets in a single transaction on one account; selecting a permissible quantity and completing a transaction means the control was not avoided, but rather that it operated as designed.

Plaintiffs' contrary argument—that purchasers "get[] around" the quantity selector by making multiple authorized purchases that each *comply* with the selector's cap, Opp. 20-21—conflates posted event ticket purchasing limits and the technological measures "used … to enforce" them. 15 U.S.C. § 45c(a)(1)(A).

---

[4] At most, the Complaint makes one passing reference to "a drop-down menu that allows the purchaser to select only up to the limit," Compl. ¶ 70, but does not allege the drop-down menu is a "technological control or measure."

1    Subparagraph (A) targets circumvention of a "technological control or measure," not

2    any violation of a ticket limit. Congress could have written subparagraph (A) to

3    reach any violation of posted limits, but instead the plain language of the BOTS Act

4    targets a particular manner of ticket limit violations—those that occur through

5    circumvention of a technological control.

6        This understanding follows directly from how Congress and courts understand

7    the concept of "circumvention" in similar statutes governing technological access.

8    The Digital Millennium Copyright Act ("DMCA"), for example, defines

9    "circumvent a technological measure" to mean "avoid, bypass, remove, deactivate,

10   or impair" the measure. 17 U.S.C. § 1201(a)(3)(A).[5] The Computer Fraud and Abuse

11   Act is similarly instructive: where Congress specifies a particular mode of unlawful

12   access, courts do not extend the statute to cover all violations of policy or use

13   restrictions. *See Van Buren v. United States*, 593 U.S. 374, 384-96 (2021)

14   (distinguishing violations of rules from defeating access barriers); *Facebook, Inc. v.*

15   *Power Ventures, Inc.*, 844 F.3d 1058, 1066-67 (9th Cir. 2016) (same).

16       Plaintiffs' theory inverts that logic by treating a purchaser's compliance with

17   a per-transaction cap as circumvention whenever purchases are aggregated across

18   transactions or accounts. That is not how technological "circumvent[ion]" works.

19   Plaintiffs acknowledge that cross-transaction and cross-account enforcement rely on

20   different tools, including TicketCounter's automated blocking and post-purchase

21   analyses, as well as account-verification and clustering techniques that detect

22   coordinated purchases. Compl. ¶¶ 71, 76. If Plaintiffs intend to allege that scalpers

23   defeated those cross-transaction technologies to acquire tickets later resold, they

24

25   [5] Plaintiffs dismiss the DMCA by pointing out that it defines "circumvent" whereas the BOTS Act does not. Opp. 19. But Plaintiffs do not argue that the DMCA's definition meaningfully differs from the ordinary meaning of the term. The DMCA thus provides useful guidance in ascertaining the meaning of that term in the BOTS Act, which (like the DMCA) uses circumvent in reference to technological controls. Because Congress "use[d] the same terminology" in the BOTS Act that it had previously used in the DMCA, "'it is reasonable to believe that the terminology bears a consistent meaning.'" *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020).

26

27

28

15

must allege that, with facts tethered to specific tickets. They do not. Courts demand precisely that level of specificity when claims turn on bypassing technological measures. *See Power Ventures*, 844 F.3d at 1066-67; *iSpot.tv, Inc. v. Teyfukova*, 2023 WL 3602806, at *5-7 (C.D. Cal. May 22, 2023) (Frimpong, J.) (dismissing DMCA anti-circumvention claim that failed to allege facts showing the defendant circumvented a technological measure).

### 3.    Plaintiffs' General Assertions Regarding Broker Conduct Do Not Allege A Single Ticket Obtained In Violation Of The BOTS Act

Plaintiffs' Opposition also cannot cure the Complaint's failure to connect any purported circumvention to a specific ticket. To plead "circumvent[ion]" of a "technological control or measure," Plaintiffs must allege facts showing that a purchaser avoided or disabled a specific enforcement technology to acquire the particular tickets later resold. *See* 15 U.S.C. § 45c(a)(1)(A)-(B). That requires nonconclusory allegations tethering specific purchases to the evasion of specific controls, not generalized assertions that aggregate holdings exceeded a posted limit.

