**LATHAM & WATKINS LLP**
Michael H. Rubin (Bar No. 214636)
  michael.rubin@lw.com
Scott D. Joiner (Bar No. 223313)
  scott.joiner@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600

Alexander C.K. Wyman (Bar No. 295339)
  alex.wyman@lw.com
Will Schildknecht (Bar No. 348372)
  will.schildknecht@lw.com
Max A. Shapiro (Bar No. 334929)
  max.shapiro@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500

**SIDLEY AUSTIN LLP**
Benjamin M. Mundel (*pro hac vice forthcoming*)
  bmundel@sidley.com
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000

Attorneys for Defendants
Live Nation Entertainment, Inc. and Ticketmaster L.L.C.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION; ATTORNEY GENERAL OF COLORADO; OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS; THE PEOPLE OF THE STATE OF ILLINOIS; STATE OF NEBRASKA; STATE OF TENNESSEE; STATE OF UTAH; UTAH DIVISION OF CONSUMER PROTECTION; COMMONWEALTH OF VIRGINIA, <br><br>Plaintiffs, <br><br>v. <br><br>LIVE NATION ENTERTAINMENT, INC. and TICKETMASTER L.L.C., <br><br>Defendants. | Case No. 2:25-cv-08884-MEMF-MAA <br><br>**DEFENDANTS' RESPONSE TO BRIEF OF AMICI CURIAE MARSHA BLACKBURN, ET AL.** <br><br>Date: February 19, 2026 <br>Time: 10:00 a.m. <br>Place: Courtroom 8B <br><br>Hon. Maame Ewusi-Mensah Frimpong |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................5

II.  ARGUMENT ........................................................................................................6

    A.   Amici's Argument Regarding The Meaning Of "Sell Or Offer To Sell" Falls Flat ..........................................................................6

    B.   Amici's Attempt To Paper Over The Complaint's Pleading Deficiencies Fails................................................................................8

    C.   Amici's Legislative History And Policy Arguments Are Misguided..................................................................................................10

III. CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Azar v. Allina Health Servs.*,
  587 U.S. 566 (2019) ............................................................................................ 10

*Chamber of Com. of U.S. v. Whiting*,
  563 U.S. 582 (2011) ............................................................................................ 10

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005) ............................................................................................ 10

*Food Mktg. Inst. v. Argus Leader Media*,
  588 U.S. 427 (2019) ............................................................................................ 10

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
  589 U.S. 178 (2020) ............................................................................................ 11

*Langer v. Kiser*,
  57 F.4th 1085 (9th Cir. 2023) ................................................................................ 9

*Multnomah Legal Servs. Workers Union v. Legal Servs. Corp.*,
  936 F.2d 1547 (9th Cir. 1991) ............................................................................... 6

*NLRB v. SW Gen., Inc.*,
  580 U.S. 288 (2017) .............................................................................................. 6

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022) .............................................................................................. 6

*Pinter v. Dahl*,
  486 U.S. 622 (1988) .............................................................................................. 7

*Quarles v. United States*,
  587 U.S. 645 (2019) .............................................................................................. 9

*Sandoz Inc. v. Amgen Inc.*,
  582 U.S. 1 (2017) ................................................................................................ 11

*Stross v. Glass Homes, Inc.*,
  2022 WL 21310031 (C.D. Cal. Apr. 4, 2022) .................................................. 5, 6

Case 2:25-cv-08884-MEMF-MAA   Document 92   Filed 02/06/26   Page 4 of 14   Page ID #:655

*Thompson v. United States*,
   604 U.S. 408 (2025) ............................................................................................. 8

*Trump v. Cook*,
   146 S. Ct. 79 (2025) ............................................................................................. 5

*United States v. Clark*,
   445 U.S. 23 (1980) ............................................................................................... 6

*United States v. eBay Inc.*,
   751 F. Supp. 3d 232 (E.D.N.Y. 2024) .................................................................. 7

**STATUTES**

15 U.S.C.
   § 45c(a)(1)(A) ................................................................................................. 9, 11
   § 45c(a)(1)(B) ....................................................................................................... 6
   § 45c(a)(1)(B)(ii) .................................................................................................. 8

**RULES**

Fed. R. App. P. 29(a)(6) .............................................................................................. 5

Sup. Ct. R. 37.3 ........................................................................................................... 5

