# Exhibit 1

ELIZABETH C. SCOTT (*pro hac vice*)
escott@ftc.gov
TAYLOR H. ARANA (*pro hac vice*)
tarana@ftc.gov
CLAIRE E.W. STEWART (*pro hac vice*)
cstewart@ftc.gov
FEDERAL TRADE COMMISSION
230 South Dearborn Street, Suite 3030
Chicago, IL 60604
Telephone: (312) 960-5609 (Scott)
Telephone: (312) 960-5639 (Arana)
Telephone: (312) 960-5615 (Stewart)

Local Counsel:
AARON M. SCHUE (CA BAR NO. 338760)
aschue@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Telephone: (310) 824-4300

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., <br>  Plaintiffs, <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC. and <br> TICKETMASTER, L.L.C., <br><br>  Defendants. | Case No. 2:25-CV-08884 <br><br> **PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, CIVIL PENALTIES, AND OTHER RELIEF** <br><br> Date: February 19, 2026 <br> Time: 10:00 a.m. <br> Place: Courtroom 8b <br><br> Hon. Maame Ewusi-Mensah Frimpong |

Defendants Live Nation Entertainment, Inc. and Ticketmaster, L.L.C. (collectively "Defendants") raise three arguments for the first time in their reply in support of their motion to dismiss (ECF-70): (1) that an out-of-Circuit case interpreting the meaning of "about to" in Section 13(b) of the FTC Act require that Defendants' future law violations be imminent for the FTC to proceed, despite binding Ninth Circuit law to the contrary; (2) that when Defendants posted ticket limits such as "There is an 8 ticket limit for this event," as alleged in the complaint, they meant "per individual account;" and (3) that Defendants do not have the ability to control scalpers' conduct and do not participate in it. If the Court considers these new arguments, it should reject them.

I. **Binding Ninth Circuit Precedent Authorizes Injunctions When Unlawful Conduct Is Likely To Recur**

Settled and controlling Ninth Circuit precedent holds that courts may enter an injunction pursuant to Section 13(b) of the FTC Act if the unlawful conduct at issue is "ongoing or likely to recur." *F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) (interpreting the "is violating, or is about to violate" language of 15 U.S.C. § 53(b)); *see* ECF-55 at 27 (citing *Evans* for proposition that Section 13(b) cannot remedy past wrongs that are "not likely to recur"). In their reply, Defendants pivot away from this binding Ninth Circuit precedent in favor of an out-of-Circuit case, *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019), holding that a company that had ceased the alleged unlawful conduct five years

before suit was not "about to" violate the law, which Defendants contend supports a "plain language" reading of "about to violate" to mean "imminent." ECF-70 at 19-20.

Defendants fail to disclose that the Ninth Circuit has considered and rejected *Shire* and reaffirmed that *Evans* and the "likely to recur" standard remain the law of the Circuit. *FTC v. Hoyal & Assocs., Inc.*, 859 F. App'x 117, 120 (9th Cir. 2021) (declining to follow *Shire* (citing *Evans*, 775 F.2d at 1087)); *FTC v. QYK Brands LLC*, 2024 WL 1526741, *3-4 (9th Cir. Apr. 9, 2024) (affirming the district court's finding of a "sufficient likelihood of future violations to warrant the imposition of an injunction") (citing *Evans*, 775 F.2d at 1087, for the "general rule [that] injunctive relief under § 13(b) is available 'only if the wrongs are ongoing or likely to recur'"); *see United States v. MyLife.com, Inc.*, 499 F.Supp.3d 757, 766 (C.D. Cal. 2020) ("*Shire ViroPharma* is a single, out-of-circuit case that conflicts with governing Ninth Circuit precedent.") (citing *Evans*, 775 F.2d at 1087).

Nor does *Shire* hold that Section 13(b) is "unambiguously" tied to "imminent illegal conduct," as Defendants suggest. *Compare* ECF-70 at 20 *with Shire*, 917 F.3d at 158 n.15 (noting that district court "never imposed an imminence requirement" and, "[i]n fact, it didn't even use the word 'imminent' in its opinion"). The Third Circuit explicitly limited its holding in *Shire* to the facts before it and declined to determine "the exact confines of Section 13(b)'s 'about to

