UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

FEDERAL TRADE COMMISSION, ET AL,  ) CASE NO: 2:25-cv-08884-MEMF-MAA
                                 )
                                 )         CIVIL
           Plaintiff,     )
                                 )    Los Angeles, California
   vs.                           )
                                 )    Thursday, February 19, 2026
LIVE NATION ENTERTAINMENT,        )
INC, ET AL,                       )    (10:39 a.m. to 10:43 a.m.)
                                 )    (10:45 a.m. to 11:20 a.m.)
          Defendants.        )

HEARING RE:

DEFENDANTS' MOTION TO DISMISS [DKT.NO.55]


BEFORE THE HONORABLE MAAME EWUSI-MENSAH FRIMPONG,
UNITED STATES DISTRICT JUDGE


APPEARANCES:              See page 2


Court Reporter:           Recorded; CourtSmart


Courtroom Deputy:         Damon Berry


Transcribed by:           Exceptional Reporting Services, Inc.
                          20079 Stone Oak Pkwy., Ste 1105-237
                          San Antonio, TX 78258
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES:**

For Plaintiffs:              CLAIRE E.W. STEWART, ESQ.
                             TAYLOR H. ARANA, ESQ.
                             Federal Trade Commission
                             230 S. Dearborn St.
                             Suite 3030
                             Chicago, IL 60604
                             312-960-5615

                             BRADY J. GRASSMEYER, ESQ.
                             Colorado Department of Law
                             1300 Broadway
                             Denver, CO 80203
                             720-508-6263

                             STEVENSON SMITH, ESQ.
                             Office of the Utah Attorney General
                             160 East 300 South
                             5th Floor
                             Salt Lake City, UT 84114
                             801-454-2630

For Defendants:              MICHAEL H. RUBIN, ESQ.
                             Latham & Watkins
                             505 Montgomery St.
                             Suite 2000
                             San Francisco, CA 94111
                             415-395-0600

                             ALEXANDER WYMAN, ESQ.
                             Latham & Watkins
                             355 S. Grand Ave.
                             Suite 400
                             Los Angeles, CA 90071
                             213-891-8825

                             WILLIAM AUSTIN SCHILDKNECHT, ESQ.
                             Latham & Watkins
                             10250 Constellation Boulevard
                             Suite 1100
                             Los Angeles, CA 90067
                             424-653-5500

3

**APPEARANCES VIA ZOON:**

For Plaintiffs:              KRISTINE M. KNOWLES, ESQ.
                             Ofc. of the Tennessee Attorney General
                             P.O. Box 20207
                             Nashville, TN 37202
                             615-741-1341

                             DONNA CECILIA VALIN, ESQ.
                             Florida Ofc. of the Attorney General
                             135 West Central Boulevard
                             Suite 1000
                             Orlando, FL 32801
                             407-316-4840

                             BENJAMIN J. SWANSON, ESQ.
                             Nebraska Attorney General's Office
                             1445 K Street
                             2115 State Capitol
                             Lincoln, NE 68508
                             402-471-7759

                             CHANDLER P. CRENSHAW, ESQ.
                             Ofc. of the Atty. General of Virginia
                             202 N. Ninth Street
                             Richmond, VA 23219
                             804-786-7370

                             ALEXANDRA A. GOLOTA, ESQ.
                             Ofc. of the Illinois Attorney General
                             115 S. LaSalle
                             Chicago, IL 60603
                             872-272-0794

4

**Los Angeles, CA; Thursday, February 19, 2026; 10:39 a.m.**

**(Call to Order)**

THE CLERK:  Calling item #4, case #LA CV-25-8884 (MEMF), Federal Trade Commission et al vs. Live Nation Entertainment Incorporated, et al.

Counsel, please state your appearances.

MS. STEWART:  Good morning, Your Honor.  Claire Stewart on behalf of Plaintiff Federal Trade Commission.

MS. ARANA:  Taylor Arana on behalf of Plaintiff Federal Trade Commission.

