UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION et al,

Plaintiffs,

v.

LIVE NATION ENTERTAINMENT, INC. et al,

Defendants.

Case No.: 2:25-cv-08884-MEMF-MAA

**ORDER DENYING MOTION TO DISMISS AND GRANTING REQUEST FOR JUDICIAL NOTICE AND DENYING REQUEST FOR INCORPORATION BY REFERENCE [DKT. NOS. 55, 56]**

Live Nation and its subsidiary Ticketmaster are the nation's largest sellers of tickets to concerts, sports events, and all manner of live entertainment. Live Nation and Ticketmaster control most ticketing in the United States, and have made billions of dollars in doing so. Live Nation and Ticketmaster publicly state that their priority is to put fans first—getting tickets into their hands, at the prices set by the artists.

The Federal Trade Commission—a federal government agency responsible for protecting consumers—and several states—Colorado, Florida, Illinois, Nebraska, Tennessee, Utah, and Virginia—have brought this lawsuit saying that this is not true. The FTC and the states claim in their lawsuit that Live Nation and Ticketmaster are actually colluding with ticket brokers to take tickets out of the hands of fans and require fans to pay grossly inflated prices to be able to attend the events they love.

In this motion, which is at a very early stage of the case, Live Nation and Ticketmaster ask this Court to dismiss the lawsuit. This is not the stage of the lawsuit at which Live Nation and Ticketmaster can explain why the FTC's and the states' accusations are false. At this stage, Live Nation and Ticketmaster are only arguing that even if everything the FTC and the states say in their lawsuit is true, none of that violates the laws referenced.

This Court is not deciding at this stage whether the FTC's and the states' accusations are true. All the Court is doing now, is deciding whether they have met all of the legal requirements of a lawsuit and whether this case can continue.

Having considered everything, it is this Court's view that the FTC and the states have met the legal requirements and the case can continue.

***

Before the Court are a Motion to Dismiss, a Request for Judicial Notice, and a Request for Incorporation by Reference filed by Defendants Live Nation Entertainment, Inc. and Ticketmaster LLC. Dkt. Nos. 55 ("Motion"), 56 ("RJN"). For the reasons stated herein, the Court DENIES the Motion and GRANTS the RJN.

## I. <u>Background</u>

### A. Factual Background

Except as otherwise indicated, the following factual background is derived from the FTC's Complaint. Dkt. No. 1 ("Compl."). The Court includes these allegations only as background and makes no finding on whether they are true.

Defendant Live Nation Entertainment, Inc. ("Live Nation"), is the nation's largest ticketing company. Compl. ¶ 10. Live Nation owns or controls hundreds of live entertainment venues nationwide, including live entertainment venues within the State of Florida, State of Illinois, and State of Tennessee, promotes thousands of live entertainment events each year, manages artists, and brokers sponsorships for its concerts and festivals. *Id.* ¶ 34. Live Nation is incorporated in Delaware and has its principal place of business in California. *Id.* ¶ 29

Defendant Ticketmaster, L.L.C., a wholly owned subsidiary of Live Nation. *Id.* ¶ 10. It sells and offers to sell tickets for concerts, sports, and other live entertainment events on its website and a mobile application ("app"), making them available to consumers across the country on both the primary ("box office") and secondary ("resale") ticket markets. *Id.* Ticketmaster dwarfs its competitors. *Id.* The company controls roughly 80% or more of major concert venues' primary ticketing for concerts and a growing share of ticket resales in the secondary market. *Id.* From 2019 to 2024 alone, consumers spent more than $82.6 billion purchasing tickets from Ticketmaster. *Id.*

Live Nation and Ticketmaster have operated as a common enterprise. *Id.* ¶ 31. They have conducted the business through interrelated companies that have common officers, headquarters, and business functions. Live Nation's President and CFO is the Live Nation executive responsible for Ticketmaster's operations. *Id.*

The ticket prices and per-event ticket purchase limits on Live Nation and Ticketmaster's website are primarily determined by the artists whose events are ticketed by Live Nation and Ticketmaster. *Id.* ¶ 11.

In public, Live Nation and Ticketmaster profess to prioritize "[g]etting tickets into the hands of fans, at prices set by the artist." *Id.* Live Nation and Ticketmaster also claim that ticket scalpers and "big resale sites" are to blame for resale tickets that Live Nation and Ticketmaster sell for substantially more than the face value of the ticket. *Id.* In private, however, Live Nation and Ticketmaster have tacitly worked with those very same scalpers, allowing them to unlawfully purchase millions of dollars in tickets in the primary market, so that Live Nation and Ticketmaster can extract more profit for themselves when reselling those tickets on the secondary market. *Id.* Live Nation and Ticketmaster's illegal conduct frustrates artists' desire to maintain affordable ticket prices that fit the needs of ordinary American families, costing ordinary fans millions of dollars every year. *Id.*

In public, Live Nation and Ticketmaster maintain that their business model is at odds with brokers that routinely exceed ticket limits. *Id.* In private, Live Nation and Ticketmaster acknowledge that their business model and bottom line benefit from brokers preventing ordinary Americans from purchasing tickets to the shows they want to see at the prices artists set. *Id.*

For years, with the approval and participation of senior executives, Live Nation and Ticketmaster have engaged in three illegal practices that injure artists, cause consumers to pay significantly more for event tickets, and benefit Live Nation and Ticketmaster's bottom line. *Id.*

First, Live Nation and Ticketmaster have displayed deceptively low ticket prices to consumers and charged much more. *Id.* ¶ 12. When consumers have searched for event tickets on Ticketmaster, Live Nation and Ticketmaster have displayed a list price in the search results that does not reflect the actual cost to consumers at checkout. *Id.* That list price is displayed for nearly the entire purchase process, but at checkout, Live Nation and Ticketmaster have charged consumers a substantially higher price with no explanation for the increase. *Id.* The higher price is because, on every ticket sale, Live Nation and Ticketmaster have added substantial mandatory fees not included in the list price, which can raise the cost to the consumer by 30% or more. *Id.*

In Ticketmaster's own words, Live Nation and Ticketmaster have taken a "bait and switch approach" to advertising ticket prices, employed specifically to create a "lift" in ticket sales. *Id.* ¶ 13. Live Nation and Ticketmaster have reaped massive profits by misrepresenting the total price of tickets to consumers, who pay billions of dollars each year in mandatory fees not reflected in the list price. *Id.* While listing tickets for sale at artificially low prices, Live Nation and Ticketmaster have claimed publicly that they support "all-in pricing"—where, as they put it, "the first price the consumer sees is the price the consumer pays." *Id.* Yet, over the last decade, the first price the consumer has seen on Ticketmaster's platform has almost never been the price the consumer pays. *Id.* As Ticketmaster's President told other Ticketmaster and Live Nation executives in 2022: "Until we have ALL IN pricing—this customer experience sucks, even if you change the name of the fees—the sticker shock at the end is the problem." *Id.*

Second, Live Nation and Ticketmaster deceptively represent that they impose strict ticket limits for individual events. *Id.* ¶ 14. Artists request and rely on these ticket limits to give ordinary fans the opportunity to purchase tickets to their events at affordable prices. *Id.* But despite publicly blaming "scalpers and bots" for "prevent[ing] fans from getting tickets at the prices artists set," Live Nation and Ticketmaster routinely allow ticket brokers to exceed ticket limits. *Id.* Live Nation and Ticketmaster have known for years that ticket brokers often buy as many as thousands of tickets for

a single event, denying ordinary fans the opportunity to purchase them "at the prices artists set." *Id.* Live Nation and Ticketmaster's knowing participation in ticket brokers' unlawful conduct serves only to line Live Nation and Ticketmaster's own pockets at the expense of fans and artists. *Id.*

