**FEDERAL TRADE COMMISSION**
ELIZABETH C. SCOTT (*pro hac vice*)
escott@ftc.gov
TAYLOR H. ARANA (*pro hac vice*)
tarana@ftc.gov
CLAIRE E. W. STEWART (*pro hac vice*)
cstewart@ftc.gov
GUY G. WARD (*pro hac vice* forthcoming)
gward@ftc.gov
230 South Dearborn Street, Suite 3030
Chicago, IL 60604
Telephone: (312) 960-5609 (Scott)
Telephone: (312) 960-5639 (Arana)
Telephone: (312) 960-5615 (Stewart)
Telephone: (312) 960-5601 (Ward)

Local Counsel:
AARON M. SCHUE (CA BAR NO. 338760)
aschue@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Telephone: (310) 824-4300

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

[Additional Attorneys for Plaintiffs Listed on Signature Page]

**LATHAM & WATKINS LLP**
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Scott D. Joiner (Bar No. 223313)
*scott.joiner@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Alexander C.K. Wyman (Bar No. 295339)
*alex.wyman@lw.com*
Will Schildknecht (Bar No. 348372)

will.schildknecht@lw.com
Max A. Shapiro (Bar No. 334929)
max.shapiro@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500

**SIDLEY AUSTIN LLP**
Benjamin M. Mundel (*pro hac vice forthcoming*)
bmundel@sidley.com
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000

Attorneys for Defendants
LIVE NATION ENTERTAINMENT, INC. AND TICKETMASTER L.L.C.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.,<br>Plaintiffs,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC.<br>and<br>TICKETMASTER, L.L.C.,<br><br>Defendants. | Case No. 2:25-CV-08884-MEMF-MAA<br><br>**JOINT RULE 26(f) REPORT**<br><br>Hearing Date: October 29, 2026<br><br>Hearing Time: 10:00 a.m.<br><br>**Hon. Maame Ewusi-Mensah Frimpong** |

Pursuant to Rule 26(f) and the Court's Standing Order, counsel for Plaintiff Federal Trade Commission ("FTC") and Plaintiffs Attorney General of Colorado; Office of the Attorney General, State of Florida, Department of Legal Affairs; the

People of the State of Illinois; the State of Nebraska; the State of Tennessee by and through its Attorney General and Reporter; the Attorney General of the State of Utah, and the Utah Division of Consumer Protection; and the Commonwealth of Virginia, by, through, and at the relation of its Attorney General ("State Plaintiffs") (collectively, "Plaintiffs"), and counsel for Defendants Live Nation Entertainment, Inc. and Ticketmaster, L.L.C. ("Defendants") (collectively, the "Parties"), participated in a telephonic conference of counsel on October 6, 2026, which is summarized as follows:

**A. <u>Statement of the Case</u>:**

**Plaintiffs' Statement:**

Plaintiff FTC contends that Defendants violate Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and the Better Online Ticket Sales Act ("BOTS Act"), 15 U.S.C. § 45c. The FTC seeks relief, including a permanent injunction, monetary relief, civil penalties, and other relief, pursuant to Sections 5(m)(1)(A), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(m)(1)(A), 53(b), and 57b, and the BOTS Act, 15 U.S.C. § 45c. State Plaintiffs contend that Defendants violate several statutes: (1) Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 *et seq.*; (2) Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 *et seq.*, Florida Statutes; (3) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, the Illinois Uniform Deceptive Trade

Practices Act, 815 ILCS 510; (4) Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 *et seq.;* (5) Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18- 101. *et seq.*; (6) Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.*, under Utah Code §§ 13-2-5(3) and 13-11-17(1); and (7) the BOTS Act, 15 U.S.C. § 45c.

Plaintiffs allege that Defendants have displayed deceptively low ticket prices to consumers and charged much more. The higher price results from mandatory fees not included in the list price, which can raise the cost by 30% or more.

Plaintiffs allege that Defendants also deceptively represent that they impose strict ticket limits for individual events, which artists and consumers rely on. But Defendants have known for years that ticket brokers often buy as many as thousands of tickets for a single event, denying ordinary fans the opportunity to purchase them "at the prices artists set."

Plaintiffs also allege that Defendants have systematically violated the BOTS Act, which prohibits selling or offering to sell tickets previously purchased in circumvention of measures used to enforce posted ticket-purchase limits or purchasing rules. Rather than enforce their ticket limits and purchasing rules against brokers, Defendants knowingly allow, and in fact even *encourage*, brokers to use multiple Ticketmaster accounts to circumvent Ticketmaster's own security measures and access control systems. Those same brokers then list the unlawfully purchased

tickets on Defendants' resale marketplace. This drives up the price of tickets and leaves ordinary fans unable to access the finite pool of tickets available at their face value. As a Ticketmaster executive admitted, the companies "turn a blind eye as a matter of policy" to brokers' violations of posted ticket limits.