Plaintiffs instead generally allege that many—though by no means all—resold tickets were acquired through technological exploits of various kinds. Opp. 20-21; *see* Compl. ¶¶ 74, 76, 82, 105. Some of those efforts may well constitute circumvention of technological controls and therefore violate the BOTS Act. For example, technologies such as masked IPs and SIM boxes (Opp. 21) blind Ticketmaster to who the purchaser is, making it difficult for Ticketmaster to identify bad actors through its risk models.

But Plaintiffs' claim is not so limited. They are simply looking at how many tickets a broker is selling and inferring circumvention without more. That vague pleading fails to satisfy both Rule 8(a)'s requirement to plead a plausible claim and Rule 9(b)'s requirement to plead with particularity. Without specific, nonconclusory facts linking particular purchases to the evasion of a particular technological

16

control—and showing that those same tickets were later resold—Plaintiffs have not pleaded a predicate subparagraph (A) violation, and their subparagraph (B) theory fails. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996, 1000 (9th Cir. 2014) (requiring facts supporting a plausible inference of each element, especially where lawful explanations are equally plausible).

### C. There Are No Well-Pled Allegations That Ticketmaster "Knew Or Should Have Known" That A Ticket On Its Resale Platform Was Acquired Through Circumvention

The Opposition likewise does not cure the Complaint's failure to adequately allege that Ticketmaster "knew or should have known" that any specific ticket was acquired in violation of subparagraph (A) of the BOTS Act. While knowledge may be alleged "generally," it must "still be pleaded sufficiently to make entitlement to relief plausible." *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1388 (C.D. Cal. 2014), *aff'd*, 678 F. App'x 594 (9th Cir. 2017); *see also Harber v. FCA US, LLC*, 2026 WL 114455, at *4 (C.D. Cal. Jan. 15, 2026).

Plaintiffs allege only generalized awareness of broker behavior, not contemporaneous knowledge that any specific ticket was acquired through circumvention of a technological control. Such "[s]weeping generalities" are insufficient to plausibly allege that Ticketmaster "knew or should have known of the specifically alleged [statutory] violations." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022).

Plaintiffs try to rely on what Ticketmaster purportedly "acknowledge[d]" *other* secondary ticket platforms should do, Opp. 28, but as the Ninth Circuit recently recognized in an analogous context, "defendants must have 'contemporary knowledge of which particular listings'" are allegedly unlawful. *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1001 (9th Cir. 2023).[6] And Ticketmaster merely

---

[6] Plaintiffs try to dismiss Ticketmaster's cases because they were decided at summary judgment. But the legal standard articulated in those cases remains just as relevant here. At this stage, Plaintiffs must still plausibly allege actual facts satisfying that legal standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

1    acknowledged that other platforms should not get a free pass on trying to stop bad

2    actors; it was not an acknowledgment of liability.

3    **D.    Plaintiffs Do Not Allege Ticketmaster Has The Ability To Control
        Or Directly Participates In Scalpers' Conduct**

4

5    Plaintiffs' Opposition also impermissibly attempts to manufacture a new

6    theory of liability under subparagraph (B)(i) of the BOTS Act based on

7    Ticketmaster's purported "ability to control" broker purchases. Opp. 26-27. This

8    theory is not pleaded and cannot be raised for the first time in the Opposition. *See*

9    *Matthews*, 769 F. Supp. 3d at 1015.

10    In any event, Plaintiffs' theory is self-defeating: if Ticketmaster could control

11    all bad actors who circumvent its security measures, there would be no need for such

12    controls in the first place. Plaintiffs cannot credibly argue that Ticketmaster is both

13    the entity deploying technological controls and an entity that controls their

14    circumvention. Critically, Plaintiffs allege no facts supporting their control theory.