**OTHER AUTHORITIES**

*Examining the Better Online Ticket Sales Act of 2016: Hearing Before the S. Subcomm. on Consumer Prot., Prod. Safety, Ins., & Data Sec. of the S. Comm. on Com., Sci., & Transp.*, 114th Cong. (2016) ................ 11

H.R. Rep. No. 114-733 (2016) .................................................................................. 11

*That's the Ticket: Promoting Competition and Protecting Consumers in Live Entertainment: Hearing Before the S. Comm. on the Judiciary*, 118th Cong. (2023) .......................................................................... 12

4

Latham & Watkins LLP
Attorneys At Law

Case No. 2:25-cv-08884-MEMF-MAA
DEFENDANTS' RESP. TO AMICUS BRIEF

## I.  INTRODUCTION

Defendants submit this short response to the proposed brief filed by Amici Curiae on January 30, 2026. ECF No. 81-1 ("Amicus Br."). The amicus brief—filed in support of Plaintiffs' opposition to the pending motion to dismiss—was filed after the parties had already completed the briefing on the motion to dismiss. *See* ECF No. 55 ("Mot.") (Defendants' motion to dismiss filed on January 6, 2026); ECF No. 64 ("Opp.") (Plaintiffs' opposition filed on January 20, 2026); ECF No. 70 ("Reply") (Defendants' reply filed on January 27, 2026). Under the usual rules governing amicus briefs in courts that expressly allow them, such a submission would be untimely. *See* Fed. R. App. P. 29(a)(6) (permitting amicus briefs to be filed "no later than 7 days after the principal brief of the party being supported is filed"); Sup. Ct. R. 37.3 (same). Nevertheless, recognizing that "this Court finds it 'preferable to err on the side of' permitting [amicus] briefs," *Stross v. Glass Homes, Inc.*, 2022 WL 21310031, at *1 (C.D. Cal. Apr. 4, 2022) (Frimpong, J.), Defendants did not oppose the motion for leave to file the amicus brief in this case, conditioned on their ability to respond to the arguments raised in that brief—a condition to which Plaintiffs and Amici agreed. *See* ECF No. 82; *cf., e.g.*, *Trump v. Cook*, 146 S. Ct. 79 (2025) (permitting the parties to file supplemental briefs responding to amicus briefs).

This amicus brief—submitted by a handful of legislators—provides Amici's views "[a]s legislators" about the BOTS Act. Amicus Br. 1. Some of these legislators were not even in Congress when the BOTS Act was enacted. And oddly, the views expressed substantially contradict the views some of the same legislators expressed in another pending FTC BOTS Act case, where the legislators wrote that the Act was intended to "to help protect ordinary American consumers from rapacious online ticket scalpers … using various sophisticated techniques and schemes to bypass the security measures in place to combat their underhanded practices." Br. of Amici Curiae Sen. Marsha Blackburn & Sen. Ben Ray Luján at 1, *FTC v. Key Inv.*

*Grp., LLC*, No. 1:25-cv-02716 (D. Md. filed Dec. 31, 2025), ECF No. 35-1. That aligns with Defendants' interpretation of the Act in this case, not Plaintiffs'.

In any event, the only legislative views that matter here are those "expresse[d]" in the "statutory text passed by both Houses and signed by the President." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022); *see NLRB v. SW Gen., Inc.*, 580 U.S. 288, 306 (2017) ("What Congress ultimately agrees on is the text that it enacts, not the preferences expressed by certain legislators."). And when it comes to interpreting enacted statutory text, legislators offer no special or "unique" insights. *Stross*, 2022 WL 21310031, at *1; *see, e.g.*, *United States v. Clark*, 445 U.S. 23, 33 n.9 (1980) ("[T]he views of some Congressmen as to the construction of a statute adopted years before by another Congress have 'very little, if any, significance.'"); *Multnomah Legal Servs. Workers Union v. Legal Servs. Corp.*, 936 F.2d 1547, 1555 (9th Cir. 1991) (same).

The arguments in the amicus brief are unconvincing on their own terms. Amici first attempt a reheated version of Plaintiffs' arguments that strain the ordinary meaning of the BOTS Act's text and overstate the plausibility of the Complaint's allegations. The parties' briefing already covers that ground, and Amici's take on those issues adds nothing. Amici then offer an argument about the BOTS Act's legislative history and a policy argument about fees. Both of these arguments are flawed, but more fundamentally they are misdirected: Neither legislative history nor policy concerns can overcome the statute's text and Plaintiffs' failure to allege facts satisfying it. Nothing in the amicus brief changes the proper outcome here: The Complaint should be dismissed.