violate' language." 917 F.3d at 160. The Ninth Circuit, though, has decided what "about to violate" means, and "[d]istrict courts are, of course, bound by the law of their own circuit." *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987).[1] Myriad other courts interpret "about to" in the FTC Act and similar statutes consistent with *Evans*. *See, e.g.*, *FTC v. Southwest Sunsites*, 665 F.2d 711, 723 (5th Cir. 1982) (FTC can satisfy Section 13(b)'s "is violating, or is about to violate" requirement by alleging facts that give a "fair inference of a reasonable expectation of continued violations"); *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99-100 (2d Cir. 1978) (interpreting "about to engage" language in securities statutes to mean "a reasonable likelihood of further violations in the future") (citations omitted); *SEC v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003) ("about to engage" means a "reasonable likelihood of recidivism, not an imminent threat of it"); *SEC v. Richie*, 2008 WL 2938678, at *9 (C.D. Cal. May 9, 2008) (rejecting

---

[1] Defendants also wrongly contend that the factors courts commonly consider to determine whether misconduct is likely to recur are "inapposite." Far from it. *FTC v. Com. Planet, Inc.*, 878 F. Supp. 2d 1048, 1086 (C.D. Cal. 2012), *aff'd in part*, 642 F. App'x 680 (9th Cir. 2016) (finding misconduct likely to recur upon considering those same factors); *SEC v. Murphy,* 626 F.2d 633, 655 (9th Cir. 1980) (same); *CFTC v. Co Petro Marketing Group, Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980), *aff'd*, 680 F.2d 573 (9th Cir. 1982) (same). Defendants' suggestion that *FTC v. QYK Brands* was vacated in relevant part is likewise inaccurate. The Ninth Circuit vacated the specific relief the district court granted against one of three defendants, not the remainder of the decision, including the finding that an injunction was appropriate based on the factors cited in Plaintiffs' opposition. *FTC v. QYK Brands LLC*, 2024 WL 1526741 *3-5 (9th Cir. Apr. 9, 2024).

the argument that "about to engage [] create[es] a higher standard than the reasonable likelihood of future violations").[2] This Court should too.

## II. The Complaint Alleges That Ticket Limits Are Per-Event

Plaintiffs' complaint alleges that Defendants misrepresent "the maximum number of tickets that can be purchased for an event by or on behalf of the same person or entity." ECF-1 ¶ 116 (Count II). It does not, as Defendants pretend, aver that Defendants misrepresent "the number of tickets individual accounts can purchase." ECF-70 at 25.

Throughout their complaint, Plaintiffs allege that Defendants post ticket limits capping the number of tickets that can be purchased to a particular event. *E.g.*, ECF-1 ¶¶ 11, 67, Fig. 7 ("8 ticket limit for this event"). In their reply, however, Defendants assert these limits constrain the number of tickets an "individual account" can purchase, not the number of tickets purchased across multiple accounts to a single event. ECF-70 at 25. Straining to make this true, Defendants repeat it three times in the span of three lines. *Id*. But that is not what Defendants' posted limits say. Indeed, for all Defendants' insistence that Plaintiffs have conflated ticket limits with enforcement measures, it is Defendants who

---

[2] The other out-of-Circuit cases Defendants cite did not decide what "about to violate" means at all but rather were considering monetary remedies. Any discussion of the requirements for an injunction are therefore dicta.

confuse them. The "posted ticket limit" is, for example, "8 . . . for this event;" one measure used to enforce that limit is the dropdown quantity selector that prevents purchases of more than the posted limit. Moreover, Defendants' revisionist argument is nonsensical. They insist their ticket limits only communicate a restriction on *individual* account purchases. In the same breath, they concede they prohibit "using multiple accounts to avoid ticket limits"—which would only be possible if, as Plaintiffs allege, the posted ticket limits are per-event.

### III. Defendants Forfeited Their Argument That They Do Not Participate In or Have The Ability To Control Scalpers' Unlawful Conduct

In their reply, Defendants implausibly claim that the complaint does not allege their participation in or ability to control scalpers' unlawful conduct. This is a transparent attempt to avoid a finding that they forfeited their opportunity to respond to these allegations, which are pled in detail. In Count III, the complaint plainly states "In numerous such instances, Defendants (i) participate directly in or have the ability to control" scalpers' unlawful circumvention. ECF-1 ¶ 124. In support of that violation, Plaintiffs allege Defendants have the ability to stop, but instead enable, scalpers' unlawful circumvention. In a subsection entitled "**Defendants Have the Ability to Stop Brokers' Circumvention of Artists' Ticket Limits**," *id*. at 46, Plaintiffs describe repeated instances of Ticketmaster declining to use its capabilities to stop brokers' misconduct. *Id*. ¶¶ 90-102. And in the previous subsection, ECF-1 at 40, Plaintiffs allege that Defendants "even

provide technological support for brokers who exceed ticket limits" (*id*. ¶ 84) and "brokers' circumvention of Ticketmaster's enforcement measures with Defendants' knowledge, participation, or ability to control continues unabated." (*id*. ¶ 89).