MR. GRASSMEYER:  Good morning, Your Honor.  Brady Grassmeyer on behalf of the Colorado Attorney General.

MR. SMITH:  Stevenson Smith on behalf of the State of Utah and the Utah Division of Consumer Protection.

MR. RUBIN:  Michael Rubin, Latham & Watkins, on behalf of Defendants Ticketmaster and Live Nation.

MR. WYMAN:  Good morning, Your Honor.  Alex Wyman of Latham & Watkins, also on behalf of Defendants.

MR. SCHILDKNECHT:  Good morning, Your Honor.  Will Schildknecht, also for Defendants.

MS. ARANA:  And Your Honor --

THE COURT:  Thank you.

MS. ARANA:  -- we may also have some Zoom appearances by the --

THE COURT:  I'm just about to address that.

5

**MS. ARANA:**  Of course.

**THE COURT:**  So we had a number of requests for Zoom by people who are not counsel of record, which we're not going to be permitting because we're not permitting this hearing to just be generally broadcast.  And so I just -- and one housekeeping question I have is whether the counsel that you anticipate appearing via Zoom also plan to be heard?

**MS. ARANA:**  No, Your Honor.

**THE COURT:**  Okay.

**MS. ARANA:**  Unless you have any questions about State law.

**THE COURT:**  Okay.  And so do you have a complete list of the counsel that are on the docket that are seeking to appear via Zoom?

**MS. ARANA:**  Yes.

**THE COURT:** Okay, so give us those names so that we can make sure to let them into the Zoom and drop everybody else.

**MS. ARANA:**  So Kristine Knowles for the Attorney General of Tennessee.

**THE COURT:**  Okay.

**MS. ARANA:**  Donna Valin for the Attorney General of Florida.  Benjamin Swanson for the Attorney General of Nebraska.  And then Chandler Crenshaw on behalf of the Attorney General for Virginia.

6

THE COURT:  Okay.  So those four.  And then are you aware of whether counsel for the amici --

MS. ARANA:  Oh, I apologize, I'm so sorry, Your Honor.

THE COURT:  Yes.

MS. ARANA:  Also for the Attorney General of Illinois, Alexandra Golota.

THE COURT:  Okay.  And then what about counsel for the amici?

MS. ARANA:  They are not appearing.

THE COURT:  Okay.  Okay, so we have five counsel on Zoom.  Okay, so I'm going to ask the -- we'll go off the record.  The clerk will let in those five individuals.  The clerk will drop everybody else and close the Zoom before we start the hearing in earnest.  And I'm just going to jump back into chambers and I'll be back in just a moment.

(Recess taken at 10:43 a.m.; reconvened at 10:45 a.m.)

THE CLERK:  Okay, can all the counsel on Zoom hear me okay?

(Affirmative responses heard)

(Pause in proceedings)

THE COURT:  Okay, and the Zoom is closed to everybody else.

THE CLERK:  Yes.

THE COURT:  Nobody else can listen in.  Okay,

7

wonderful.  Okay, so let's go ahead and begin.

Welcome to counsel that are on Zoom and to the extent that some of your colleagues were not able to make it on the Zoom, I'm sure somebody will update them.

Okay, so the parties received the Court's Tentative this morning, correct?  I will need -- if it wasn't clear, I will need those copies back at the end of the hearing.  Okay, since it is the defense's motion, I will allow the defense to be heard.  We do have, as you heard, a very busy calendar, so I am going to ask each side to limit their arguments, including a rebuttal, to 15 minutes.  Thank you.