Third, Live Nation and Ticketmaster have earned hundreds of millions of dollars in revenue by systematically violating the Better Online Ticket Sales Act, which prohibits selling or offering to sell tickets previously purchased in circumvention of measures used to enforce posted ticket-purchase limits or purchasing rules. *Id.* ¶ 15. Rather than enforce their ticket limits and purchasing rules against brokers, Live Nation and Ticketmaster knowingly allow, and in fact even encourage, brokers to use multiple Ticketmaster accounts to circumvent Ticketmaster's own security measures and access control systems. *Id.* Live Nation and Ticketmaster's tacit agreement to allow brokers to circumvent their ticket limits so that those same brokers can then list the unlawfully purchased tickets on Live Nation and Ticketmaster's resale marketplace drives up the price of tickets and leaves ordinary fans unable to access the finite pool of tickets available at their face value. *Id.* As a senior Ticketmaster executive admitted in an internal email that copied Live Nation leadership, the companies "turn a blind eye as a matter of policy" to brokers' violations of posted ticket limits. *Id.*

Live Nation and Ticketmaster blame a technological "arms race" and ticket scalping for shutting fans out of artist-priced primary market tickets. *Id.* ¶ 16. But in reality, Live Nation and Ticketmaster's own conduct gives consumers no choice but to resort to purchasing tickets at a steep markup in the resale market, where Live Nation and Ticketmaster can collect another round of fees on the same tickets. *Id.* Indeed, Live Nation and Ticketmaster earn significant revenue from ticket resales. *Id.* When reselling tickets brokers purchased from Ticketmaster, Live Nation and Ticketmaster can "triple dip" on fees, collecting fees from: (1) brokers when they purchase the tickets on the primary market, (2) brokers, again, when Ticketmaster sells their tickets on Ticketmaster's secondary market, and, finally, (3) consumers who purchase tickets from Ticketmaster on its secondary market. *Id.* Ticketmaster offers and sells millions of tickets in this way on its website and app, charging $3.7 billion in fees on resale tickets from 2019 through 2024. *Id.*

Live Nation and Ticketmaster's unlawful conduct and tacit coordination with brokers injures fans, who have paid far more than the advertised ticket price for both box office and resale tickets,

and who are forced to pay inflated resale prices for high demand tickets that brokers illegally amassed from Live Nation and Ticketmaster by circumventing measures used to enforce posted ticket-purchase limits and in violation of posted purchasing rules. *Id.* ¶ 17. Live Nation and Ticketmaster's conduct also injures artists, who set ticket limits that they understand Live Nation and Ticketmaster will implement, only to be thwarted by Live Nation and Ticketmaster's choice to allow brokers to evade them. *Id.*

Plaintiff Federal Trade Commission ("FTC") is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41-58. *Id.* ¶ 20. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Better Online Ticket Sales Act, 15 U.S.C. § 45c. *Id.*

In addition to the FTC, several states have joined the Complaint against Live Nation and Ticketmaster to enforce state statutes. The State Plaintiffs discussed below are empowered to enforce the Better Online Ticket Sales Act, 15 U.S.C. § 45c(c). *Id.* ¶¶ 21-29. Plaintiff Attorney General of Colorado brings this suit under the Colorado Consumer Protection Act. Colo. Rev. Stat. § 6-1-103. *Id.* ¶ 21. Plaintiff Office of the Attorney General, State of Florida, Department of Legal Affairs brings this action under the Florida Deceptive and Unfair Trade Practices Act pursuant to Section 501.203(2), Florida statutes. *Id.* ¶ 22. Plaintiff The People of the State of Illinois brings this action pursuant to the Provisions of the Consumer Fraud Act, 815 ILCS 505/7. *Id.* ¶ 23. Plaintiff State of Nebraska brings this suit under the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-303.05, 303.11 and the Better Online Ticket Sales Act, 15 U.S.C. § 45c(c). *Id.* ¶ 24. Plaintiff State of Tennessee brings this action under Tennessee Consumer Protection Act, Tenn. Code Ann. §§47-18- 101, et seq. and the Better Online Ticket Sales Act, 15 U.S.C. § 45c(c). *Id.* ¶ 25. Plaintiff State of Utah brings this action pursuant to the Better Online Ticket Sales Act, pursuant to 15 U.S.C. § 45c(c) and Utah Code § 67-5-1(1)(b). *Id.* ¶ 26. Plaintiff Utah Division of Consumer Protection brings this action pursuant to Utah Consumer Sales Practices Act, Utah Code §§ 13-11-1 through -23, which prohibits deceptive and unconscionable acts and practices in connection with

consumer transactions. *Id.* ¶ 27. Plaintiff Commonwealth of Virginia brings this action under Better Online Ticket Sales Act, 15 U.S.C. § 45c(c). *Id.* ¶ 29.

**B. Procedural History**

On September 18, 2025, the FTC, together with the states of Colorado, Florida, Illinois, Nebraska, Tennessee, Utah, and Virginia, filed suit in this Court. Dkt. No. 1. The Complaint asserts the following claims: (1) violation of the FTC Act, 15 U.S.C. § 45(a); (2) violation of the Better Online Ticket Sales Act ("BOTS Act"), 15 U.S.C. § 45(a)(1)(A); (3) violation of Colorado law, Colo. Rev. Stat. § 6-1-105(1); (4) violation of Florida law, Fla. Stat. § 501.204; (5) violation of Illinois law, 815 ILCS 505; (6) violation of Nebraska law, Neb. Rev. Stat. § 87-302; (7) violation of Tennessee law, Tenn. Code Ann. § 47-18-104; and (8) violation of Utah law, Utah Code § 13-11-4(1). *See generally id.*

On January 6, 2026, Live Nation and Ticketmaster filed the instant Motion and RJN. Motion; RJN. The Motion seeks to dismiss all claims. *See id.* On January 20, 2026, the FTC filed an Opposition. Dkt. No. 64 ("Opposition"). The FTC also filed an Opposition to the RJN on January 20, 2026. Dkt. No. 65 ("Opposition to RJN"). On January 27, 2026, the Live Nation and Ticketmaster filed a Reply in Support of the Motion and a Reply in Support of their Request for Judicial Notice. Dkt. Nos. 70, ("Reply"), 71 ("Reply to RJN").

On January 12, 2026, Joseph Anthony Reyna filed a Motion for Leave to File an Amicus Curiae Brief, Dkt. Nos. 66, 69, which was denied. On January 30, 2026, Marsha Blackburn filed a Motion for Leave to File an Amicus Curiae Brief. Dkt. No. 78.

On January 30, 2026, United States Senators Marsha Blackburn (Tennessee), Richard Blumenthal (Connecticut), John Cornyn (Texas), Josh Hawley (Missouri), John Kennedy (Louisiana), Ben Ray Luján (New Mexico), and Bernie Moreno (Ohio), filed a Motion for Leave to File an Amicus Curiae Brief, Dkt. No. 81, and the parties stipulated to permit this brief and to permit the Live Nation and Ticketmaster to file a response. Dkt. No. 82. The Court granted leave to file the amicus brief and the stipulation as to a response. Dkt. No. 107. On February 6, 2026, Live Nation and Ticketmaster filed their response to the amicus brief. Dkt. No. 92.