Plaintiffs seek injunctive relief, monetary relief, civil penalties, and any additional relief the Court determines is necessary to redress injury to consumers. Plaintiffs also allege that the Defendants acted as a common enterprise, so each Defendant is jointly and severally liable for every Defendant's violations.

**Defendants' Statement**:

Live Nation Entertainment, Inc. and Ticketmaster, L.L.C. (collectively, "Defendants" or "Ticketmaster") deny Plaintiffs' allegations and deny that they have violated any applicable law. Ticketmaster has been at the forefront of the fight against ticket scalpers, investing over $1 billion since 2010 to prevent industrial-scale, technology-driven ticket harvesting and to protect fans' access to primary ticket sales. In 2025 alone, Ticketmaster detected and blocked nearly 260 million bot attempts daily to access its services, and it has built and continues to refine layered defenses against bots and purchase abuse, including CAPTCHA challenges, account authentication, analytics that detect accounts under common control, and the cancellation of inauthentic accounts.

**BOTS Act (Count III).** Congress enacted the BOTS Act to combat scalpers who use bots and other technological exploits to circumvent ticket issuers' safeguards, not to penalize ticket companies that invest substantial resources in those safeguards. The BOTS Act reaches those who circumvent a technological control or measure used by a ticket issuer to enforce purchase limits, and those who sell or offer to sell tickets knowing they were so acquired. 15 U.S.C. § 45c(a)(1). Ticketmaster does not "sell or offer to sell" resale tickets within the meaning of the statute, and Plaintiffs cannot establish Ticketmaster knew or should have known that any ticket resold on its platform was acquired through circumvention of a technological control, or that Ticketmaster had the ability to control the act of circumvention.

**Section 5 and State-Law Claims (Counts I, II, and IV–X)**. Ticketmaster's prior fee disclosures are neither false nor misleading as fans receive the final price, inclusive of fees, before purchase. And in any event, Ticketmaster implemented all-in pricing as of May 2025 in compliance with the FTC's own Trade Regulation Rule on Unfair or Deceptive Fees; there is no ongoing or imminent conduct to enjoin. Similarly, Ticketmaster's ticket limit disclosures are neither false nor misleading: the posted limits accurately describe per-account purchase limits, and Ticketmaster's reservation of the right to cancel orders is not a guarantee that every scalper will be stopped. Plaintiffs also fail to allege materiality. The State Plaintiffs' claims mirror

the Section 5 claims and fail for the same reasons. Defendants have also asserted affirmative defenses, including statute of limitations, due process and fair notice, and lack of injury and causation.

**B. <u>Subject Matter Jurisdiction:</u>** The Court has subject matter jurisdiction because the FTC's claims arise under federal law; the FTC's claims arise under an Act of Congress regulating commerce; and because the FTC is an agency of the United States. *See* 28 U.S.C. §§ 1331, 1337, 1345. In particular, the FTC's claims arise out of violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a) and the BOTS Act, 15 U.S.C. § 45c. The State Plaintiffs' claims arise under various state laws, including the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, et seq., Florida Statutes, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510, the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 *et seq.*, the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18- 101. *et seq.*, the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.*, under Utah Code §§ 13-2-5(3) and 13-11-17(1), and the BOTS Act, 15 U.S.C. § 45c. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). The Court has subject matter jurisdiction over the states' BOTS Act claims because they arise under an Act of Congress regulating commerce. The

Parties agree that federal jurisdiction exists.

**C. Legal Issues**:

**Plaintiffs' Statement:**

Plaintiffs believe the legal issues in this action include:

1. Whether Defendants have made false or misleading representations that tickets are available (a) at or around a specific price, or (b) within a specific price range, in violation of the FTC Act and the state statutes listed above.
2. Whether Defendants have made false or misleading statements regarding the maximum number of tickets that can be purchased for an event by or on behalf of the same person or entity, in violation of the FTC Act and the state statutes listed above.
3. Whether Defendants violate the Better Online Ticket Sales Act by selling or offering to sell event tickets purchased in circumvention of security measures, access control systems, or other technological controls or measures on their website or online service that Defendants have used to enforce posted event ticket purchasing limits or to maintain the integrity of posted online ticket purchasing order rules, when Defendants (i) participate directly in or have the ability to control the conduct in violation of Section (a)(1)(A) of the Better Online Ticket Sales Act, or (ii) know or should know that these event tickets were purchased in violation of Section

(a)(1)(A) of the Better Online Ticket Sales Act.

4. If so, whether Defendants violated the Better Online Ticket Sales Act with actual knowledge or knowledge fairly implied on the basis of objective circumstances that the violations are prohibited by the act, and are thereby subject to civil penalties pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).
5. Whether injunctive relief is available pursuant to Section 13(b) of the FTC Act, the state statutes listed above, and the BOTS Act, and if so, what injunctive relief is appropriate to protect consumers from future and ongoing violations.
6. The amount of consumer redress that is appropriate to compensate consumers for Defendants' unlawful practices.
7. Any additional elements to support injunctive and monetary relief for Defendants' violations of the state statutes listed above.