15    Their sole factual allegation is that Ticketmaster can identify accounts exceeding

16    posted ticket limits. And even assuming Ticketmaster possessed some ability to

17    control scalpers—it does not—this would not establish direct participation in their

18    circumvention of controls. Plaintiffs offer only the conclusory assertion that alleged

19    control equates to direct participation. But a party's failure to prevent conduct does

20    not render that party a direct participant in the conduct itself.

21    **E.    At Minimum, The Claim For Civil Penalties Must Be Dismissed
        Because The FTC Fails To Adequately Allege Ticketmaster Knew
        Its Conduct Violated The BOTS Act**

22

23    Finally, the FTC's claim for civil penalties under Section 5(m)(1)(A) should

24    be dismissed because the FTC has not plausibly alleged that Ticketmaster had

25    "actual knowledge or knowledge fairly implied" that its *own* conduct violated the

26    BOTS Act. 15 U.S.C. § 45(m)(1)(A). This statutory knowledge requirement is

27    distinct from the knowledge required for imposing liability under the BOTS

28    Act. Mot. 25-26.

18

1    The FTC offers only a one-paragraph defense of its penalties claim,
2 maintaining that Ticketmaster knew that "*scalpers'* use of [certain mechanisms] to
3 circumvent [Ticketmaster's] security measures violates the BOTS Act." Opp. 29
4 (emphasis added). That is at most an argument showing Ticketmaster's knowledge
5 that the scalpers' misconduct violated the BOTS Act; it does not demonstrate that
6 Ticketmaster knew its *own* conduct violated the BOTS Act, as required by Section
7 5(m)(1)(A). And Plaintiffs cannot bootstrap "actual knowledge or knowledge fairly
8 implied" by declaring their novel legal theory correct, as their platform-liability view
9 departs from the text's ordinary meaning and a decade of FTC enforcement that
10 targeted scalpers and brokers, not platforms. *See* Mot. 16.

11 **IV.    THE FTC'S SECTION 5 CLAIMS MUST BE DISMISSED**

12    **A.    The FTC's Claim Regarding Ticketmaster's Fee Disclosures Fails**

13    The FTC's first Section 5 claim—that Ticketmaster added fees to the initial
14 list price at the end of the checkout process—must be dismissed for two independent
15 reasons: (1) the FTC fails to allege ongoing or imminent misconduct as required by
16 Section 13(b), and (2) the FTC fails to plausibly allege deception in violation of
17 Section 5. Mot. 27-29.

18        1.    The FTC Fails To Satisfy Section 13(b) By Alleging Ongoing Or
19              Imminent Misconduct

20    The FTC's Section 5 claim is limited by Section 13(b) of the FTC Act, which
21 permits injunctive relief only when the defendant "is violating, or is about to
22 violate," the law. 15 U.S.C. § 53(b). The FTC has failed to satisfy either prong.

23    **"*Is Violating.*"** The FTC has failed to plausibly allege that Ticketmaster "is
24 violating" the law. As the FTC agrees, the plain meaning of "is violating" refers to
25 misconduct that is "ongoing." Opp. 13; *accord FTC v. Shire ViroPharma, Inc.*, 917
26 F.3d 147, 155-56 (3d Cir. 2019) (explaining that "is violating" means "existing" or
27 "ongoing"). And here, the FTC does not plausibly allege that Ticketmaster's alleged
28 misconduct—displaying list prices that do not include fees—is ongoing. To the

19

1   contrary, the FTC admits that Ticketmaster announced its intention to implement

2   all-in pricing in May 2025, in response to the FTC's own rule mandating it. Compl.

3   ¶ 63. And the FTC does not—because it cannot—plausibly allege that Ticketmaster

4   did not follow through with that announcement.