## II. ARGUMENT

### A. Amici's Argument Regarding The Meaning Of "Sell Or Offer To Sell" Falls Flat

Amici first try to advance a statutory interpretation argument as to the phrase "sell or offer to sell." 15 U.S.C. § 45c(a)(1)(B); *see* Amicus Br. 3-8. The parties have

fully briefed that issue, and Amici add nothing new. The "ordinary meaning" of "sell" is straightforward—"to 'sell' an item one must either possess the physical item or its title." *United States v. eBay Inc.*, 751 F. Supp. 3d 232, 239 (E.D.N.Y. 2024). And as Ticketmaster has explained, that ordinary meaning—when viewed in context of the BOTS Act—does not encompass ticket platforms like Ticketmaster that merely facilitate third-party sales by others. *See* Mot. 18-20; Reply 10-13.

Amici dispute that definition of "sell," contending that people can "'sell[]' things that they do not possess or own." Amicus Br. 5-6. But in every one of Amici's examples, the individual described as "selling" something is acting as the owner's or possessor's agent—whether a real estate agent (who "sells" a house on the homeowner's behalf), a stock broker (who "sells" stock on the stockholder's behalf), or a fence (who "sells" stolen jewels on a thief's behalf). *Id.* at 5; *see also Pinter v. Dahl*, 486 U.S. 622, 642-46 (1988) (cited at Amicus Br. 6) (relying on the agency relationship between stock broker and seller).[1] Because the principal has given its agent authority to enter into the transaction on the principal's behalf, it may be natural to say that the agent "sells" or "offers to sell." Here, however, Plaintiffs do not allege—or argue in their own brief—that Ticketmaster acts as a reseller's agent. To the contrary, while Ticketmaster "act[s] as the agent to those who provide events" and sell tickets on the primary market (i.e., "artists, venues, teams, fan clubs, promoters, and leagues"), tickets sold on the secondary market are sold by the "reseller[s]" themselves, such as "other fans, season ticket holders, or professional resellers." ECF No. 55-2 at 3-4 (§ 3). Thus, as another court explained in rejecting a similarly overbroad reading of the word "sell" in a case against eBay, the absence of an "agency relationship" refutes the comparison. *eBay*, 751 F. Supp. 3d at 239.

---

[1] Amici's reliance on *Pinter* is also misplaced given that the statute there used the standalone term "offer," which was defined broadly in a way that was "not inherently confined to the actual owner." 486 U.S. at 643.

Amici also point to other statutes that have nothing to do with the BOTS Act. Amicus Br. 7. To the extent those statutes are relevant, they only confirm Ticketmaster's argument. Those statutes—unlike the BOTS Act—combine the term "sell" with other terms such as "distribute," "dispose of," and "providing." *Id.* (citations omitted). If, as Amici contend, the term "sell" already encompasses all of that conduct, then those other terms would be superfluous. Ultimately, "[t]he language of these other statutes shows that when Congress intended to cover" a broader set of conduct, "'it knew how to do so,'" and its decision *not* to do so in the BOTS Act must be respected. *Thompson v. United States*, 604 U.S. 408, 416 (2025).

### B. Amici's Attempt To Paper Over The Complaint's Pleading Deficiencies Fails

Amici next try to defend Plaintiffs' failed attempt to plead an actual BOTS Act violation against Ticketmaster. *See* Amicus Br. 9-11. Under subparagraph (B) of the BOTS Act, Plaintiffs must allege facts demonstrating that (1) specific tickets were purchased in violation of subparagraph (A), which requires the "circumvent[ion]" of a "technological control or measure" used "to enforce posted ticket limits"; (2) those same tickets were then resold on Ticketmaster's platform; and (3) Ticketmaster knew or should have known of the subparagraph (A) violation. 15 U.S.C. § 45c(a)(1)(B)(ii). As Ticketmaster has explained, Plaintiffs failed to allege facts satisfying those elements. *See* Mot. 21-25; Reply 13-18.

In response, Amici, like Plaintiffs, conflate two distinct theories: (1) using multiple accounts to get around ticket limits, and (2) using certain software and SIM banks to get around IP address blockers and other automated tools to prevent coordinated purchases. Neither works.