    Defendants have forfeited the opportunity to make any argument in response to these theories of liability because they failed to make them in their opening memorandum. *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1018 n.8 (9th Cir. 2019) (a litigant "forfeit[s] an 'argument by raising it for the first time in their reply brief'" (citation omitted)); *Gulius v. Nat'l Hot Rod Ass'n*, 2021 WL 1218262, at *5 (C.D. Cal. Feb. 2, 2021) (same).

/ / / / / / / / / / / / /

Respectfully Submitted,

By: /s/*Elizabeth C. Scott*
ELIZABETH C. SCOTT (*pro hac vice*)
escott@ftc.gov
TAYLOR H. ARANA (*pro hac vice*)
tarana@ftc.gov
CLAIRE E.W. STEWART (*pro hac vice*)
cstewart@ftc.gov
FEDERAL TRADE COMMISSION
230 South Dearborn Street, Suite 3030
Chicago, IL 60604
Telephone: (312) 960-5609 (Scott)
Telephone: (312) 960-5639 (Arana)
Telephone: (312) 960-5615 (Stewart)

AARON M. SCHUE (CA BAR NO. 338760)
aschue@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Telephone: (310) 824-4300

*Counsel for Plaintiff*
*Federal Trade Commission*


/s/*Brady J. Grassmeyer*
Brady J. Grassmeyer (*pro hac vice*)
Brady.Grassmeyer@coag.gov
Senior Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6263

*Attorney for the Colorado Attorney General*

-8-

/s/ *Donna Cecilia Valin*
Donna Valin, Special Counsel,
Assistant Attorney General (*pro hac vice*)
Donna.valin@myfloridalegal.com
Consumer Protection Division
135 West Central Blvd.
Orlando, FL 32801
Telephone: (407) 316-4840
Fax: (407) 245-0365

*Attorney for the State of Florida*

/s/ *Alexandra A. Golota*
ALEXANDRA A. GOLOTA (*pro hac vice*)
alexandra.golota@ilag.gov
WILTON A. PERSON (*pro hac vice*)
Wilton.Person@ilag.gov
Office of the Illinois Attorney General
Consumer Fraud Bureau
115 S. LaSalle Street, 26th Floor
Chicago, Illinois 60603
Telephone:   (872) 272-0794 (Golota)
             (224) 252-6458 (Person)

*Attorneys for the State of Illinois*

/s/ *Benjamin J. Swanson*
Benjamin J. Swanson (*pro hac vice*)
benjamin.swanson@nebraska.gov
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68508

Telephone: (402) 471-7759

*Attorney for the State of Nebraska*

/s/ *Kelley L. Groover*
KELLEY GROOVER, Sr. Assistant Attorney General/Managing Attorney (*pro hac vice*)
Kelley.Groover@ag.tn.gov

KRISTINE KNOWLES, Assistant Attorney General (*pro hac vice*)
Kristine.Knowles@ag.tn.gov
OFFICE OF THE TENNESSEE ATTORNEY GENERAL
Public Protection Section
Consumer Protection Division
UBS Tower, 20th Floor
315 Deaderick Street
Nashville, Tennessee 37243
Telephone: (615) 741-1671
Fax: (615) 532-2910

*Attorneys for the State of Tennessee*

/s/ *Stevenson Smith*
Stevenson Smith (*pro hac vice*),
Assistant Attorney General
scsmith@agutah.gov
Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, UT 84114
Telephone: (801) 366-0310

*Attorneys for the State of Utah and the Utah Division of Consumer Protection*

/s/ *Chandler P. Crenshaw*
CHANDLER P. CRENSHAW (*pro hac vice*)
Assistant Attorney General and Unit Manager
CCrenshaw@oag.state.va.us
Assistant Attorney General and Unit Manager
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Fax: (804) 786-0122

*Attorney for Plaintiff Commonwealth of Virginia*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Federal Trade Commission, certifies that this brief contains 1,430 words, which complies with the word limit of L.R. 11-6.1.

                                                */s/Elizabeth C. Scott*
                                                ELIZABETH C. SCOTT
                                                Counsel for Plaintiff
                                                Federal Trade Commission