**MR. RUBIN:**  Thank you, Your Honor.  We have reviewed the Tentative and we'll --

**THE COURT:**  And I'll ask you to take the podium.  Thank you.

**MR. RUBIN:**  Ah, absolutely.  Love to.  Thank you, Your Honor.  As noted, we have reviewed the Tentative, and while we disagree with it, we're going to limit what we raise to a limited number of issues that we think would be useful in drawing the Court's attention to specifically in seeking some revisiting of or revisiting -- or visiting for the first time.  First with respect to the pleading standard, the Court held that the Plaintiff is not bound by the 9(b) Hyden pleading standard here.  We would urge the Court to revisit that.  The Court held that this was not -- these were not claims as

8

sounded in fraud and what -- because there was no allegation of a concerted course of conduct.  But in fact, if you -- in reviewing the Tentative, it is a course of conduct that is found to satisfy certain of the pleading obligations, certainly on the BOTS Act.  There is no, as we noted, specific ticket alleged to have been purchased after -- through circumvention. There is no specific ticket identified under subsection (b) for potential liability for the Defendants.  It is a course of conduct that's identified.  We would ask the Court to revisit that question.

THE COURT:  And so at various points in your motion you indicate that there is no specific ticket, and it was not clear to the Court, that you see as a defect because of Rule 9? Or why is that a defect?

MR. RUBIN:  We see that as a defect in a BOTS Act claim.  The predicate for a BOTS Act claim --

THE COURT:  Because of Rule 9?

MR. RUBIN:  Because of the BOTS Act and Rule 9 generally, correct.

THE COURT:  Okay.

MR. RUBIN:  Correct.  But one cannot state a claim under the BOTS Act if you do not identify both the technological measure that was circumvented in connection with the purchase of a given ticket.

THE COURT:  And where are you seeing that?

MR. RUBIN:  In the language of the BOTS Act itself.

THE COURT:  Okay.  Let's go to the language.

MR. RUBIN:  So it -- are you -- do you have it, or should we --

THE COURT:  Yes, I have it in front of me.

MR. RUBIN:  Okay, great.  To circumvent, it is -- shall be unlawful for any person to circumvent a security measure access control system or other technological control or measure on an internet website or online service that is used by the ticket issuer to enforce posted ticket purchasing limits or to maintain the integrity of post-online ticket purchasing or order rules.  All right, the object of that is the idea that someone is using that to purchase a ticket.  If no ticket is purchased, there's no -- there can be no violation of subsection (a).

THE COURT:  That's different from saying they have to identify a specific ticket.  Okay, I'll let you move on.

MR. RUBIN:  With respect --

THE COURT:  I'll let you move on.

MR. RUBIN:  But with respect, Your Honor, to respond to that --

THE COURT:  Yes.

MR. RUBIN:  -- if you haven't identified a ticket, you haven't identified a predicate violation of subsection (a).

THE COURT:  Understood.

10

MR. RUBIN:  So it is actually the same thing.  Moving on to the second issue that I'd like to raise which is something that the Court did not address in the Tentative, and that's with respect to the §5 misrepresentation claims.  While we disagree that the §5 misrepresentation claims state a claim, understanding that the Court has taken a different view in the Tentative, the Court did not address §13(b) with respect to ongoing or imminent conduct, which is a necessary requirement for the FTC to seek an injunctive -- injunction, rather.  To seek injunctive relief.  And here there is a concession by the FTC in paragraph 63 of the complaint that Ticketmaster has acknowledged that it was implementing all-in pricing.  And so the allegations have ceased.  The alleged bad behavior has stopped.  The alleged behavior is no longer ongoing --

THE COURT:  And --

MR. RUBIN:  -- there is no basis --

THE COURT:  -- if I may -- sorry.  If I may, with respect to paragraph 63, as I read it, 63 refers to the Defendants making an announcement and doesn't state that the Defendants have indeed implemented all-in pricing.  So I'm not sure how that would bar an allegation or a finding by this Court that the Plaintiff has adequately alleged ongoing or imminent conduct.

MR. RUBIN:  This is artful pleading, Your Honor.  This announcement and then the actual implementation of an all-

11

in pricing rule, compliance had already pre-dated the filing of this complaint.  And it would be inefficient and not a good use of the parties' nor the Court's time to have the parties litigating claims that everyone knows there is no relief can be obtained for them.  And --

**THE COURT:**  And I guess I don't know what you mean by everyone knows, because what I -- I guess what I initially understood you to be arguing is that the Plaintiffs cannot meet their burden at the motion to dismiss stage because in their complaint they have acknowledged that this allegedly deceptive conduct has ceased.  But as I -- you have not pointed me to something in the complaint which says that they acknowledge that it has ceased, so I don't necessarily disagree with you that it has ceased.  But at this stage, and given the nature of this claim and the basis of your motion to dismiss, I don't see how I can dismiss it based upon facts outside of the complaint.