In addition, FTC and the States sought leave to file a surreply, Dkt. No. 97, which the Live Nation and Ticketmaster opposed, Dkt. No. 100. Having considered the request and the opposition, the request is DENIED. The Court does not find that the Live Nation and Ticketmaster's Reply raised anything justifying a surreply, and has therefore not considered the surreply in this Order.

On February 19, 2026, the Court held a hearing on the Motion.

On April 30, 2026, FTC filed a Notice of Supplemental Authority.[1] Dkt. No. 123. On May 1, Live Nation and Ticketmaster filed a Response to the FTC's Notice of Supplemental Authority. Dkt. No. 124.

## REQUEST FOR JUDICIAL NOTICE (DKT. NO. 38-6)

### I. Applicable Law

#### A. Judicial Notice

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials

---

[1] FTC directs the Court to *FTC v. Key Investment Gr., Inc.*, No. GLR-25-2716, 2026 WL 1153031 (D. Md. Apr. 29, 2026) as additional support for its Opposition. Dkt. No. 123. In response, Live Nation and Ticketmaster assert that the supplemental authority is irrelevant because it concerns a different provision of the statute. Dkt. No. 124 at 2-3. They also emphasize that the supplemental authority supports their contentions that: (1) the BOTS Act "was enacted to support the efforts of platforms like Ticketmaster against scalper" rather than imposing liability on such platforms; and (2) the FTC has failed to plead specific allegations. Dkt. No. 124 at 2-4. There, the Court denied defendant's Motion to Dismiss, finding that the BOTS Act applies to "non-bot users" and that whether defendant circumvented security measures is "best suited for summary judgment briefing and discovery." *Id.* at *4-*5. While FTC's supplemental authority is not binding on this Court, the Court finds that its holding in aligned with the Court's analysis detailed hereinafter. In finding that the FTC had adequately pleaded its allegations, the court relied on allegations which appear to be similar in kind to the ones before this Court. *See, e.g.,* Compl. ¶ 74 (like the allegations in *Key Investment Group*, alleging the creation of thousands of accounts, including an example of 13,000 accounts). And finding that the Act imposes liability on scalpers is not inconsistent with imposing liability on platforms as well. And the same "circumvention" language appears to be at issue in both cases.

"submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).

**B. Incorporation by Reference**

The incorporation by reference doctrine is appropriate where "the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir.1998)); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998) (noting that the incorporation by reference doctrine covers extrinsic evidence provided by a defendant on a Rule 12(b)(6) motion), *superseded by statute on other grounds*; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that the incorporation by reference doctrine allows a court take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading")

**II. Discussion**

In support of their Motion, Live Nation and Ticketmaster request the Court to incorporate by reference or judicially notice Ticketmaster's purchase policy, which is attached to Live Nation and Ticketmaster's Motion to Dismiss as Exhibit 1. Dkt. No. 55-2. The FTC opposes Live Nation and Ticketmaster's request. Dkt. No. 65. Live Nation and Ticketmaster claim that the purchase policy is integral to the FTC's BOTS Act claim and is publicly available. RJN at 3-4. In response, the FTC asserts that there is a dispute of fact regarding the policy, and the Complaint does not refer to the policy extensively. Dkt. No. 65 at 6, 8.

As to judicial notice, the Court finds that the documents are relevant to the FTC's claims and relied on in the Complaint as they pertain to the BOTS Act claim. FTC concedes that the policy is publicly available but asserts that the Court cannot draw the conclusion that the policy establishes that Live Nation and Ticketmaster neither own or possess resale tickets and thus do not sell or offer to sell them under the BOTS Act. *Id.* at 6-7. As noted above, under Fed. R. Evid. 201(b), courts

generally may not notice disputed facts in public records. As such, pursuant to *Lee*, the Court judicially notices the existence of the purchase policy, but the Court will not judicially notice the truth of the policy statements—or whether the Live Nation and Ticketmaster comply with the policy—because those are disputed facts.

As to incorporation by reference, the Court finds that although the FTC does not refer extensively to the purchase policy, it is integral to its claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Lee*, 250 F.3d at 688. The FTC only mentions the purchase policy in two paragraphs in the Complaint, but the purchase policy forms the basis of its claims as the policy details the purchase terms and discusses the ticket limits that the FTC alleges are being circumvented. And as discussed, it is hotly disputed whether Live Nation and Ticketmaster sold (or offered to sell) tickets in violation of its stated policy. Dkt. No. 65 at 7; Reply to RJN a 4. Therefore, the Court finds that incorporation by reference is warranted. It, however, is limited to the existence of the policy and its terms, and not the disputed facts therein.

**III. <u>Conclusion</u>**

Accordingly, the Court GRANTS Live Nation and Ticketmaster's Request for Judicial Notice and GRANTS Live Nation and Ticketmaster's Request for Incorporation by Reference as Exhibit 1 and ORDERS as follows:

1. The existence of Ticketmaster's purchase policy, referenced as Exhibit 1, Dkt. No. 55-2, is judicially noticed. The truthfulness of the statements contained in the purchase policy are not judicially noticed.

## <u>MOTION TO DISMISS (DKT. NO. 31)</u>

**I. <u>Applicable Law</u>**

**A. Failure to State a Claim**

Live Nation and Ticketmaster bring their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); Lee, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II. Discussion

Live Nation and Ticketmaster seek to dismiss the FTC's complaint in its entirety, arguing that Plaintiff has failed to state a claim for relief as to all causes of action. *See generally* Motion. For the reasons stated below, the Court finds as follows: (1) the heightened pleading standard of Rule 9(b) does not apply to any of the claims brought by FTC or the states; (2) the FTC has properly stated a claim that Live Nation and Ticketmaster are violating the FTC Act; (3) the FTC has properly stated a claim that Live Nation and Ticketmaster are violating the BOTS Act; and (4) each of the suing states has properly stated a claim that Live Nation and Ticketmaster are violating each state's deceptive practices statutes.

### A. The Complaint Is Not Subject to Rule 9(b) Pleading Standards.

Live Nation and Ticketmaster argue that "because the Complaint asserts a unified course of deceptive conduct," the allegations are sound in fraud and thus, subject to heightened pleadings standards under Rule 9(b). Motion at 16-17; Reply at 8-9. Because the deception and BOTS Act claims do "not require proof of common law fraud[] elements," the FTC asserts that the claims are not subject to Rule 9(b). Opposition at 6-7.

When a party claims "fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (explaining the "heightened pleading standard of Rule 9(b)" and how fraud "must state with particularity the circumstances constituting fraud"). The common-law elements of fraud are: (1) representation; (2) its falsity; (3) its materiality; (4) speaker's knowledge of its falsity or ignorance of its truth; (4) intent that it be acted on by person and in manner reasonably contemplated; (5) hearer's ignorance of its falsity; (6) reliance on its truth; (7) right to rely thereon; and (8) and consequent and proximate injury. *Wilcox v. First Interstate Bank of Or., N.A.*, 815 F.2d 522 (9th Cir. 1987).