**Defendants' Statement:**

Defendants believe the legal issues in this action include, without limitation:

1. Whether Ticketmaster, as a platform that facilitates resale transactions, "sells or offers to sell" tickets within the meaning of 15 U.S.C. § 45c(a)(1)(B).
2. Whether Ticketmaster knows or should have known any tickets resold on its platform were acquired through circumvention of security measures, access

control systems, or other technological controls or measures that Ticketmaster uses to enforce posted event ticket purchasing limits or to maintain the integrity of posted online ticket purchasing order rules, or whether Ticketmaster has the ability to control such circumvention.

3. Whether the FTC can obtain injunctive relief under Section 13(b) of the FTC Act where Ticketmaster implemented all-in pricing as of May 2025 in compliance with the FTC's Trade Regulation Rule on Unfair or Deceptive Fees.
4. Whether the three-year statute of limitations under 15 U.S.C. § 57b(d) bars claims based on the alleged BOTS Act conduct from 2018 through 2022.
5. Whether Ticketmaster's ticket limit disclosures are false or misleading, and whether Plaintiffs can establish materiality.
6. Whether the BOTS Act, as applied by Plaintiffs to Defendants' alleged conduct, is unconstitutionally vague or violates due process and fair notice, and whether Plaintiffs' interpretation exceeds the authority conferred by Congress.

**D. <u>Damages</u>:**

**Plaintiffs' Statement:**

Plaintiff FTC intends to seek injunctive relief for Defendants' violations of the FTC Act and injunctive and monetary relief for Defendants' violations of the

BOTS Act, including redress and civil penalties. It has not yet determined the amount of monetary relief it will seek. The State Plaintiffs intend to seek varying injunctive and monetary relief for Defendants' violations of their state laws, including damages, restitution, the refund of monies paid, disgorgement of ill-gotten monies, civil penalties, fines, and attorneys' fees and costs, and intend to seek injunctive and monetary relief for Defendants' violations of the BOTS Act. They have not yet determined the amount of monetary relief they will seek.

**Defendants' Statement:**

Defendants deny that Plaintiffs are entitled to recover any damages, civil penalties, other monetary relief, or injunctive relief. Any alleged damages are speculative and incapable of ascertainment or allocation, lack a causal connection to Defendants' conduct, and are attributable in whole or in part to third parties. Defendants expect each Plaintiff to provide a separate computation of each category of monetary relief it claims pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii).

**E. <u>Parties and Evidence</u>:** As a preliminary matter, the Parties have not yet completed their respective investigations and discovery in this matter. Nonetheless, the Parties have made a diligent and good faith effort to obtain information with which to prepare this Joint Report.

**Parties:**

1. Plaintiffs

a. Federal Trade Commission,

b. Attorney General of Colorado,

c. Office of the Attorney General, State of Florida, Department of Legal Affairs,

d. The People of the State of Illinois,

e. State of Nebraska,

f. State of Tennessee by and through its Attorney General and Reporter,

g. State of Utah,

h. Utah Division of Consumer Protection, and

i. Commonwealth of Virginia, by, through, and at the relation of its Attorney General.

2. Defendants

a. Ticketmaster, L.L.C.

b. Live Nation Entertainment, Inc.

i. Liberty Live Holdings, Inc. owns more than 10% of the outstanding stock of Live Nation Entertainment, Inc.

ii. A list of Live Nation Entertainment, Inc.'s subsidiaries as reflected in Exhibit 21.1. of Live Nation Entertainment Inc.'s Annual Report on Form 10-K for fiscal year 2025 is

attached hereto as **Exhibit A**.

No other parties are presently anticipated, however discovery may reveal other defendants.

**Witnesses:**

**Plaintiffs' Statement:**

Plaintiffs preliminarily believe that the following individuals who are current or former employees of Defendants may be percipient witnesses in this case:

- Joseph Berchtold;
- Amy Howe;
- Debbie Hsu;
- Casey Klein;
- David Marcus;
- Marla Ostroff;
- Larry Plawsky;
- Michael Rapino;
- Jared Smith; and
- Dan Wall.

Other percipient witnesses include:

- Additional current and former employees of Defendants with knowledge of matters relevant to the claims in the Complaint;

- Individuals associated with a variety of third parties, including brokers, venues, artists, and promoters with knowledge of matters relevant to the claims in the Complaint;
- Expert witnesses retained by Plaintiffs;
- Presently unidentified consumers with knowledge of matters relevant to the claims in the Complaint;
- Defendants' Rule 30(b)(6) Witness(es); and
- Other individuals identified through discovery.