5          Recognizing this problem, the FTC feigns ignorance about "[w]hether and to

6   what extent" Ticketmaster actually implemented all-in pricing and suggests that this

7   issue should be resolved later. Opp. 14. That is not how pleading works. To survive

8   dismissal, the FTC must "plausibly" allege "facts" showing "entitlement to relief"

9   under the statute. *Iqbal*, 556 U.S. at 678-79. The FTC cannot speculate about

10  possible ongoing misconduct; there must be "well-pleaded factual allegations" in its

11  complaint "show[ing]" as much. *Id.* at 679. But nowhere in its complaint does the

12  FTC plausibly allege such, because it well knows that such conduct is *not* ongoing

13  today. This Court should not permit the FTC to evade its pleading obligations and

14  needlessly prolong litigation over outdated conduct that falls outside of Section

15  13(b)'s scope.

16         ***"About to Violate."*** The FTC has also failed to plausibly allege that

17  Ticketmaster "is about to violate" the law. As courts have repeatedly recognized,

18  this prong is "unambiguous[ly]" limited to prohibiting "impending" or "imminent

19  illegal conduct." *Shire*, 917 F.3d at 155-56.[7] And here, the FTC has not alleged any

20  facts suggesting that—despite the FTC's new rule requiring all-in pricing—

21  Ticketmaster is on the brink of abandoning all-in pricing and returning to its prior

22  approach. Nor would any such allegations be plausible, given that Ticketmaster itself

23

24         [7] *See also, e.g.*, *FTC v. AbbVie Inc.*, 976 F.3d 327, 376 (3d Cir. 2020) ("[I]f a
    violator's conduct is neither imminent nor ongoing, there is nothing to enjoin, and
25  the FTC cannot sue under Section 13(b)."); *FTC v. Credit Bureau Ctr., LLC*, 937
    F.3d 764, 772-74 (7th Cir. 2019) (Section 13(b)'s text requires the FTC to show that
26  the alleged "violation is ongoing or imminent"); *FTC v. AMG Cap. Mgmt., LLC*, 910
    F.3d 417, 431 (9th Cir. 2018) (O'Scannlain, J., specially concurring) ("[Section]
27  13(b) empowers the Commission to stop *imminent* or *ongoing* violations"), *rev'd
    and remanded on other grounds sub nom. AMG Cap. Mgmt., LLC v. FTC*, 593 U.S.
28  67 (2021).

1   championed that rule as a necessary means of requiring platforms to engage in all-

2   in pricing. *See* 90 Fed. Reg. 2066, 2088, 2096 n.283 (Jan. 10, 2025).

3           The FTC does not argue otherwise. Instead, the FTC insists that "imminent"

4   misconduct is not required and that it need only show that past conduct is "likely to

5   recur" at some undefined point in the future. Opp. 14-15. This response fails.

6           For starters, this argument flouts Section 13(b)'s text, which requires the FTC

7   to show that Ticketmaster is "about to violate" the law. 15 U.S.C. § 53(b). The

8   ordinary meaning of "about to" is "on the point or verge of" occurring. *Webster's*

9   *Third New International Dictionary* 5 (1981). Thus, as a plain text matter, a

10  defendant "is about to violate" the law only when the defendant's misconduct is

11  "impending" or "imminent." *Shire*, 917 F.3d at 155-56; *see supra* n.7.

12          The FTC does not even mention the statutory text; it instead equates "about

13  to violate" with "likely to recur." Opp. 13. But as the Supreme Court has repeatedly

14  "stressed," courts must "heed[] what a statute actually says," *Groff v. DeJoy*, 600

15  U.S. 447, 468 (2023), and enforce "plain and unambiguous statutory language

16  according to its terms," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251

17  (2010). Indeed, the Supreme Court has applied that principle to Section 13(b). *See*

18  *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 75-76 (2021). And here, the "plain

19  language of Section 13(b)" is clear: To satisfy "[t]he 'about to violate' pleading

20  requirement," the FTC must allege "something *more* than a past violation and a

21  likelihood of recurrence"—it must allege "imminent" or "impending conduct."