The first theory—"using multiple accounts to evade ticket limits" (Amicus Br. 9)—is not enough to demonstrate a subparagraph (A) violation because it conflates ticket limits with technological controls. Regardless of whether a scalper is able to "get around" the ticket limit with multiple accounts, the question under

subparagraph (A) is whether the scalper "circumvent[ed] a … technological control or measure"—i.e., one of the technological tools implemented to detect and prevent coordinated purchases by bots—to do so. 15 U.S.C. § 45c(a)(1)(A). Merely using multiple accounts to make multiple purchases that each *comply* with the per-account ticket limit does not demonstrate the circumvention of a technological control. *See* Reply 14-15.

The second theory—that some scalpers use certain "software" and other tools like "SIM banks" to bypass IP blockers and other automated systems designed to detect coordinated purchases (Amicus Br. 9-10)—is divorced from the allegations in the Complaint, which does not attempt to connect purported subparagraph (A) violations under this theory to any particular tickets resold on Ticketmaster's platform. *See* Mot. 21-24; Reply 15-17. In other words, allegations that some unidentified scalpers have violated subparagraph (A) in purchasing tickets cannot, as Amici suggest (Amicus Br. 8), serve as "*predicate* subparagraph (A) violations" for purposes of a claim against Ticketmaster under subparagraph (B) absent plausible allegations that those same tickets were resold on Ticketmaster's resale platform and that Ticketmaster knew of the scalper's circumvention. Because those allegations are missing here, this theory fails as well.

Amici's conflation of these concepts is also apparent in their concern about interpreting "circumvent" in a way that would enable "[p]latform-scalper collusion." Amicus Br. 10-11. This argument appears to rest on the idea that Ticketmaster "allowed brokers to exceed ticket limits." *Id.* at 10. But because exceeding ticket limits is not itself a violation of subparagraph (A), this concern about collusion is a non-issue in this case.[2]

---

[2] Amici's attempt to "analog[ize] to trespass" is also puzzling. Amicus Br. 10-11. The basic definition of "trespass" is entering or remaining "on the land of another *without permission*." *Quarles v. United States*, 587 U.S. 645, 650 (2019) (emphasis added); *see Langer v. Kiser*, 57 F.4th 1085, 1105 (9th Cir. 2023) ("lack of permission" is an element of trespass). To the extent that concept is somehow "instructive" when it comes to the term "circumvent," Amicus Br. 10, it would

### C.  Amici's Legislative History And Policy Arguments Are Misguided

Getting nowhere with the statutory text and the Complaint's allegations, Amici also offer arguments about legislative history and policy. Amicus Br. 11-17. These arguments also go nowhere.

***Legislative History.*** Relying solely on the BOTS Act's "legislative history," Amici contend that Congress was not "worried about"—and in fact intended to target—"platforms like Ticketmaster." *Id.* at 11-15. The Court can ignore this argument at the threshold because "Congress's 'authoritative statement is the statutory text, not the legislative history.'" *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)). And while there may be rare circumstances in which "clear legislative history" can "'illuminate ambiguous [statutory] text,'" *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019), no one is arguing in this case that the BOTS Act is ambiguous.

The legislative history does not help Amici (or Plaintiffs) in any event. Cherry-picking a few quotes from individual legislators in committee hearings and press releases, Amici claim that the BOTS Act is "about *consumer* protection, not *platform* protection." Amicus Br. 12-13. "'[E]xcerpts from committee hearings' are 'among the least illuminating forms of legislative history.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 437 (2019). And these quoted statements merely say that the BOTS Act was designed to protect consumers, which no one disputes was one goal of the Act. They do not support Amici's suggestion that the Act was designed *only* to protect consumers and was not *also* designed to protect platforms like Ticketmaster from the ramifications of scalper abuse.

To the contrary, as Senator Moran summarized during one of the hearings cited by Amici, "[b]ots harm everyone in the live entertainment ecosystem,"

suggest that circumvention means bypassing something—here, a technological control—without permission. And that does not help Plaintiffs given their allegations of Ticketmaster's supposed permission. *See* Mot. 23.