**MR. RUBIN:**  Understood, Your Honor.

**THE COURT:**  Okay.

**MR. RUBIN:**  Moving on to the BOTS Act claim and understanding that this is -- this Tentative is the most thorough analysis of the BOTS Act by any Court, it's effectively an issue of first impression.  There have been some enforcement actions that have preceded, one going on against a broker now that the FTC is pursuing, but all of the four that have preceded have been against scalpers and brokers, allegedly

**EXCEPTIONAL REPORTING SERVICES, INC**

exploiting the Ticketmaster platform.

I have a question actually for the Court of which technological measures were found to have been circumvented? It's unclear to us in reading this. It appears on the top of 18 that there are two. Is that the full scope that the Court found were alleged in the complaint?

**THE COURT:** What are your arguments on that?

**MR. RUBIN:** Our argument is that none were identified. That there indeed were, as the Court points to, certain technological measures identified by the FTC in the complaint, but there was no allegation of actual circumvention of those technological measures. And what we -- what I see in the --

**THE COURT:** And by that do you mean because what they alleged is not -- does not meet the definition of circumvention, or they have not anywhere pled in their complaint that the technological measures which you acknowledge they identified were circumvented?

**MR. RUBIN:** The latter.

**THE COURT:** Okay.

**MR. RUBIN:** The latter, Your Honor.

**THE COURT:** Okay.

**MR. RUBIN:** But there is a point of clarification I would like to make with respect to the -- what I understand to be the Court's interpretation.

13

**THE COURT:**  Okay.

**MR. RUBIN:**  It appears that the Court is interpreting circumvent to mean evade, which I understand.  I can -- I understand that interpretation.  What flows from that in reading the Tentative is a little bit unclear and it would be helpful to clarify something.  It is -- from the structure of the BOTS Act, which is admittedly pretty simple and straightforward, right, just two sections.  It is pretty apparent as we read it that there are a set of restrictions that an online ticket issuer can employ.  There is discretion whether they do it or not.  And if they employ them, the ones that are relevant here are those that are used by the ticket issuer to enforce posted event ticket purchasing limits or maintain the integrity of posting online purchase orders.  So that second piece of that sentence, those are policies, right.  An online ticket issuer could have policies, and if they have those policies, they could elect to use certain, to quote, "security measures, access control systems, or other technological controls or measures" to help enforce them.  But the policy and the technological control to enforce them are two separate things, right.  The --

**THE COURT:**  I would agree.

**MR. RUBIN:**  Okay.  In -- as long as we have alignment there, the reading of the Tentative was somewhat unclear to us as we read it.

14

**THE COURT:**  Okay.

**MR. RUBIN:**  Thank you.  One other issue that I wanted to address was the Court's assessment of civil penalties under Rule 45(m).  The underlying §5 claim has its own knowledge standard.  §45(m) deals with a knowledge standard for the application of civil penalties themselves.  And it would appear in the Tentative, those two knowledge standards have been collapsed.  That is, the fact that Ticketmaster may have been aware that scalpers were exploiting the platform, indeed that is why the BOTS Act was passed back in 2016, because everyone was aware that this problem was occurring.  Everyone knew that back then.  No one for ten years ever thought that the BOTS Act applied to online ticket issuers.  The FTC has now brought this claim against Ticketmaster.  This Court is allowing the claim to proceed, but it does not flow from that that Ticketmaster had knowledge of the unlawfulness of its behavior under the BOTS Act, and that is the point that we have made, and the assessment in page 22 of the Tentative is in that respect, with respect, incorrect.  Because the Plaintiffs have not in fact alleged, nor could they allege in good faith that Live Nation and Ticketmaster had any knowledge that their behavior was unlawful under the BOTS Act because they did not.  And they have advocated aggressively for expansion of the BOTS Act because they believed it's too narrow, it's not actually doing the work it needs to do.  We would ask the Court to revisit

15

that and actually dismiss the claim for civil penalties.