Live Nation and Ticketmaster cite to *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) to assert that FTC's claims are subject to Rule 9(b) because they are sound in fraud.[2] Motion at 16-17. *Kearns* does not hold that Section 5 of the FTC Act is subject to Rule 9(b) as the plaintiff there brought claims under the California Consumers Legal Remedies Act and California's Unfair Competition Act. *Kearns*, 567 F.3d at 1122. *Kearns* does conclude that where a plaintiff alleges "a unified course of fraudulent conduct and rely entirely on that course of conduct," the plaintiff's claims are sound in fraud and thus, subject to Rule 9(b). *Id.* at 1125-26. And the *Kearns* court found that the plaintiff's allegations sounded in fraud as they stated that plaintiff conspired to misrepresent the benefits of a program and plaintiff was led to wrongfully believe that the product was inspected by "specially trained technicians" and was more "safe." *Id.*

As to the FTC's deception claim, 15 U.S.C. § 45(a) provides that: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." The statute does not require the FTC to prove scienter, reliance or injury to establish a section 45(a) violation. It only requires a showing of unfair or deceptive conduct. *Id.* And in the Complaint, the FTC only claims that Live Nation and Ticketmaster's ticketing practices constitute deceptive acts under section 45(a). Compl. ¶¶ 113-18. At the February 19, 2026 hearing, Live Nation and Ticketmaster argued that the FTC's allegations

---

[2] Live Nation and Ticketmaster also cite to *F.T.C. v. Lights of Am., Inc.*, 760 F.Supp.2d 848, 851-54 (C.D. Cal. 2020), which held that a plaintiff's FTC Act claims were sound in fraud and subject to Rule 9(b). There, the court relied on *Kearns*'s "unified course of fraudulent conduct" standard to hold that the plaintiff's complaint was sound in fraud. The Court notes that *Lights of America, Inc.* concerns similar statutory claims. However, the holding is not binding authority on this Court and as the Court discusses, the FTC's allegations do not assert a unified course of fraudulent conduct.

comprised of a unified course of conduct related to deceptive ticketing practices. However, unlike *Kearns*, the FTC's allegations do not comprise of a "unified course of *fraudulent* conduct." *Kearns*, 567 F.3d at 1125-26 (emphasis added). Rather, the allegations are confined to the statutory language set forth in section 45(a) and do not implicate common elements of *fraudulent* conduct such as scienter or reliance. Compl. ¶¶ 113-18. Although the Complaint centers around Live Nation and Ticketmaster's general ticketing practices, it does not allege that those practices were *fraudulent* in nature. Accordingly, FTC's deception claims are not subject to Rule 9(b) pleading standards.

As to the FTC's BOTS Act claim, 15 U.S.C. § 45c(a)(1) states it is unlawful for any person:

> (A) to circumvent a security measure, access control system, or other technological control or measure on an Internet website or online service that is used by the ticket issuer to enforce posted event ticket purchasing limits or to maintain the integrity of posted online ticket purchasing order rules; or
>
> (B) to sell or offer to sell any event ticket in interstate commerce obtained in violation of subparagraph (A) if the person selling or offering to sell the ticket either--
>
> > (i) participated directly in or had the ability to control the conduct in violation of subparagraph (A); or
> >
> > (ii) knew or should have known that the event ticket was acquired in violation of subparagraph (A).

15 U.S.C. § 45c(a)(1).

The BOTS Act similarly does not require the FTC to provide scienter, reliance, or injury. Nor does it require proving misrepresentation. Live Nation and Ticketmaster also argued that the Complaint alleged a unified course of fraudulent conduct as to the BOTS Act claim at the February 19, 2026 hearing. But like the FTC's section 45(a) claims, the BOTS Act claim does not allege a "unified course of *fraudulent* conduct." *Kearns*, 567 F.3d at 1125-26 (emphasis added); *see* Compl. ¶¶ 123-25. Rather, the Complaint allegations are limited to the statutory language of the BOTS Act under section 45c(a)(1)—stating that Live Nation and Ticketmaster's technological controls were circumvented and Live Nation and Ticketmaster either had the ability to control the circumvention or knew that the circumvention was happening. *Id.* Adopting Live Nation and Ticketmaster's position would subject every BOTS Act claim to Rule 9(b) pleading standards which is unsupported by the statutory language and binding authority. Because the Complaint does not claim any misrepresentation or reliance as to the BOTS Act claim, the FTC's BOTS Act claim does not sound in fraud and is not subject to Rule 9(b) pleading standards.

Accordingly, the Court will the address the Motion under Rule 8(a).

**B. The FTC Sufficiently Pleads a Claim Under the FTC Act (Counts I-II).**

The parties' arguments focus on 15 U.S.C. § 45(a), specifically concerning: (1) whether Live Nation and Ticketmaster made a material representation, omission, or practice; and (2) whether the representation, omission, or practice likely misled consumers acting reasonably under the circumstances. *See generally* Motion; Opposition.

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). To establish a deceptive act or practice, the FTC must allege: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances and (3) is material. *F.T.C. v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (citation omitted). The Ninth Circuit has held: "The Federal Trade Act is violated if it induces the *first contact* through deception, even if the buyer later becomes fully informed before entering the contract." *Resort Car Rental Sys., Inc. v. F.T.C.*, 518 F.2d 962, 964 (9th Cir. 1975) (emphasis added). "Advertising capable of being interpreted in a misleading way should be construed against the advertiser." *Id.* "Proof of actual deception is unnecessary." *Trans World Accts., Inc. v. FTC*, 594 F.2d 212, 214 (9th Cir. 1979).

i. <u>FTC Has Properly Alleged That Live Nation and Ticketmaster's Ticket Price Representations Are Deceptive</u>

Live Nation and Ticketmaster argue that the FTC has failed to "allege that the disclosures were deceptive." Motion at 28; Reply at 23. The FTC contends that Live Nation and Ticketmaster deceptively advertise low prices, failing to include their mandatory fees at the conclusion of the purchase. Opposition at 8.

Here, the Complaint sufficiently sets forth allegations as to Live Nation and Ticketmaster's ticket price representations being deceptive. The Complaint alleges that Ticketmaster displays the face value price at the outset, where consumers can use filters to narrow options for desired tickets and pricing. Compl. ¶¶ 40, 45, 49. Notably, the face value price is not inclusive of associated fees. *Id.* At the end of the purchase process, the associated fees are disclosed, increasing the total cost of the ticket up to 44%. *Id.* ¶ 46. Thus, the Complaint plausibly states that consumers are lured into Ticketmaster through the low-priced tickets and are subsequently faced with a much higher price before the purchase is complete. Although, as argued by Live Nation and Ticketmaster, the final

price, inclusive of the ticket's face value and associated fees, is displayed before the purchase, violation of the FTC Act may occur at the *first contact*.[3] *See Resort Car*, 518 F.2d at 964; *id.* ¶ 43.

Live Nation and Ticketmaster further assert that their practices could not mislead consumers because "+Fees" was included next to each ticket price. Motion at 28-29; Reply at 23; Compl. ¶ 46. Qualifying language must be clear and unambiguous. *See F.T.C. v. Cyberspace.Com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) ("A solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures."). "+Fees" is vague and ambiguous. Even if it puts consumers on notice that fees will be included on every ticket, it does not put them on notice of the fee amount, which can be significant. Opposition at 18; Compl. ¶ 46. Therefore, Live Nation and Ticketmaster's qualifying language does not prevent the likelihood that consumers will be misled by Live Nation and Ticketmaster's displayed low-priced tickets.[4] In fact, in their attempt to explain the history of their "all-in pricing" approach, Live Nation and Ticketmaster basically admit this. According to Live Nation and Ticketmaster, they did not seek to implement all-in pricing until there was a nationwide rule because if they implemented all-in pricing while their competitors did not, this would shift sales to their competitors as consumers went to the platforms where the advertised upfront price was lower.