Plaintiffs will provide a more detailed list of current and former employees of Defendants likely to have discoverable information in their Initial Disclosures.

**Defendants' Statement:**

Defendants will identify percipient witnesses in their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). Defendants anticipate that percipient witnesses will include current and former employees of Defendants with knowledge of Ticketmaster's anti-bot and anti-scalping technology and investment, ticket limits, and pricing displays; current and former employees and representatives of Plaintiffs with knowledge of the pre-suit investigation, as well as Plaintiffs' Rule 30(b)(6) designees; ticket purchasers and other consumers whose experiences Plaintiffs rely on or whose complaints Plaintiffs received; and third parties, including artists, venues, promoters, and other event organizers; other primary and secondary

ticketing platforms;, ticket brokers, including the brokers referenced in the Complaint; and ticket broker associations.

**Key Documents:**

**Plaintiffs' Statement:**

Key documents are likely to include:

- Defendants' internal and external correspondence (including complaints and responses);
- Defendants' websites and internet applications;
- Defendants' marketing materials;
- Defendants' ticket sales data, including from the Trade Desk platform (and its successor platform);
- Defendants' internal documents, including reports, presentations, contracts, agreements, and policies;
- Defendants' documents related to testing or data showing the effect of pricing displays, purchase flows, and other documents related to pricing strategies;
- Defendants' documents related to fees charged to consumers and the disclosure of those fees;
- Documents from third parties, including ticket brokers, artists and their agents, venues, and promoters; and

- Other documents identified through discovery

**Defendants' Statement:**

Defendants will identify key documents in their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). Defendants anticipate that key documents will include documents concerning Ticketmaster's anti-bot and anti-scalping technology and investment; documents identifying the specific tickets allegedly sold in violation of the BOTS Act and the specific technological controls allegedly circumvented; consumer complaints, consumer communications, surveys, and pricing display analyses; Plaintiffs' investigative files, including materials collected and testimony taken during the pre-litigation investigation and communications with third parties, including ticket brokers; Plaintiffs' communications and public statements regarding the BOTS Act and proposed ticketing legislation, including the Main Event Ticketing Act, including communications with third parties such as members of Congress and their staff; the State Plaintiffs' documents regarding enforcement of the BOTS Act; documents concerning the FTC's Trade Regulation Rule on Unfair or Deceptive Fees, including Defendants' public comments in that rulemaking; the FTC's evaluation of industry-wide drip pricing; and documents from third parties, including artists, venues, promoters, and other event organizers, other primary and secondary ticketing platforms, ticket brokers, and ticket broker associations.

**F. Insurance:**

**Plaintiffs' Statement:**

Plaintiffs do not have applicable insurance coverage in this matter.

**Defendants' Statement:**

Defendants are not presently aware of any insurance policies that may provide coverage for the claims asserted in this action.

**G. Manual for Complex Litigation:** Pursuant to Local Rule of Civil Procedure 26-1, the Parties agree that the procedures in the Manual for Complex Litigation are not applicable in this case.

**H. Motions:** The parties do not believe there is a likelihood of motions seeking to add other parties or claims, file amended pleadings, transfer venue, or challenge the Court's jurisdiction.

**I. Dispositive Motions:**

**Plaintiffs' Statement:**

Plaintiffs believe that Defendants' liability for each law violation and for civil penalties, the amount of consumer injury, and the amount of civil penalties all may be determined by a motion for summary judgment.

**Defendants' Statement:**

Defendants anticipate moving for judgment on the pleadings with respect to

the BOTS Act and moving for summary judgment at the appropriate time, including on Plaintiffs' BOTS Act claim and FTC Act Claims.

**J. <u>Status of Discovery</u>:**

**Plaintiffs' Statement:**

Plaintiffs intend to serve written discovery and to notice the depositions of several current and former employees of the Defendants, and 30(b)(6) depositions of each of the Defendants. The Plaintiffs also intend to serve discovery requests on third-party witnesses including individuals and businesses providing services to Defendants or otherwise engaged in business with Defendants. Plaintiffs are not aware of any current discovery disputes, but discovery has not yet commenced. Although Defendants have indicated that they anticipate potential disputes regarding the terms of an appropriate protective order, those discussions have not yet commenced.

**Defendants' Statement:**

Although formal discovery has only begun, the FTC has a substantial head start through its pre-suit investigation, during which it received thousands of Ticketmaster documents and dozens of written responses. Defendants anticipate potential disputes regarding the terms of an appropriate protective order, but otherwise are not presently aware of any current discovery dispute.

**K. <u>Discovery Plan</u>:**

i. 26(f)(3)(A) (Initial Disclosures). The Parties do not believe that any changes to the form or requirements of disclosures under Rule 26(a)(1)(A) are necessary. The Parties will exchange initial disclosures by October 20, 2026.

ii. 26(f)(3)(B) (Subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases).