22  *Shire*, 917 F.3d at 155-58. Its failure to do so here warrants dismissal.[8]

23

24          [8] While the FTC cites a handful of non-binding cases that have paraphrased
    Section 13(b) as requiring a "likelihood of future violations," Opp. 13-15, the
25  Supreme Court has been clear that courts "have no warrant to ignore clear statutory
    language on the ground that other courts have done so" in non-binding opinions.
26  *Milner v. Dep't of Navy*, 562 U.S. 562, 576 (2011); *see, e.g.*, *Singh v. U.S.
    Citizenship & Immigr. Servs.*, 2025 WL 2684200, at *3 (C.D. Cal. June 24, 2025)
27  (Frimpong, J.) (applying the "plain language of the statutes" rather than "non-
    binding authority"). This Court should apply the unambiguous text of Section 13(b)
28  as written.

Even if likelihood of recurrence were the standard, this claim still fails. There are zero plausible allegations in the Complaint that Ticketmaster is likely to abandon its implementation of all-in pricing. To the contrary, Ticketmaster implemented all-in pricing in response to the FTC's own rule—a rule that Ticketmaster itself championed. Mot. 13-14. Nothing in the Complaint suggests that, having now implemented all-in pricing, Ticketmaster will abruptly reverse course.

The FTC speculates that Ticketmaster might not feel constrained by the new rule because, in the FTC's view, Ticketmaster violated the FTC Act itself for years before the rule's effective date. Opp. 15. This argument is unpersuasive. The FTC promulgated the rule precisely because the FTC Act had not, of its own force, compelled ticket issuers and others to use all-in pricing. 90 Fed. Reg. at 2088, 2103. And in doing so, the FTC acknowledged that Ticketmaster favored the rule's passage for that very reason. *Id.* at 2088. The FTC's bald speculation that Ticketmaster is likely to revert to its prior approach, and violate the rule, is simply not plausible and thus not sufficient to survive dismissal.

Beyond that, the FTC invokes a handful of "factors" from a now-vacated decision that, in its view, are used to test "likelihood of recurrence." Opp. 14-15 (citing *FTC v. QYK Brands LLC*, 2022 WL 1090257, at *10 (C.D. Cal. Apr. 6, 2022), *vacated in part*, 2024 WL 1526741 (9th Cir. Apr. 9, 2024)). But the court in *QYK Brands* pulled those factors from *United States v. Zaken Corp.*, 57 F. Supp. 3d 1233 (C.D. Cal. 2014), a case that had nothing to do with likelihood of recurrence. Instead, *Zaken* articulated factors for determining "the scope of injunctive relief" in cases where an injunction is granted. *Id.* at 1241-42. These factors all focus on past conduct, and they ignore the regulatory change that led Ticketmaster to implement all-in pricing. Rather than applying a handful of inapposite factors aimed at a different question, the Court should follow the statutory text and ask whether the FTC has plausibly alleged facts showing that Ticketmaster is "about to violate" the

1    law by abandoning all-in pricing. Because the FTC has failed to do so, this claim

2    must be dismissed.

3          2.    <u>Ticketmaster's Prior Fee Disclosures Did Not Violate Section 5</u>

4         The FTC has also failed to plausibly allege that Ticketmaster's prior fee

5    displays amounted to deceptive conduct under Section 5. As the FTC alleges,

6    consumers were informed during ticket selection that fees would be added to the

7    advertised face-value price, *see* Compl. ¶ 46 (referring to the "+Fees" notice), and

8    they were informed before checkout of the total amount due that included both the

9    face-value price and fees, *id.* ¶ 52. Those statements are neither "false" nor

10   "misleading," and are thus not "deceptive" as a matter of law. *FTC v. Gill*, 265 F.3d

11   944, 950 (9th Cir. 2001).