including "[t]icket issuers" as well as platforms in "[t]he secondary market"—which supported the statute. *Examining the Better Online Ticket Sales Act of 2016: Hearing Before the S. Subcomm. on Consumer Prot., Prod. Safety, Ins., & Data Sec. of the S. Comm. on Com., Sci., & Transp.*, 114th Cong. 2 (2016) ("2016 Hearing"). By enacting "narrowly draft[ed]" legislation that addresses technological means by which by ticket brokers harvest tickets, Congress set out to protect "'all parts of the ticket industry.'" *Id.* at 2, 35. And that much is evident in the statutory text, which protects against scalpers' attacks on "technological controls" implemented by "ticket issuers"—i.e., platforms like Ticketmaster—used to enforce posted ticket limits. 15 U.S.C. § 45c(a)(1)(A); *see also* H.R. Rep. No. 114-733, at 3-4 (2016) (explaining that the Act is designed to address "ticket brokers' use of ticket bots," which "defeat the technical safeguards" implemented by ticket issuing platforms like "Ticketmaster" to limit ticket purchases). Ultimately, Amici's efforts to distort the legislative history to fit Plaintiffs' novel BOTS Act theory in this case is misguided.[3]

**Policy.** Finally, Amici offer a policy argument based on Ticketmaster's "fees," which Amici claim might incentivize "collusive conduct between platforms and scalpers." Amicus Br. 15-17. This argument, like any "policy argument[]," is "appropriately addressed to Congress, not the courts." *Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1, 21 (2017); *see Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 188 (2020) ("If policy considerations suggest that the current scheme should be altered, Congress must be the one to do it."). Indeed, Amici are members of

---

[3] Amici also pluck out-of-context quotes from Senators Thune and McCaskill to wrongly suggest they were "leery of platforms' motivations." Amicus Br. 14. Senator Thune theorized that "bots might actually help [platforms'] bottom lines" only to set up a question about why this would not actually drive platform behavior: "[I]n an age where consumers have a variety of entertainment options, at what point does the expense and frustration that ticket bots cause drive consumers away from live entertainment?" 2016 Hearing at 38. In other words, Senator Thune recognized that ticket platforms have a real-world incentive to curb the use of ticket bots precisely because they can drive consumers away from live entertainment. And Senator McCaskill's questions about platform fees were just that—neutral questions about platform fees. *Id.* at 25. There is no indication that she (or any other member of Congress) was "leery" of platforms.

Congress. And their policy concerns rest almost exclusively on authorities that post-date the BOTS Act. These new talking points belong in a legislative session to discuss new legislation, not an amicus brief purporting to interpret a decade-old statute.

Because these policy points are irrelevant to the legal questions at hand, Defendants do not attempt a point-by-point rebuttal. But the core thesis of this policy argument—that platforms like Ticketmaster have a "strong financial incentive to allow scalpers to operate at scale" (Amicus Br. 15)—is belied by reality. Ticketmaster has long been one of the most vocal opponents of ticket scalpers precisely because they harm artists and fans. After fully supporting the passage of the BOTS Act, Ticketmaster has repeatedly called on the FTC to vigorously enforce the BOTS Act against scalpers that use bot technologies and called on Congress to enhance the existing legislation. *See, e.g.*, *That's the Ticket: Promoting Competition and Protecting Consumers in Live Entertainment: Hearing Before the S. Comm. on the Judiciary*, 118th Cong. 8-9, 57-60 (2023) (statement of Joe Berchtold, President & CFO, Live Nation Entertainment). And Ticketmaster has invested more than $1 billion in developing and implementing novel ticketing technology, including in anti-bot technology, fraud detection, and ticket security. *Id.* All of that is flatly contrary to the idea that Ticketmaster is somehow colluding with scalpers to the detriment of consumers.

## III.  CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: February 6, 2026

Respectfully submitted,

LATHAM & WATKINS LLP
   Michael H. Rubin
   Scott D. Joiner
   Alexander C.K. Wyman
   Will Schildknecht
   Max A. Shapiro

SIDLEY AUSTIN LLP
   Benjamin M. Mundel


By */s/ Michael H. Rubin*
   Michael H. Rubin

Attorneys for Defendants
Live Nation Entertainment, Inc. and
Ticketmaster L.L.C.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C., certifies that this response contains 2,686 words, which complies with the word limit of L.R. 11-6.1 as well as the parties' stipulation that this response "will not exceed the length of the Amicus Brief." ECF No. 82; *see* ECF No. 81-1 (Amicus Brief containing 18 pages).

Dated: February 6, 2026

LATHAM & WATKINS LLP

By */s/ Michael H. Rubin*
Michael H. Rubin

Attorneys for Defendants
Live Nation Entertainment, Inc. and
Ticketmaster L.L.C.