**THE COURT:**  Understood.  Thank you.  Would you like to reserve your time for rebuttal?

**MR. RUBIN:**  Indeed, thank you, Your Honor.

**THE COURT:**  Okay, thank you.  Let me hear from Plaintiff's counsel.

**MS. STEWART:**  Thank you, Your Honor.  Good morning, Your Honor.

**THE COURT:**  And if you need to adjust -- I should have mentioned this to opposing counsel.  If you need to adjust the podium, there is a button on the top of the podium to the right of the microphone.

**MS. STEWART:**  Okay.  Thank you, Your Honor. Plaintiffs agree with the Court's Tentative ruling after having reviewed it in full, but I do want to address some of the issues that the Defendants raised in their statement.  First, with respect to the pleading standard, we agree with the Court that Rule 90 does not apply, but no pleading standard, even Rule 9, requires the Plaintiffs to itemize transactions.  And moreover, Your Honor, we plead specific examples of tickets, including in paragraph 105, but we agree with the Court that Rule 9(b) does not apply.

**THE COURT:**  And I think that the other argument that was made by defense counsel is that for the BOTS Act to apply, there must be tickets sold in violation of the Act.  And so by

16

definition you have not stated a claim if you have not identified any tickets.  Can you respond to that?

MS. STEWART:  Your Honor, we have alleged sufficiently that -- facts to support the fact that tickets were sold in circumvention, that the Defendants were aware of the scalpers who engaged in that circumvention, they were aware of the measures of circumvention used.  And as I mentioned, we plead examples of specific tickets that were sold, and that includes in paragraph 105.  Certainly we allege enough at this stage to support a plausible claim.  And that includes also, Your Honor, Defendants' awareness and knowledge through their use of the trade desk tool, which enables them to view purchases that are made across multiple accounts by the same broker when they're purchased, before they are listed for sale.

THE COURT:  And then can you respond to defense counsel's argument that the Court's Tentative with respect to Rule 9 and not finding an allegation of a concerted course of conduct is in tension with other parts of the Court's Tentative?

MS. STEWART:  We agree with the Court that none of the claims sound in fraud, and so 9(b) is not appropriate. None of the elements of fraud -- of common law fraud are present in the FTC and the FTC Act claims, or in the BOTS claim.  The BOTS claim also does not include any misrepresentation, and so we would agree with the Court that

9(b) does not apply for that reason either.

THE COURT:  But what about the point that he made about the course of conduct?  Is it that you believe that 9(b) doesn't apply for some distinct reason, or you do believe that there is no concerted course of conduct alleged?

MS. STEWART:  We do not believe that there is a concerted course of conduct alleged, Your Honor.

THE COURT:  Okay, and then I think that is what defense counsel says is in tension with the arguments made with respect to the BOTS Act that rather than pointing to particular tickets, you are alleging a course of conduct regarding tickets.  And that, in his view, is in tension.  Can you address that?

MS. STEWART:  We disagree, Your Honor.  We allege the specific elements of the BOTS Act that the -- that there were tickets that were purchased in circumvention that those tickets were sold or offered to sell by Defendants with the requisite knowledge, and that doesn't -- does not necessarily require course of conduct, so those are the specific elements of the claim that we have pled.

THE COURT:  Okay.  Please proceed.

MS. STEWART:  Okay.  All right, thank you, Your Honor.  Next with regard to the §5 misrepresentations, as the Court acknowledged, in our complaint we do not allege that the Defendants have ceased the conduct in violation of §5 for this

claim.  We have alleged sufficient facts to support that it is ongoing and even if that were not the allegation, we also could support this claim by showing that the conduct is likely to recur, and we certainly have alleged facts in support of that as well, Your Honor, but we --

THE COURT:  What are the facts that you would point to either that support either alleging that the conduct is ongoing or alleging that the conduct is likely to recur? Defense counsel has pointed the Court to paragraph 63, but what are the paragraphs that you would point to?