---

[3] In Reply, Live Nation and Ticketmaster posit that *Resort Car* is distinguishable because it involved qualifying language that would result in a contradiction in terms. Reply at 24. But *Resort Car*'s holding is not limited to circumstances resulting in a contradiction in terms. Rather, the Ninth Circuit emphasized whether the conduct at issue could mislead a consumer at the first contact. *Resort Car*, 518 F.2d at 964. As stated, a reasonable consumer would not associate "+Fees" as a 44% increase in cost. Thus, the Court finds that the Complaint plausibly pleads that Ticketmaster induced the first contact through deception.

[4] 15 U.S.C. § 53(b) provides for an injunction if the defendant is "violating, or is about to violate, any provision of law enforced by the [FTC]." In their Motion, Live Nation and Ticketmaster argue that the FTC's allegations rests on outdated ticket price displays and thus, they cannot plausibly claim injunctive relief because there is no risk of an ongoing violation. Motion at 27-28; Reply at 19-22. In particular, Live Nation and Ticketmaster focus on the language of section 53(b), arguing that the FTC must plausibly plead Live Nation and Ticketmaster are "about to violate" the law. Reply at 21. And Live Nation and Ticketmaster state that the FTC concedes that Ticketmaster has implemented all-in pricing. *Id.* The Complaint, however, only recognizes that Live Nation and Ticketmaster announced "their *intention* to incorporate fees into listed ticket prices"—not that all-in pricing has *actually* been adopted. Compl. ¶ 63 (emphasis added). Further, the Complaint discusses how Live Nation and Ticketmaster: (1) falsely advertised their ticket prices for a decade, *id.* ¶¶ 55-62 (detailing how since 2015, Live Nation and Ticketmaster understood that their revenue increased when price displays were less transparent), 63 (claiming that Live Nation and Ticketmaster only announced their intentions to implement all in pricing and that all in pricing has not actually been implemented); (2) have the ability to commit future violations as they are significant players in the ticketing industry, *id.* ¶ 110 (stating explicitly that Live Nation and Ticketmaster "are violating or about to violate laws" enforced by the FTC); and (3) denied, rather than acknowledge, wrongdoing, *id.* Opposition at 13-17. In sum, the FTC's allegations suggest that the alleged violations have not stopped, and future violations are imminent.

Accordingly, the Court finds that the FTC sufficiently pleads a claim under the FTC act regarding Live Nation and Ticketmaster's ticket prices.

ii. Live Nation and Ticketmaster's Ticket Limit Is Deceptive.

Live Nation and Ticketmaster state the Complaint does not plausibly allege that Ticketmaster's "posted ticket-limit disclosures are false or misleading." Motion at 29. In fact, Live Nation and Ticketmaster claim that their representations are true. Reply at 25-26. In response, the FTC claims that the fictitious ticket limits are deceptive and material to artists and consumers. Opposition at 19-20.

Here, the Complaint sufficiently presents allegations as to Live Nation and Ticketmaster's ticket limits being deceptive. It alleges that Live Nation and Ticketmaster represent to the public, consumers, and artists that ticket limits will be enforced. Compl. ¶ 67. Live Nation and Ticketmaster suggest that the FTC must allege facts beyond the existence of ticket limits. Reply 26-27. However, the Complaint details how the existence of ticket limits are material to artists and consumers. First, artists negotiate and rely on ticket limits to provide ordinary fans an opportunity to purchase tickets to their events. *Id.* ¶¶ 14, 65-66, 72. Second, consumers are negatively impacted by the decreased tickets available if limits are unenforced. *Id.* ¶¶ 72-73. Live Nation and Ticketmaster maintain that the ticket limits are immaterial to consumers because it would not alter a "consumer's decision to participate in an onsale for a particular event." The Court disagrees. The ticket limits indicate the availability and affordability (at primary market prices) of ticket prices for events sold by Ticketmaster. Opposition at 12; Compl. ¶¶ 72-73, 79. As such, consumers will prioritize attempts to purchase tickets through Ticketmaster, thereby missing out on opportunities to purchase tickets at low prices from alternative ticketing platforms. Opposition at 12; Compl. ¶ 54. In sum, Live Nation and Ticketmaster's ticket limits materially mislead artists—who will contract with Live Nation and Ticketmaster—and consumers—who will presume Ticketmaster offers affordable tickets and exert significant time and effort on Ticketmaster's platform.

As argued by Live Nation and Ticketmaster, it is undisputed that they have implemented ticket limits. Reply at 26. But the crux of this action is their knowledge of violations and inaction to

prevent the violations. Thus, Live Nation and Ticketmaster, in practice, have misled consumers. *Stefanchik*, 559 F.3d at 928.

In their reply, the Live Nation and Ticketmaster characterize the misrepresentations alleged in the complaint in the following way:

1. Ticketmaster's representations that, for certain events, there is a "strict . . . limit" on the number of tickets individual accounts can purchase; and
2. Ticketmaster's representations that using multiple accounts to evade such ticket limits is "forbidden."

Reply at 25. But this is not how the Complaint—which this Court is bound by—characterizes the misrepresentations. First, the Complaint alleges that Ticketmaster falsely represents that there is a strict limit on tickets that any individual consumer can purchase, not solely a limit on the tickets an individual account can purchase. Compl. ¶¶ 11, 14, 69 ("When purchasing tickets on our Site, you are limited to a specified number of tickets for each event . . . . Each account must be linked to a unique individual, and must contain valid and verifiable information."). As alleged in the Complaint, this representation is false because actually, individual consumers *can* purchase many more via known methods such as creating hundreds or thousands of accounts, using fictitious names, or acquiring accounts through advertisements offering to purchase Ticketmaster accounts. *Id.* ¶ 74. Second, the Complaint alleges that Ticketmaster falsely represents that its platform actually *does not permit* anyone to use multiple accounts to evade limits (that is, it simply cannot be done as a technical matter), not just that its policy says it is forbidden. *Id.* ¶ 68 ("Ticketmaster's posted Terms of Use and Purchase Policy, along with other security measures and controls, also have prohibited users both from purchasing tickets in excess of posted per-event ticket limits, and from using multiple Ticketmaster user accounts to buy tickets in excess of those limits."). And the Complaint has plausibly alleged this is false because the FTC alleges that Ticketmaster does permit scalpers and brokers to use multiple accounts to get around the ticket limits and, in fact, does so knowingly. *Id.* ¶¶ 80-89.

Taken together, the Complaint alleges that Live Nation and Ticketmaster made material representations pertaining to ticket limits yet failed to enforce the limits. Accordingly, the Court

finds that the FTC sufficiently pleads a claim under the FTC Act regarding Live Nation and Ticketmaster' ticket limits. The Court denies the Motion as to the FTC Act claims.

**C. The FTC Sufficiently Pleads a Claim Under the BOTS Act (Count III).**

The parties dispute whether the Complaint sufficiently pleads a claim under the BOTS Act. The dispute centers around the following issues: (1) whether scalpers and brokers *circumvented* Live Nation and Ticketmaster' technological safety measures under the meaning of the Act; and (2) whether Live Nation and Ticketmaster *sold or offered to sell* tickets—under the meaning of the Act—that they knew or should have known were acquired through the circumvention. Motion at 17; Opposition at 16-22.

i. The Complaint Adequately Pleads Circumvention.