**Plaintiffs' Statement:**

Plaintiffs contend that fact discovery should be completed by September 3, 2027, about 10 months from the current October 29, 2026, date of the Scheduling Conference and should not be completed in phases, other than with respect to expert discovery. Plaintiffs contend that expert discovery should be completed by October 29, 2027. Plaintiffs intend to seek discovery on the subjects identified in the Complaint, including:

1. Plaintiffs allege that Defendants made false or misleading claims relating to ticket prices, thus discovery is necessary relating to any marketing, advertising, or other representations made by Defendants containing these claims, as well as to the falsity or misleading nature of the claims.
2. Plaintiffs allege that Defendants made false or misleading claims relating to ticket purchasing limits, thus discovery is necessary relating to any marketing, advertising, or other representations made by Defendants

containing these claims, as well as to the falsity or misleading nature of the claims.

3. Plaintiffs allege that Defendants sell or offer to sell event tickets that were purchased in circumvention of security measures, access control systems, or other technological controls or measures on their website or online service that Defendants have used to enforce posted event ticket limits or to maintain the integrity of posted online ticket purchasing order rules, when Defendants (i) participate directly in or have the ability to control the conduct in violation of Section (a)(1)(A) of the Better Online Ticket Sales Act, or (ii) know or should know that these event tickets were purchased in violation of Section (a)(1)(A) of the Better Online Ticket Sales Act. Thus discovery is necessary relating to Defendants' security measures, access control systems, and other technological controls or measures; Defendants' offering for sale and sale of resale tickets; Defendants' participation in or knowledge or conscious disregard of the unlawful ticket purchases.

4. As described above, the FTC alleges that the Defendants operated as a common enterprise while engaging in the unlawful practices alleged in the Complaint. Plaintiff will therefore undertake discovery relating to the ways in which the Defendants acted as a common enterprise.

5. Section 13(b) of the FTC Act empowers the Court to grant injunctive and other equitable relief as the Court deems necessary to prevent future violations of any provision of law enforced by the FTC, thus discovery is necessary relating to the scope of such equitable relief.

6. Section 19(b) of the FTC Act authorizes the Court to grant such relief as the court finds necessary to remedy violations of the Better Online Ticket Sales Act, including the refund of money, thus discovery is necessary relating to the amount of consumer injury caused by Defendants' violations of the Better Online Ticket Sales Act and any other issue relating to appropriate remedies allowable by law.

7. The state statutes listed above provide for varying injunctive and monetary relief, including damages, restitution, the refund of monies paid, disgorgement of ill-gotten monies, civil penalties, fines, and attorneys' fees and costs, thus discovery is necessary relating to the amount and scope of such relief, and any other issue relating to appropriate remedies allowable by law.

8. Section 5(m)(1)(A) of the FTC Act authorizes the imposition of civil penalties for violations of the Better Online Ticket Sales Act that were made with actual knowledge or knowledge fairly implied on the basis of objective circumstances that the violations were prohibited by the Act.

9. Discovery is necessary with respect to each affirmative defense raised by Defendants.

10. Discovery is necessary with respect to any other matters within the scope of Fed. R. Civ. P. 26(b)(1).

**Defendants' Statement:**

Given the scope and complexity of this case, the number of Plaintiffs, and the anticipated third-party discovery, Defendants propose a fact discovery period of approximately 14 months from the date of the scheduling order. Defendants do not believe phased discovery is warranted, other than that depositions should generally follow document discovery and expert discovery should follow fact discovery. Defendants anticipate seeking discovery on, among other subjects: (1) the deceptive pricing claims (Counts I, II, and IV–X), including consumer complaints, surveys, pricing display analyses, fee disclosure practices, and the FTC's evaluation of industry-wide drip pricing; (2) the BOTS Act claims (Count III), including the identification of the specific tickets allegedly sold in violation of the Act, the specific technological controls allegedly circumvented, communications with ticket brokers, and Ticketmaster's anti-bot and anti-scalping investment and technology; (3) Plaintiffs' pre-suit investigations and coordination among Plaintiffs and third parties; (4) Plaintiffs' claimed monetary relief; (5)

Defendants' affirmative defenses; and (6) third parties, including artists, venues, ticketing competitors, and ticket brokers identified in the Complaint.

iii. 26(f)(3)(C) (issues about disclosure, discovery, or preservation of electronically stored information ("ESI")). The Parties have discussed the preservation of discoverable information and anticipate agreeing to an ESI Protocol, which they will submit to the Court as a stipulated order governing discovery of ESI. The Parties have implemented litigation holds or are preserving documents consistent with their statutory obligations. The Parties are currently unaware of unique issues presented by the disclosure, discovery, or preservation of ESI, but to the extent any such issues arise the Parties will meet and confer to resolve those issues.

iv. 23(f)(3)(D) (issues about claims of privilege or protection). The Parties will produce privilege logs no later than thirty (30) days after asserting any privilege with respect to document production and will work together to address any issues that arise regarding assertions of privilege.