12        The FTC focuses on the advertised face-value price displayed at the beginning

13   of the purchase process and argues that price—standing alone—is false or

14   misleading because it excludes fees. Opp. 8. This myopic focus on one portion of

15   the purchase flow cannot sustain this claim. The law is well-settled that deception

16   must be viewed from the perspective of a "consumer[] acting reasonably under the

17   circumstances," *Gill*, 265 F.3d at 950, and "a reasonable consumer 'cannot look at

18   only one statement to the exclusion of everything else and claim he has been

19   misled,'" *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 265 (S.D. Cal. 2023). Thus,

20   the FTC cannot ignore the surrounding disclosures on the same page—namely, the

21   +Fees notice telling consumers that fees will be added to the face-value price—nor

22   can the FTC ignore the conspicuous disclosures on the purchase page setting forth

23   the amount of the fees. Indeed, courts have rejected analogous deception claims—

24   *i.e.*, claims based on fees that are "clearly and conspicuously disclosed [at] the end

25   of the booking transaction"—for this very reason. *Id.* at 265-66; *see Harris v. Las*

26   *Vegas Sands L.L.C.*, 2013 WL 5291142, at *5 (C.D. Cal. Aug. 16, 2013). And here,

27   just as in those cases, "a reasonable consumer would not have looked solely at the

28

1  advertised [face-value] price on the first page of the [ticketing] process and ignored
2  every ensuing price disclosure." *Hall*, 344 F.R.D. at 265.

3        The FTC does not directly address these authorities.[9] Instead, it points to cases
4  in which defendants "induce[d] the first contact through deception" in an initial
5  disclosure. Opp. 9 (quoting *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964
6  (9th Cir. 1975)). But in those cases, the initial disclosure used "decisive" language
7  "for which any qualifying language would result in a contradiction in terms." *Resort*
8  *Car*, 518 F.2d at 964 (upholding cease-and-desist order prohibiting rental car
9  company from using "dollar-a-day" slogan); *see also FTC v. Doxo, Inc.*, 771 F.
10 Supp. 3d 1162, 1177-79 (W.D. Wash. 2025) (cited at Opp. 9) (defendant's initial
11 representations that it "serves as an official payment channel for billers" and that
12 consumers "pay the amount on their bill" were contradicted by later disclaimers that
13 it was *not* an official payment channel for billers and that consumers would *not* pay
14 the amount on the bill but a higher amount). The key, therefore, was the
15 contradiction. But here, Ticketmaster's initial disclosures—the face-value price of
16 the ticket and a "+Fees" notice—were not in "contradiction" with the final price: the
17 face-value plus fees.

18        The FTC also criticizes the +Fees notice. Opp. 9-10. But as the FTC itself
19 acknowledges, a disclaimer is effective if, when combined with the other
20 representations, it "leave[s] an accurate impression." *Id.* at 10 (citation omitted).
21 That is what the +Fees notice did here: It accurately represented to consumers that
22 they would pay face-value plus fees. And while the FTC argues that the +Fees notice
23 did not specify the amount of the fees, Opp. 10, that does not render the

24

25   [9] While the FTC observes that these cases did not arise "under the FTC Act,"
     Opp. 10, the statute at issue in those cases—California's equivalent unfair and
26   deceptive practices statute—is analogous to the FTC Act. *See Lights of Am.*, 760 F.
     Supp. 2d at 854 ("claims for violation of the FTC Act are analogous to, if not entirely
27   congruent with, claims for violation of California's CLRA and UCL"); *FTC v.
     Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1315 (W.D. Wash. 2024) (the same
28   "reasonable consumer standard" applies to FTC Act claims and California CLRA
     and UCL claims).

representation as a whole false or misleading—particularly given that consumers are told the precise amount of the fees before checkout. *See Hall*, 344 F.R.D. at 265.