MS. STEWART:  If you would just bear with me for --

THE COURT:  Yes.

MS. STEWART:  -- a moment, Your Honor, to get the paragraphs.

THE COURT:  Absolutely.

MS. STEWART:  So Your Honor, I can speak first to the allegation supporting that it's ongoing.  We believe that it's plausible based on our allegations that the Defendants intentionally advertised deceptively low prices for years.

THE COURT:  And where is that in the complaint?

MS. STEWART:  And --

THE COURT:  What paragraph are you pointing the Court to?

MS. STEWART:  If you'll just bear with me for one moment, Your Honor --

THE COURT:  Yes.

MS. STEWART:  -- so I can pull those paragraphs.

(Pause in proceedings)

MS. STEWART:  Okay, so Your Honor, paragraph 53 where we reference that this conduct has been ongoing since 2015, that Ticketmaster was aware of the use of the deceptive pricing.

THE COURT:  If the Court finds that 53 is insufficient either to support the idea that the conduct is ongoing or that it's likely to recur, are you able to amend the complaint, if given permission, to allege that more specifically?

MS. STEWART:  Your Honor, we do think there are other additional paragraphs that we've cited in our briefs that support the likelihood of recurrence, and if the Court required additional pleading, that's something --

THE COURT:  Yeah, I mean, it would be helpful if you could point them to me now, but perhaps we can return to that later in the hearing.

MS. STEWART:  Okay, thank you, Your Honor.  I'll -- we'll work on pulling those.

THE COURT:  Okay.  Go ahead.  Anything else?

MS. STEWART:  Yes, Your Honor, I wanted to address the third point.  Okay, let's see.  With regard to the BOTS Act claim, Your Honor, we allege at least three technological

20

measures but the Court has recognized these measures in the Tentative ruling, but I just wanted to go through them briefly. So at least three, the drop-down selector on the purchase page, the software that blocks purchases from the same internet address, and account verification procedures.  The drop-down menu I'll address first, just -- which automatically caps a purchase at the posted limit.  The over-the-ticket limit or ticket counter system, which automatically blocks multiple purchase attempts from the same IP address and analyzes patterns to identify multiple accounts acting in concert to evade purchase limits, and account verification procedures. Defendants are circumventing those measures as we've alleged, and as the Court has recognized in the tentative in at least four ways by using multiple accounts, which they create using fictitious information, verify using SIM boxes and employ IP blockers and multi-session browsers to use.  And I believe this was clarified during Defendant's arguments by the Court, but the drop-down selector is distinct from the actual ticket limits.  The drop-down selector is a tool used to enforce the ticket limits, so we just wanted to make that point of clarification.

THE COURT:  And again, the means of circumvention are the use of multiple accounts and then the other means?

MS. STEWART:  The use of fictitious information for those accounts, verification using SIM boxes and SIM banks, and

the employment of IP blockers and multi-session browsers that mask the use of accounts with the same IP address or the like.

THE COURT:  Okay.  Can you address defense counsel's argument that -- if I understand it accurately, according to defense counsel, nobody understood that the BOTS Act could be applied to somebody like Ticketmaster, and nobody had applied it to somebody like Ticketmaster, and so the Plaintiffs have not -- the Plaintiffs have not and cannot allege that whatever conduct that Ticketmaster engaged in that was purportedly in violation of the BOTS Act was not with knowledge that it was in violation of the BOTS Act, because no one had interpreted the BOTS Act in this way.  Is that an accurate description of the argument from defense counsel?

MR. RUBIN:  Yes, Your Honor.

THE COURT:  Okay.  So if you could respond to that, please.