1. *Ticketmaster's Ticket Limit Policy*

The parties do not dispute that the essence of the FTC's BOTS Act claim concerns Ticketmaster's ticket limit policy. Motion at 17-24; Opposition at 16-22; Compl. ¶ 69.

Ticketmaster's ticket limit policy sets forth the following:

> When purchasing tickets on our Site, you are limited to a specified number of tickets for each event (also known as a "ticket limit"). This ticket limit is posted during the purchase process and verified with every transaction. This policy is in effect to discourage unfair ticket buying practices. Each account must be linked to a unique individual, and must contain valid and verifiable information. Multiple accounts may not be used to circumvent or exceed published ticket limits. If you exceed or attempt to exceed the posted ticket limits, we reserve the right to cancel, without notice, any or all orders and tickets, in addition to prohibiting your ticket purchasing abilities. Any tickets canceled due to violating the posted ticket limit may be refunded at face value (excluding fees). This includes orders associated with the same name, e-mail address, billing address, credit card number, or other information.

Dkt. No. 55-2 at 6. As such, the question before the Court is whether the FTC sufficiently pleads that: (1) Ticketmaster has technological measures in place to enforce the ticket limit policy; and (2) whether those technological measures were circumvented. 15 U.S.C. § 45c(a)(1).

2. *Ticketmaster's Technological Measures*

Live Nation and Ticketmaster contend that the FTC conflates circumventing ticket limits and circumventing technological measures used to enforce ticket limits. Motion at 21-23. Because the ticket limit policy, alone, is not a technological control or measure within the scope of the BOTS Act, Live Nation and Ticketmaster posit that the FTC failed to tether their claim to any technological

controls or measures. *Id.*; Reply at 15-16. The Complaint, however, details that the Ticketmaster installed numerous software and technological measures to enforce its posted ticket limits. First, Ticketmaster's website and app "automatically prevent a single Ticketmaster accountholder from adding . . . or purchasing[] more tickets than the posted limit. Ticketmaster uses a drop-down menu that allows the purchaser to select only up to the limit."[5] Compl. ¶ 70. Second, Ticketmaster relies on TicketCounter, a system designed to "automatically block[] multiple attempts from the same IP address and analyzes patterns to identify multiple accounts acting in concert to evade purchase limits." *Id.* ¶¶ 71, 76 (discussing account verification measures). Thus, the FTC explicitly alleges that Ticketmaster's technological measures are directed to enforcing its ticket limit policy.

*3. Ticketmaster's Technological Measures Were Circumvented.*

Live Nation and Ticketmaster state that the Complaint fails to allege how the technological controls or measures in place to enforce Ticketmaster's ticket limit policy were circumvented. Motion at 21; Reply at 13-16; Dkt. No. 92 at 8-9. In response, the FTC explains that scalpers and brokers, through the creation of numerous accounts, have bypassed Ticketmaster's technological controls or measures in place to enforce the ticket limit guidelines.[6] Opposition at 18-22.

The BOTS Act prohibits the selling or offering to sell tickets, which one had "the ability to control" or "knew or should have known" were acquired through circumvention. 15 U.S.C. § 45c(a)(1). "Circumvent" is not defined in the BOTS Act. The Court will thus look to its plain meaning. "Circumvent" means evading or avoiding a particular restriction. *See, e.g.*, Circumvent,

---

[5] At the February 19, 2026 hearing, Live Nation and Ticketmaster argued that the drop-down menu does not constitute a technological measure. However, as mentioned by Live Nation and Ticketmaster at the hearing, the drop-down menu is a product of technological coding by Live Nation and Ticketmaster. Given its technological nature and the fact that it permits a consumer to only purchase a limited amount of tickets, the Court finds that the drop-down menu is a technological measure within the BOTS Act.

[6] Live Nation and Ticketmaster, in their Motion, stated that "Congress enacted the BOTS Act to protect platforms from bad actors." Motion at 15. In the United States Senators Amici Curiae Brief, they note that the BOTS Act "has been about consumer protection, not platform protection." Dkt. No. 81-1 at 11-12; *Examining the Better Online Ticket Sales Act of 2016: Hearing Before the S. Subcomm. on Consumer Prot., Prod. Safety, Ins., & Data Sec. of the S. Comm. on Com., Sci., & Transp.*, 114th Cong. 2 (2016) ("2016 Hearing"). Live Nation and Ticketmaster, in their Response to the Amici Curiae Brief, conceded that protecting consumers was "one goal of the BOTS Act." Dkt. No. 92 at 10. Thus, the parties do not dispute that the BOTS Act was enacted to protect consumers from unfair ticket practices.

Black's Law Dictionary (12th ed. 2024) ("To avoid (a restrictive problem, rule, etc.), esp[ecially] by clever and sometimes dishonest means").

The Complaint alleges that scalpers and brokers "routinely create hundreds or thousands of Ticketmaster accounts, often using fictitious names, email addresses, and other required information" "to purchase tickets in excess of posted limits." Compl. ¶ 74. They "bypass ticket limits" by using software that: (1) allows one person to log into multiple accounts at once; or (2) allows them to verify numerous fictitious accounts. *Id.* ¶ 76. Through these methods, the FTC asserts that the scalpers and brokers have evaded "Ticketmaster's automatic screening measures" and "verification measures." *Id.*

Live Nation and Ticketmaster then insist that circumvention under the BOTS Act means "technological circumvention," Opposition at 19-20, relying on the manner in which "circumvent" is used in the Digital Millennium Copyright Act ("DMCA"). Motion at 23; Reply at 15-16. But whereas the BOTS Act does not define "circumvent," and therefore the Court applies its plain meaning, the DMCA specifically defines "to circumvent a technological measure" as "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). Had Congress intended to define "circumvent" in the way it is defined in the DMCA, it clearly could have. It did not. *See also* Dkt. No. 81-1 at 9-10. The Court declines to adopt the narrow definition advanced by Live Nation and Ticketmaster particularly given that Congress had the opportunity to and did not limit circumvent to *technological* measures.[7] *See* 15 U.S.C. § 45c(a)(1)(A)-(B). As a result, the BOTS Act is not limited to technological circumvention.

---

[7] It is for this reason that the citation to this Court's opinion in *iSpot.tv, Inc. v. Teyfukova*, No. 2:21-cv-06815, 2023 WL 3602806 at *5 (C.D. Cal. May 22, 2023); Opposition at 19-20, is inapposite. In *iSpot*, this Court found:

> To reiterate, "circumvention" is "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair *a technological measure*, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A) (emphasis added). Most relevant here is the statute's relationship between "circumvention" and "technological measure." The wording of the statute indicates that "circumvention" requires some manipulation of the technological measure at hand and certainly more than that a username and password was simply transferred into the hands of another.

*iSpot*, 2023 WL 3602806, at *6. The BOTS Act contains no such relationship and therefore the Court does not find that to "circumvent" under the BOTS Act necessarily requires some manipulation of the technological measure at hand.