The Parties anticipate meeting and conferring regarding, and addressing in a proposed ESI Protocol, categories of privileged or otherwise protected material that will be preserved but need not be collected, searched, reviewed, produced, or logged except for good cause shown.

The Parties agree to confer and jointly submit a proposed protective order if the Parties are able to come to a mutually agreeable proposed protective order. The Parties will submit any disputes regarding a protective order to the Court.

v. 26(f)(3)(E) (changes to the limitations on discovery).

*a. Written Interrogatories*

Under Fed. R. Civ. P. 33(a)(1), each party may serve on any other party twenty-five (25) interrogatories, including all discrete subparts.

**Plaintiffs' Statement**: Plaintiffs do not object to applying the 25-interrogatory limit under Fed. R. Civ. P. 33(a)(1) as a single aggregate, side-wide limit rather than a per-party limit. Plaintiffs reserve the right to seek leave to serve additional interrogatories as necessary, including as they relate to relief or other issues specific to a particular Plaintiff. Plaintiffs will respond to Defendants' interrogatories consistent with the requirements of Fed. R. Civ. P. 33.

**Defendants' Statement**: Defendants propose that the 25-interrogatory limit under Fed. R. Civ. P. 33(a)(1) apply as a single aggregate, side-wide limit rather than a per-party limit; absent that agreement, the nine Plaintiffs collectively could serve 225 interrogatories. Defendants reserve the right to seek leave to serve additional interrogatories as necessary. Defendants further expect each State Plaintiff to verify its own responses to contention and State-specific interrogatories.

*b. Depositions*

The Parties will limit depositions to one day of seven hours as provided by Fed. R. Civ. P. 30(d)(1) and agree that in the event that one party proposes a deviation from that limit, the requesting party will either need to obtain the consent of the other party or the intervention of the Court if consent is not given. Expert depositions and Rule 30(b)(6) depositions will not count against a side's limit on fact depositions.

**Plaintiffs' Statement:** Under Fed. R. Civ. P. 30(a)(2)(A)(i), the Parties are each entitled to take ten (10) depositions. Due to the complexity of the case, Plaintiffs expect to request a departure from the standard number of depositions. *See FTC v. Amazon.com, Inc. et al.*, No. 2:23-cv-00932-JHC, Dkt. No. 193 (W.D. Wash. Sept. 19, 2024). Based on the potential witnesses Plaintiffs have identified to date, Plaintiffs expect to request at least 20 depositions of fact witnesses. Before significant discovery has been conducted, however, Plaintiffs believe it is premature to suggest a precise number of depositions that may be necessary. Plaintiffs do not object to any increases in the number of depositions applying as a single aggregate, side-wide increase rather than a per-party increase.

**Defendants' Statement:** Defendants agree that an increase beyond the presumptive limit of ten depositions may be warranted given the number of Plaintiffs, the involvement of third parties, and the breadth of the allegations. Defendants propose that any increase be set as a single aggregate, side-wide limit

rather than a per-party limit, so that the presumptive limit is not multiplied nine times over on Plaintiffs' side.

vi. 26(f)(3)(F) (other orders under Rule 26(c) or Rule 16(b) and (c)). The Parties do not propose any other orders at this time, but as noted above, anticipate seeking entry of an order governing the discovery and production of ESI and a protective order.

vii. Third-party discovery. The notice requirements of Federal Rule of Civil Procedure 45(a)(4) shall apply to third party subpoenas issued by any party. The Parties agree to request that third parties simultaneously produce materials to all Plaintiffs and Defendants, regardless of which party requested the materials. If, notwithstanding such request, the third party does not produce copies to both sides, the requesting party shall produce a copy of all materials received pursuant to any third-party subpoena within ten (10) business days of receiving those materials, subject to objections based on confidentiality.

**L. Expert Discovery:**

**Plaintiffs' Statement:**

Plaintiffs propose the following schedule for expert discovery:

Expert Disclosures (Initial): 09/17/2027

Expert Disclosures (Rebuttal): 10/15/2027

Expert Discovery Cut-Off: 10/29/2027

**Defendants' Statement:**

Defendants propose the following schedule for expert discovery:

| | |
|---|---|
| Expert Disclosures (Initial): | 01/28/2028 |
| Expert Disclosures (Rebuttal): | 02/28/2028 |
| Expert Discovery Cut-Off: | 03/29/2028 |

**M. Settlement Conference / Alternative Dispute Resolution ("ADR"):**

**Plaintiffs' Statement**: Plaintiffs are open to ADR Procedure No. 1 under Local Rule 16-15.4, pursuant to which the Parties would appear before the Magistrate Judge assigned to this matter. The Parties understand that the Magistrate Judge originally assigned to the case, the Hon. Maria A. Audero, has since retired from the Court.