## B.    The FTC's Claim Regarding Ticketmaster's Ticket Limit Disclosures Fails

The FTC's second Section 5 claim—concerning Ticketmaster's disclosures regarding ticket limits—must also be dismissed, as the FTC fails to allege that these disclosures are deceptive and material.

### 1.    The FTC Fails To Plausibly Allege That The Ticket Limit Disclosures Are False Or Misleading

The FTC cannot plausibly allege that Ticketmaster's ticket limit representations are false or misleading. *See* Mot. 29-30. These alleged representations fall into two categories: (1) Ticketmaster's representations that, for certain events, there is a "strict … limit" on the number of tickets individual accounts can purchase, and (2) Ticketmaster's representations that using multiple accounts to evade such ticket limits is "forbidden." Opp. 11 (quoting Compl. ¶ 67). But both sets of representations are true—for events with ticket limits, each individual account is limited to purchasing the specified number of tickets, Compl. ¶ 70, and Ticketmaster does forbid attempts to avoid those limits by using multiple accounts, *id.* ¶ 69.

The FTC does not plausibly allege otherwise. Instead, the FTC claims that ticket limits are a "fiction" because some scalpers have used multiple accounts that, in the aggregate, purchased more than the specified ticket limit. Opp. 11. This does not work. As for the first category of representations (regarding the ticket limits for individual accounts), the FTC's argument only confirms those representations are true, as it reiterates that each individual account is in fact limited to the specified ticket limit. In other words, the FTC does not allege that an individual account is able to purchase more than a specified ticket limit. And as for the second set of disclosures (regarding the prohibition on using multiple accounts to avoid ticket limits), the FTC's argument does not undermine the representations' truthfulness—

25

1  using multiple accounts to avoid ticket limits is still a violation of Ticketmaster's
2  policies that Ticketmaster reserves the right to enforce. *See, e.g.*, Compl. ¶ 71
3  (alleging Ticketmaster enforced ticket purchase limits).

4       Rather than explaining how Ticketmaster's actual representations are false or
5  misleading, the FTC's entire theory seems to rest on a representation that
6  Ticketmaster did *not* make: that it would prevent *every* instance in which a scalper
7  uses multiple accounts to avoid ticket limits. But Ticketmaster has never made that
8  representation, and the FTC does not allege otherwise. To the contrary, Ticketmaster
9  represents that it "reserve[s] the right," but is not obliged, to cancel tickets it suspects
10  of being acquired in excess of ticket limits. Compl. ¶ 69; *see* Opp. 11 ("a violation
11  *may* result in 'voided and refunded' tickets (emphasis added)). Thus, that some
12  scalpers have successfully avoided ticket limits through multiple accounts does not
13  render any of Ticketmaster's actual representations false or misleading.

14       2.   The FTC Fails To Plausibly Allege Materiality

15       The FTC fails to plausibly allege that these ticket limit disclosures are material
16  to consumers. The FTC does not plausibly allege that changing the ticket limit
17  disclosures would matter to fans purchasing tickets in a way that is "likely to affect
18  their choice[s]" or "conduct." *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201
19  (9th Cir. 2006). As Ticketmaster explained, ticket limits are imposed in the primary
20  market, which is handled by a single ticket issuer; there is thus no choice here. Mot.
21  30. And while the FTC speculates that consumers might choose not to purchase
22  tickets at all, Opp. 12, the FTC does not allege any facts to support that speculation.
23  To the contrary, it agrees that fans *still* purchased tickets on the secondary market.
24  *Id.* (citing Compl. ¶¶ 72-73).