MS. STEWART:  Yes, Your Honor.  We disagree.  The statutory language we believe is straightforward.  Defendants' own public comments that the conduct that circumvents -- about the conduct that circumvents technological measures and that platforms should be held liable under the sell or offer to sell provision, we think those both go to the fact that Defendants were aware.

THE COURT:  Where is that alleged in the complaint?

MS. STEWART:  That's alleged in paragraphs 75, 80 and

82 to 83, Your Honor.

THE COURT:  Give me the numbers again.

MS. STEWART:  Sure.  75, 80, and 82 to 83.

THE COURT:  Thank you.  Go ahead.

MS. STEWART:  Plaintiff's own -- or Defendants' own confidence that they wouldn't be held liable does not mean they weren't aware of how the BOTS Act could apply, and the fact that we haven't brought a case with this exact fact pattern does not mean the conduct is not illegal.

THE COURT:  Okay.

MS. STEWART:  And --

THE COURT:  Go ahead.

MS. STEWART:  I'm sorry, Your Honor.  I just wanted to come back to the supportive paragraphs for the ongoing or likelihood of recurrence factors, if I could provide those paragraphs to Your Honor.

THE COURT:  Yes.

MS. STEWART:  Paragraphs 55 to 64, and those speak to the degree of scienter and also the frequency of the violative acts; paragraphs 33 to 34, where we allege ability to commit future violations; paragraph 36, addressing the degree of harm to consumers; and recognition of culpability at paragraphs 55 to 64.

THE COURT:  Okay.  I'm not sure that those paragraphs say what you're saying they say, and I'm not sure that it's a

reasonable inference from those paragraphs that the harm -- or excuse me, that the conduct with respect to the ticket limits is ongoing and/or likely to recur.  To the extent that the Court makes that finding, are you able to amend the complaint to allege that more explicitly?

MS. STEWART:  Your Honor, I just wanted to clarify. Are you saying with respect to Count 2 and the ticket limits, or Count 1 with regard to the fees?

THE COURT:  Well, I thought the primary point that defense counsel was making was with respect to the all-in pricing.  So I understood defense counsel to be saying with respect to all-in pricing, they've stopped doing all-in pricing.  You acknowledged that they announced they were going to stop -- excuse me, whatever is not all-in -- all-out pricing.  And you haven't -- I guess I would tend to agree that you have not explicitly said that despite their announcement, they continue to engage in this deceptive pricing.  I understand you to be saying that the paragraphs you've pointed me to either explicitly indicate that the deceptive pricing continues or explicitly indicate that the deceptive pricing is likely to recur, and I guess my question is, I don't read them that way upon my quick review here, and so if the Court was to go that way and to determine that therefore the civil penalties with respect to the deceptive ticket prices cannot proceed, I need to determine whether I should do that with leave to amend.

24

Now if you don't think that you have any more allegations you can make with respect to the ongoing nature of the deceptive ticket pricing or its likelihood to recur, then I don't need to give you leave to amend and we'll just leave it at that.

MS. STEWART:  Your Honor, we would cite those paragraphs for the likelihood of recurrence, and for that as support that we've plausibly alleged that the conduct is ongoing.  We also believe that whether that conduct is ongoing would be an issue for fact discovery, and so not proper for a motion to dismiss.  But we would ask for leave to amend if that's what --

THE COURT:  Okay.

MS. STEWART:  -- Your Honor decides.

THE COURT:  Okay.  Okay, thank you.  We've got a couple minutes for defense to provide any rebuttal.  Thank you.

MS. STEWART:  Thank you, Your Honor.

MR. SMITH:  Your Honor, could I make one minute on behalf of Utah?

THE COURT:  Yes, absolutely.

MR. SMITH:  Okay.  This really --

THE COURT:  I'll have you take the podium.  My apologies for not asking you if you wanted to be heard.

MR. SMITH:  That's okay.  I'm Stevenson Smith on behalf of the State of Utah and the Utah Division of Consumer Protection.  I just wanted to flag a minor thing on the section

of the state law analysis.  There's a few references that says, you know, the FTC's state law claims or the FTC's Utah unconscionability claim.  I just -- I think these are typos.  I just want to make sure that it is clear in the final that these are, you know, the state laws --

THE COURT:  Brought by the states, yes.