To "circumvent" means evading or avoiding a particular restriction. *See, e.g.*, Circumvent, Black's Law Dictionary (12th ed. 2024). The FTC sufficiently alleges that Ticketmaster's technological measures, were circumvented by scalpers and brokers who "routinely create hundreds or thousands of Ticketmaster accounts, often using fictitious names, email addresses, and other required information" "to purchase tickets in excess of posted limits." Compl. ¶ 74. They "bypass ticket limits" by using software that: (1) allows one person to log into multiple accounts at once; or (2) allows them to verify numerous fictitious accounts. *Id.* ¶ 76. Through these methods, the FTC asserts that the scalpers and brokers have evaded "Ticketmaster's automatic screening measures" and "verification measures" such as the drop-down menu and TicketCounter system. *Id.*

Live Nation and Ticketmaster also maintain that it is not possible under the BOTS Act for them to circumvent their own technological measures and controls. As described herein, the FTC has made out a claim under the BOTS Act—based upon circumvention by scalpers and brokers—making it irrelevant whether or not hypothetically a platform can be found to have circumvented its own technological measures and controls. The BOTS Act does not preclude platforms from facing liability, and the Court will not read it as doing so. Live Nation and Ticketmaster also asserted at the February 19, 2026, hearing that the policy on multiple accounts is not meant to enforce the ticket limits. This seems implausible, but be that as it may, the Court has outlined the technological measures and controls that the FTC has properly alleged were circumvented.

In sum, the Complaint adequately alleges that Live Nation and Ticketmaster maintained technological measures to ensure their ticket limits were not exceeded, and scalpers and brokers bypassed the measures by masking multiple and fictitious accounts.[8]

ii. <u>The Complaint Adequately Alleges that Live Nation and Ticketmaster Sold or Offered to Sell Tickets They Knew or Should Have Known Were Acquired Through Circumvention.</u>

---

[8] In the Motion and Reply, Live Nation and Ticketmaster claim that the BOTS Act claim should be dismissed because the Complaint did not identify a specific ticket sold in violation of the BOTS Act. Motion at 24; Reply at 13, 16-17. But a complaint need not allege "absolute particularity or a recital of the evidence or "describe in detail a single specific transaction." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). And as discussed, the Court finds that the FTC's allegations are not sound in fraud and thus, not subject to Rule 9(b)'s pleading standard. The FTC is therefore subject to Rule 8(a)'s pleading standard which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) does not require the FTC to identify a specific ticket sold. Accordingly, the FTC was not required to identify a specific ticket at this pleading stage.

*1. Live Nation and Ticketmaster Sell or Offer to Sell Tickets.*

Live Nation and Ticketmaster posit that the Complaint does not allege that Ticketmaster "sells or offers to sell" tickets under subparagraph (B) of the BOTS Act. Motion at 18-20; Dkt. No. 92 at 6-8. Rather, Live Nation and Ticketmaster state that consumers or brokers list and sell tickets on the market, and Live Nation and Ticketmaster merely provide the platform. *Id.* The FTC responds, claiming that Ticketmaster's operations are centered on exchanging tickets for money. Opposition at 22. In Reply, Live Nation and Ticketmaster reiterate that they merely provide a marketplace to facilitate listings and transfers. Reply at 10.

The BOTS Act also does not define "sell." 15 U.S.C. § 45c. As a result, the Court will look to the plain meaning of the word. *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100-01 (2012). The ordinary meaning of "sell" is to convey an interest for consideration. *See, e.g.*, New Oxford American Dictionary 1586 (3d ed. 2010) ("give or hand over (something) in exchange for money"); Sell, Black's Law Dictionary (12th ed. 2024) ("To transfer (property) by sale"); Sale, Black's Law Dictionary (12th ed. 2024) ("The transfer of property or title for a price"). "Offer to sell" is defined as expressing a willingness to convey an interest for consideration. *See* Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain[.]"); Dkt. No. 81-1 at 5-6. The parties do not dispute the plain meaning of "sell" and "offer to sell" but contest whether a person must own or possess an item in order to sell or offer to sell it. Motion at 18-20; Opposition at 22-23.

The Complaint alleges that Ticketmaster "sells tickets that third parties have previously purchased." Compl. ¶¶ 33-34 (stating that Live Nation describes itself as "selling tickets to consumers in both the primary and secondary market for live-event tickets"). It elaborates Ticketmaster's purchase process, explaining that once tickets are "purchased and resold on Ticketmaster" and subsequently delivered to the secondary-market purchase, the first ticket is void and Ticketmaster *reissues a new ticket*, *with unique identifying information*. *Id.* ¶ 48 (emphasis added).

As an initial matter, the plain language of "sell" and "offer to sell" encompasses the conduct that Live Nation and Ticketmaster and other ticket platforms engage in, as the FTC and the amici

discuss. *Pinter v. Dahl*, 486 U.S. 622, 642-43 (1988); *Albrecht v. United States*, 273 U.S. 1, 11 (1927). The Supreme Court has held that possession is not a requirement to sell an item. *Pinter*, at 642-43 ("In common parlance, a person may offer or sell property without necessarily being the person who transfers title to, or other interest in, that property."); *Albrecht*, 273 U.S. at 11 ("One may obviously possess without selling, and one may sell and cause to be delivered a thing of which he has never had possession.").

But even if that were not the case, Live Nation and Ticketmaster's contention that Ticketmaster "neither owns nor possesses the resold ticket" is unavailing. Motion at 19; Dkt. No. 55-1 at 3. Ticketmaster's process involves voiding the first ticket sold on the primary market, then issuing a new ticket with *unique identifying information* during the resale market. Opposition at 23-24; Compl. ¶ 48. And Ticketmaster conveys an interest (the ticket evidencing one's right to attend an event), Compl. ¶ 48, for consideration (mandatory fees charged to consumers on ticket purchases), *id.* ¶¶ 36-38.

This conduct is beyond just providing a platform to facilitate ticket purchases as Ticketmaster repossesses the ticket after voiding the first ticket sold on the primary market, and subsequently obtains a monetary benefit once the ticket is sold on the resale market, usually at a higher price resulting in increased fees. *Id.* ¶¶ 48, 78; Dkt. No. 81-1 at 6; Reply at 10-12. As such, the Complaint adequately pleads that Live Nation and Ticketmaster sold or offered to sell tickets within the meaning of the statute.

2. *Live Nation and Ticketmaster Had Control and Knowledge of the Circumvented Tickets*.

Live Nation and Ticketmaster claim that the "Complaint offers no plausible allegation that Ticketmaster knew or should have known any specific ticket resold on its platform was acquired through a BOTS Act violation." Motion at 25; Reply at 17-18. In opposition, the FTC argues that Live Nation and Ticketmaster had the ability to control illegal ticket purchases and knew that that they were selling or offering illegally purchased tickets. Opposition 26-29.

Here, the FTC sufficiently pleads control and knowledge. The 1AC alleges that Live Nation and Ticketmaster, since 2018, have identified scalpers and brokers circumventing the ticket limits

but have elected to allow the circumvention to continue. Compl. ¶¶ 65, 71, 83, 85, 87, 100-02. Contrary to Live Nation and Ticketmaster's assertion that the Complaint solely includes vague allegations, Reply at 17, the FTC claims that Live Nation and Ticketmaster had systems in place, providing them with data and analytics of users who significantly exceeded ticket purchase limits. *Id.* Internal communications also indicated that Live Nation and Ticketmaster were aware of specific users who violated fictitious account rules on a large scale. Opposition at 27; Compl. ¶ 82. Upon identifying violators, Live Nation and Ticketmaster could have implemented measures to curtail continuing violations of ticket purchase limits. However, the FTC maintains that Live Nation and Ticketmaster "have reduced, discontinued, or declined to implement the use of tools that could effectively enforce ticket limits against brokers," thereby enabling circumvention. Compl. ¶ 102. Thus, the Complaint illustrates that Live Nation and Ticketmaster had knowledge of the violations, had the opportunity and means to counter the violations, but elected to allow scalpers and brokers to bypass ticket purchase limits.