**Defendants' Statement**: Defendants are willing to consider settlement and alternative dispute resolution at the appropriate time. Given the number of parties and the complexity of the issues, Defendants believe private mediation (ADR Procedure No. 3) would be the most effective ADR format for this case.

**Plaintiff FTC's Additional Statement:**

Although FTC counsel has the authority to negotiate settlement agreements, under Section 4.14(c) of the FTC's Rules of Practice, 16 C.F.R. § 4.14(c), only a majority vote by the several FTC Commissioners can approve any such agreement and authorize its filing in court. Once FTC counsel and a defendant reach a tentative

agreement on the terms of a stipulated final order, the Commission's review and approval process can take several weeks.

**N. <u>Trial Estimate</u>:**

**Plaintiffs' Statement:**

Plaintiffs estimate that trial will last fifteen days. Plaintiffs anticipate calling fifteen to twenty witnesses depending on what is learned during discovery and the scope of the remaining issues after summary judgment. There are legal issues that are triable by a jury.

**Defendants' Statement:**

Defendants estimate that trial will require approximately 15 to 20 court days based on the breadth of the claims, the anticipated volume of discovery, and the likely need for expert testimony on multiple topics. Defendants anticipate calling approximately 15 to 25 witnesses, subject to refinement as discovery progresses.

**O. <u>Trial Counsel</u>:** The name(s) of the counsel who will try the case.

**Plaintiffs:** Elizabeth Scott, Claire Stewart, Taylor Arana, and Guy Ward (*pro hac vice* forthcoming) for Plaintiff FTC; Brady Grassmeyer and Lauren Dickey for Plaintiff Attorney General of Colorado; Donna Valin, Victoria Butler, Henry Johnson, Michael Dirckx, and Diana Oates for Plaintiff Office of the Attorney General, State of Florida, Department of Legal Affairs; Alexandra Golota, Jacob Gilbert, Wilton Person, and Adam Sokol for Plaintiff People of the State of Illinois;

Mike Greenlee (*pro hac vice* forthcoming) and Benjamin Swanson and Erik Fern on behalf of Plaintiff State of Nebraska; Kelley Groover, Kristin Knowles, and Daimon Duggar (*pro hac vice* forthcoming) on behalf of Plaintiff State of Tennessee by and through its Attorney General and Reporter; Peishen Zhou and Robert Wing on behalf of Plaintiffs State of Utah, and the Utah Division of Consumer Protection; and Chandler Crenshaw for Plaintiff Commonwealth of Virginia, by, through, and at the relation of its Attorney General.

**Defendants:** Michael H. Rubin, Scott D. Joiner, Alexander C.K. Wyman, Faraz Mohammadi, and Max A. Shapiro of Latham & Watkins LLP.

**P. Magistrate Judge:** The Parties do not agree to try the case before a magistrate judge.

**Q. Independent Expert or Master:** The parties do not believe the appointment of a master pursuant to Federal Rule of Civil Procedure 53 or an independent scientific expert is necessary at this time.

**R. Schedule Worksheet:**

See the attached **Exhibit B**.

**S. Class Action:**

Not applicable.

**T. Patent:**

Not applicable.

**U. ERISA:**

Not applicable.

**V. Other Issues:**

The Parties agree to serve and accept service of documents, including notices and other papers, in this action via email and/or secure file transfer protocol.

The Parties are not aware of any other issues not already addressed above or in the forthcoming proposed ESI and protective orders.

Dated: October 13, 2026 Respectfully submitted,

**FOR THE FEDERAL TRADE COMMISSION:**

/s/ *Claire E. W. Stewart*


Elizabeth C. Scott (*pro hac vice)*
escott@ftc.gov
Taylor H. Arana (*pro hac vice)*
tarana@ftc.gov
Claire E. W. Stewart (*pro hac vice)*
cstewart@ftc.gov
Guy G. Ward (*pro hac vice* forthcoming)
gward@ftc.gov
FEDERAL TRADE COMMISSION
230 South Dearborn Street, Suite 3030
Chicago, IL 60604
Telephone: 312-960-5609 (Scott)
312-960-5639 (Arana)
312-960-5615 (Stewart)
312-960-5601 (Ward)
Fax: 312-960-5600

Local Counsel:
Aaron M. Schue (CA Bar No. 338760)
aschue@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Telephone: (310) 824-4300
Fax: (310) 824-4380


*Attorneys for the Federal Trade Commission*

**FOR THE ATTORNEY GENERAL OF COLORADO:**

PHILIP J. WEISER
Attorney General
State of Colorado

/s/*Brady J. Grassmeyer*
Brady J. Grassmeyer (*pro hac vice*)
Brady.Grassmeyer@coag.gov
Senior Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6263