25       Realizing this, the FTC pivots and argues that the ticket limit disclosures are
26  material to artists. Opp. 11-12. This argument is puzzling. The FTC's challenged
27  disclosures are the disclosures directed at fans—*i.e.*, those that appear "in the ticket
28  browsing flow." *Id.* at 11 (citing Compl. ¶¶ 66-67). The FTC does not allege that

26

artists review those disclosures, nor does the FTC plausibly allege that artist decision-making hinges on how the ticket limits are presented to fans. Instead, the FTC asserts that the existence of the "ticket limits" themselves is material to artists. That might be true, but the FTC does not allege that Ticketmaster misrepresents the existence of ticket limits to artists, let alone in a way that would be material. The FTC's attempt to shift focus to artists does not save this claim.

## V.    THE STATE-LAW CLAIMS MUST BE DISMISSED

State Plaintiffs' claims under state law must be dismissed as well. Mot. 31-32. Plaintiffs do not dispute that, if the Court dismisses all of the federal claims, the Court should decline to exercise supplemental jurisdiction over the state-law claims without evaluating their merits. 28 U.S.C. § 1367(c)(3); *see* Mot. 31 & n.2.

The Utah unconscionability claim also fails. Utah law sets a "high" bar for unconscionability, "ris[ing] to the level of oppression or unfair surprise." *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1245 (D. Utah 2016). Courts accordingly dismiss unconscionability claims that merely reflect a "repackaged" deception claim. *Chadwick v. Bonneville Billing & Collections, Inc.*, 2021 WL 1140206, at *4 (D. Utah Mar. 25, 2021).

Plaintiffs' Opposition, however, confirms that the unconscionability claim asserted in this case is quite literally a repackaged version of their deception claims. They invoke the same two theories underlying their deception claims, regarding Ticketmaster's fee disclosures and ticket limit disclosures. Opp. 13. Indeed, the two lead paragraphs they cite from the Complaint to support this claim, *id.* (citing Compl. ¶¶ 50-51), fall within a section titled "Defendants' Deceptive Ticket Pricing," Compl. p.24. Because Plaintiffs have simply "repackaged the … allegedly deceptive conduct and called it unconscionable," this claim must be "dismissed." *Chadwick*, 2021 WL 1140206, at *4.

Plaintiffs also suggest that this claim should nevertheless survive dismissal because, as a matter of "policy" under "substantive Utah law," plaintiffs are given

1  "a reasonable opportunity to prove unconscionability." Opp. 13 (citation omitted).

2  That is irrelevant. The standard for dismissal is governed by the "federal pleading

3  rules," not state substantive law. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017,

4  1021 (9th Cir. 2013). And the federal pleading rules require plausible factual

5  allegations establishing each element of the claim. *Id.* at 1020-21; *Iqbal*, 556 U.S. at

6  678-80. Because Plaintiffs failed to adduce allegations satisfying the standard for

7  asserting a distinct unconscionability claim, this claim should be dismissed.

8  **VI.    CONCLUSION**

9      Ticketmaster asks the Court to dismiss the Complaint with prejudice.

10

11  Dated:  January 27, 2026           Respectfully submitted,

12                                          LATHAM & WATKINS LLP

13                                            Michael H. Rubin
                                        Scott D. Joiner

14                                          Alexander C.K. Wyman
                                        Will Schildknecht

15                                          Max A. Shapiro

16                                          SIDLEY AUSTIN LLP

17                                          Benjamin M. Mundel

18

19                                By */s/ Michael H. Rubin*

20                                          Michael H. Rubin

21                                        Attorneys for Defendants

22                                          Live Nation Entertainment, Inc. and
                                        Ticketmaster L.L.C.

23

24

25

26

27

28

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C., certifies that this brief contains 6,931 words, which complies with the word limit of L.R. 11-6.1.

Dated:  January 27, 2026                    LATHAM & WATKINS LLP

                                            By */s/ Michael H. Rubin*
                                               Michael H. Rubin

                                            Attorneys for Defendants
                                            Live Nation Entertainment, Inc. and
                                            Ticketmaster L.L.C.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 2:25-cv-08884-MEMF-MAA
REPLY ISO DEFENDANTS' MOTION TO DISMISS