MR. SMITH:  -- yeah.

THE COURT:  Absolutely, thank you.

MR. SMITH:  And I agree with your analysis, so thank you.

THE COURT:  Okay.  Okay, well, thank you for pointing that out.  Okay, defense counsel.

MR. RUBIN:  Thank you, Your Honor.  Quickly, on the pleading standard, the -- counsel for the Federal Trade Commission said that the -- none of their claims sound in fraud, but of course, that's not the standard.  The standard is whether there is a course of conduct that has been alleged. And while they said they didn't allege a course of conduct, that's in fact -- the complaint in fact is replete with allegations of deception.  Their opposition for a sentence is about deception and that's exactly what they've alleged here. And as I noted previously, it would be, in our view, inconsistent to permit them to not allege specific facts in support of their allegations and rely on the course of conduct, but then not hold them to the pleading standard for that.

With respect to the question of §13(b), first the standard is not whether it is likely to recur, the standard is whether it's ongoing or imminent.  And while Plaintiff did not identify any facts that they would be able to assert if they were given leave to amend, they absolutely could not allege in good faith that the all-in -- or that what they allege to be deceptive pricing is ongoing, and so they should -- that claim should be stricken and they should not be given leave to amend.

On the BOTS Act, there were a number of alleged technical controls identified.  To identify one, the drop-down menu.  The drop-down menu is not a technical control.  The technical control there is the code of the website.  The drop-down menu is simply a reflection of that on the front end.  I don't think anyone would dispute that if someone were to hack into Ticketmaster website and somehow increment the back-end code so that the drop-down menu reflected a higher number of tickets that that would be a BOTS Act violation, but that hasn't been alleged.  And I will note that counsel referred to Defendants circumventing technological measures.  That may be because they're used to bringing cases like these against scalpers, because that's the only thing that's ever happened before.  But in fact there is no allegation that Defendants have done anything wrong in that sense and of course nor could there be, because Defendants can't circumvent their own website, which shows some of the confusion in bringing a claim like this.  And

27

I will also just flag that this idea of having multiple accounts, that is not a technical control, that is a policy. And allowing multiple accounts --

THE COURT:  To be clear, I thought that what Plaintiff's counsel was asserting was that multiple accounts is one way that the technical controls are circumvented.

MR. RUBIN:  My understanding, and I -- my goal is not to mischaracterize Plaintiff's claim here, but my understanding is that they claim that certain parties circumvent technical controls -- we don't know which parties -- and thereby register for multiple accounts or have multiple accounts.  It may be that there is some violation with respect to the registration, but the violation would have to be the purchase of a ticket. And the multiple -- there is no -- it is not a violation of the BOTS Act to have multiple accounts.  It may be that Ticketmaster has a policy against multiple accounts, but that's not connected.

THE COURT:  And the policy on multiple accounts is how Ticketmaster enforces its ticket limits, correct?

MR. RUBIN:  No.

THE COURT:  Okay, go ahead, explain that.

MR. RUBIN:  It enforces its ticket limits on a per-account basis, but that is not based on a multiple account process.  It takes the view that it can cancel tickets if someone exceeds the ticket purchasing limit in purchasing them.

28

It is not done through forbidding multiple accounts.

                THE COURT:  Okay, thank you.

                MR. RUBIN:  Thank you, Your Honor.

                THE COURT:  Okay, well, I do want to appreciate the parties' time and attention to this case.  Fascinating issues. The Court will take the matter under submission.  Before you leave, if I could have counsel return all of the Tentatives to the clerk.  I think we gave you six, so we should get six back. Thank you.

        **(Proceeding adjourned at 11:20 a.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    February 21, 2026

Signed                                                      Dated


*TONI HUDSON, TRANSCRIBER*

EXCEPTIONAL REPORTING SERVICES, INC