Live Nation and Ticketmaster concede that the Complaint alleges that brokers exceeded ticket purchase limits but contends that the FTC "does not plausibly establish that any of those tickets were originally acquired through circumvention." Motion at 25. As stated, the FTC plausibly pleads circumvention—scalpers and brokers bypassing ticket limits and verifications—and Live Nation and Ticketmaster were aware of *these* scalpers and brokers. As a result, the Complaint suggests that the alleged ticket purchase limit violations arose from circumvention of Live Nation and Ticketmaster's technological controls and measures designed to protect against excessive ticket purchases.

Further, Live Nation and Ticketmaster contend that the Complaint fails to sufficiently plead control or knowledge of circumvented tickets because the Complaint did not identify a specific ticket sold in violation of the BOTS Act. Motion at 24; Reply at 13, 16-17. However, because the FTC is subject to Rule 8(a)'s pleading standard requiring a short and plain statement, the FTC was not obligated to identify a specific ticket. Fed. R. Civ. P. 8(a).

Accordingly, the Court concludes that the Complaint sufficiently sets forth allegations stating that Live Nation and Ticketmaster sold or offered to sell tickets acquired through circumvention, which they had control of or knew were acquired through circumvention.

iii. The Statute of Limitations Is Inapplicable

The BOTS Act has a three-year statute of limitations. 15 U.S.C. § 57b(d). Live Nation and Ticketmaster argue that much of the Complaint's alleged conduct occurred between 2018 to 2022—more than three years before the FTC initiated this action. Motion at 18. Section 57b(d) applies to actions seeking redress for BOTS Act violations. 15 U.S.C. § 57b(d). It does not apply to the FTC's request for injunctive relief, civil penalties, or any of the FTC's state BOTS Act claims. Because the Complaint seeks relief beyond redress for BOTS Act violations and asserts violative conduct beyond 2022, the Court finds that the statute of limitations does not bar the FTC's claims.

iv. Civil Penalties Under 15 U.S.C. § 45(m) Are Applicable.

Under 15 U.S.C. § 45(m), a party make seek civil penalties for "knowing violations" of the BOTS Act. Live Nation and Ticketmaster suggest that the FTC has failed to plead that they acted with actual knowledge that their conduct violated the BOTS Act. Motion at 26; Reply at 19. The FTC argues that it pleads that Live Nation and Ticketmaster "actually knew" of the ticket purchase violations and that such violations do not comply with the BOTS Act. Opposition at 29.

As discussed, the Court determined that the Complaint adequately alleges that Live Nation and Ticketmaster had knowledge of the scalpers' and brokers' circumvention of Live Nation and Ticketmaster's security measures, yet elected to allow continued purchase ticket limit violations. Thus, the knowledge prong is sufficiently pled, and the Court holds that the FTC's claim for civil penalties under Section 45(m) should not be dismissed.

v. States Are Permitted to Allege Violations Alongside the FTC.

Pursuant 15 U.S.C. § 45c(c), a State may "bring a civil action on behalf of the residents of the State in an appropriate district court of the United States." Section 45c(c)(4) states a State "may not, during the pendency of such action, bring a civil action" "[i]f the [FTC already] institute[d] a civil action or an administrative action with respect to a violation of subsection (a).

Paragraph 125 of the Complaint alleges that Colorado, Florida, Illinois, Nebraska, Tennessee, Utah, and Virginia (collectively, "States") seek to join this action pursuance to Section 45c(c). Compl. ¶ 125. Live Nation and Ticketmaster state that this is impermissible because the FTC already instituted an action. Motion at 26. The FTC emphasizes that the States are not bringing a separate action. Opposition at 38. Rather, the States are acting jointly with the FTC. *Id.*

Based on the statute's language, Section 45c(c) is triggered when a State seeks to *bring an action*. Section 45c(c) makes no reference to or restricts a State from joining a FTC action. As such, the Court is not inclined to expand Section 45c(c)'s scope beyond the plain language set forth by the legislature. Here, because the States are *joining* the FTC rather than *bringing their own action*, the Court determines that Section 45c(c) is inapplicable. Accordingly, the States are permitted to join the action.

Taken together, the Court denies the Motion as to the BOTS Act claim.

### D. The State Plaintiffs Sufficiently Plead Their State Law Claims.

Live Nation and Ticketmaster contend the State Plaintiff's state law claims fail because the FTC's Section 5 claims fail, and the state law claims are similar. Motion at 30-32; Reply at 27-28. The FTC states that "facts pleading the FTC's Section 5 claims also suffice for state Plaintiffs' deception claims, which require the same (or lesser) allegations as Section 5." Opposition at 12-13.

The Complaint asserts state-law violations for the following states: Colorado, Florida, Illinois, Nebraska, Tennessee, and Utah. *See generally* Compl.

Florida and Utah, in their statutes prohibiting deceptive practices, expressly incorporate the FTC Act standards by reference.[9] *See* Fla. Stat. § 501.204(1); Utah Code Ann. § 13-11-2(4). The

---

[9] As to the Utah state unconscionability claim, Live Nation and Ticketmaster posit that Utah sets a high bar for unconscionability, and the Complaint merely packages the deception claims. Reply at 27 (*citing Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1245 (D. Utah 2016)). The Supreme Court of Utah has held as follows:

> Whatever the particular formulation, the standard for determining unconscionability is high, even if not precise. . . . "Unconscionable" is a term that defies precise definition. Rather, a court must assess the circumstances of each particular case in light of the twofold purpose of the doctrine, *prevention of oppression and of unfair surprise*.

appellate courts of Illinois, Tennessee, and Colorado have also interpreted those states' deceptive-practice statutes to reflect the FTC Act standards. *See Aliano v. Ferriss*, 988 N.E.2d 168, 176 (Ill. App. Ct. 2013); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005); *People ex rel. Dunbar v. Gym of Am., Inc.*, 493 P.2d 660, 668-69 (Colo. 1972). Finally, the language of Nebraska's deceptive practices statute mirrors that of Section 5. Neb. Rev. Stat. § 87-302 ("Advertises goods or services with intent not to sell them as advertised or advertises the price in any manner calculated or tending to mislead or in any way deceive a person."). As such, each state statute claimed to be violated parallels the FTC Act.

Because the Court determined that the Complaint adequately pleads a claim under the FTC Act—and given that Live Nation and Ticketmaster do not make any additional arguments as to why the state law claims are not properly pleaded—the Court concludes that the state law claims are sufficiently pled. Accordingly, the Court denies the Motion as to the state law claims.

**III. <u>Conclusion</u>**

For the reasons stated herein, Defendant's Motion is DENIED as to each claim. The Court will issue an Order Setting Scheduling Conference forthwith.

IT IS SO ORDERED.

Dated: September 28, 2026

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

---

*Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985). And the statute itself—Utah Code Ann § 13-11-2—states that it "shall be construed liberally . . . to protect consumers from suppliers who commit deceptive and unconscionable sales practices."

Applying these principles, therefore, the Court finds that the Complaint properly alleges unconscionability as it plausibly alleges that Live Nation and Ticketmaster unfairly surprised and oppressed consumers through hidden fees and inaction against ticket limit violations, drawing all reasonable inferences from the Complaint. Compl. ¶¶ 50-51 (describing "surprise[]", "bait and switch" and "sticker shock"). As such, the Court finds the Utah unconscionability claim properly pled.