*Attorney for the Attorney General of Colorado*

**FOR THE OFFICE OF THE ATTORNEY GENERAL,**
**STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS:**

James Uthmeier
*Attorney General*

Ryan Newman
*Chief Deputy Attorney General*

Jason Hilborn
*Deputy Attorney General*
*Civil Division*

/s/ Donna C. Valin
Donna Cecilia Valin (*pro hac vice*), *Special Counsel, Assistant Attorney General*
Email: donna.valin@myfloridalegal.com
Consumer Protection Division
135 West Central Blvd.
Orlando, Florida 32801
Telephone: (407) 316-4840

Victoria Ann Butler, *Director*
Email: victoria.butler@myfloridalegal.com
Consumer Protection Division
3507 East Frontage Road, Suite 325
Tampa, Florida 33607
Telephone: (813) 287-7950

Henry Q. Johnson; *Senior Assistant Attorney General*
Email: henry.johnson@myfloridalegal.com
Multistate and Privacy Bureau
110 SE 6th Street, 10th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 712-4600

*Attorneys for the State of Florida*

**FOR THE PEOPLE OF THE STATE OF ILLINOIS:**

KWAME RAOUL
Attorney General

/s/ *Alexandra A. Golota*
ALEXANDRA A. GOLOTA (*pro hac vice*)
alexandra.golota@ilag.gov
WILTON A. PERSON (*pro hac vice*)
Wilton.Person@ilag.gov
Office of the Illinois Attorney General
Consumer Fraud Bureau
115 S. LaSalle Street, 26th Floor
Chicago, Illinois 60603
Telephone: (872) 272-0794 (Golota)
(224) 252-6458 (Person)

*Attorneys for the State of Illinois*

**FOR THE STATE OF NEBRASKA:**

/s/ *Benjamin J. Swanson*
Benjamin J. Swanson (*pro hac vice*)
benjamin.swanson@nebraska.gov
Michael Greenlee (*pro hac vice* forthcoming)
Michael.Greenlee@Nebraska.gov
Assistant Attorneys General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68508
Telephone: (402) 471-3840

*Attorneys for the State of Nebraska*

**FOR THE STATE OF TENNESSEE:**

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Kristine Knowles*
KRISTINE KNOWLES, Assistant Attorney General (*pro hac vice*)
Kristine.Knowles@ag.tn.gov
KELLEY GROOVER, Sr. Assistant Attorney General/Managing Attorney (*pro hac vice*)
Kelley.Groover@ag.tn.gov
DAIMON S. DUGGAR (*pro hac vice* forthcoming)
Daimon.Duggar@ag.tn.gov
OFFICE OF THE TENNESSEE ATTORNEY GENERAL
Public Protection Section
Consumer Protection Division
301 6th Avenue North
Nashville, Tennessee 37243
Telephone: (615) 741-1671
Fax: 1-615-523-3810

*Attorneys for the State of Tennessee*

**FOR THE STATE OF UTAH and the**
**UTAH DIVISION OF CONSUMER PROTECTION:**

DEREK BROWN
Utah Attorney General

Douglas Crapo
Deputy Attorney General

/s/ *Peishen Zhou*
Peishen Zhou (*pro hac vice*)
peishenzhou@agutah.gov
Assistant Attorney General
Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, UT 84114
Telephone: (385) 499-1963

/s/ *Robert G. Wing*
Robert Wing (*pro hac vice*)
rgwing@agutah.gov
Director, Commercial Enforcement Division
Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, UT 84114
Telephone: (801) 366-0310

*Attorneys for the State of Utah and the Utah Division of Consumer Protection*

**FOR THE COMMONWEALTH OF VIRGINIA, *ex rel.* JAY JONES, ATTORNEY GENERAL:**

JAY JONES
Attorney General of Virginia

/s/ *Chandler P. Crenshaw*
CHANDLER P. CRENSHAW (*pro hac vice*)
CCrenshaw@oag.state.va.us
Assistant Attorney General and Unit Manager
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Fax: (804) 786-0122

*Attorney for Plaintiff Commonwealth of Virginia*

**FOR LIVE NATION ENTERTAINMENT, INC. AND TICKETMASTER, LLC**

LATHAM & WATKINS LLP
Michael H. Rubin
Scott D. Joiner
Alexander C.K. Wyman
Will Schildknecht
Max A. Shapiro

SIDLEY AUSTIN LLP
Benjamin M. Mundel

By *<u>/s/ Michael Rubin</u>*
Michael H. Rubin

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C*

**Statement Pursuant to L.R. 5-4.3.4(a)(2)(i)**

Pursuant to L.R. 5-4.3.4(a)(2)(i), I, Claire E. W. Stewart, hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

By *__/s/ Claire E. W. Stewart__*
Claire E. W. Stewart